FILED

2014 OCT 20  PM 1: 47

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CAROLINE VEGA,

      Plaintiff,

v.

                              Case No.: 6:14-CV-1700-ORL-22GJK

ORLANDO HOUSING AUTHORITY,
and VIVIAN BRYANT, President/CEO
of the Orlando Housing Authority, in her
official capacity,

      Defendants.

_____/

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
## MEMORANDUM IN SUPPORT

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and M.D. Loc. R. 4.06

and 3.01, Plaintiff Caroline Vega ("Plaintiff" or "Ms. Vega"), hereby respectfully moves this

Court for an Order granting Plaintiff's Motion for Preliminary Injunction and directing

Defendants the Orlando Housing Authority ("OHA") and Vivian Bryant ("Bryant") to

immediately reinstate her Section 8 Housing Choice Voucher Program rental assistance,

ordering Defendants to timely process any and all documents necessary for Plaintiff to obtain

new housing using her Section 8 voucher, and restraining Defendant OHA and its officers,

agents, servants, employees, and successors from acting to limit or terminate Ms. Vega's

participation in the Section 8 Program in violation of her rights under the U.S. Housing Act,

42 U.S.C. § 1437f, due process under the Fourteenth Amendment to the U.S. Constitution, 24

C.F.R. §§ 982.555(a)(1)(v), (c)-(f) (2014), and the OHA's Administrative Plan, pending final

resolution of this action.[1] Specifically, Defendants have engaged in an unlawful termination of Plaintiff's federal Section 8 Housing Choice Voucher Program ("Section 8" or "Section 8 program") assistance without proper notice and the opportunity for a pre-termination hearing in violation of Plaintiff's constitutional due process rights, the federal regulations governing the Section 8 Housing Choice Voucher Program and the OHA's Administrative Plan.  As grounds, Plaintiff states as follows:

1.     Plaintiff is a resident of Orange County, Florida, and was a tenant receiving Section 8 housing for approximately 18 years, including approximately 10 years with the OHA. (Ex. 1, ¶ 2, Declaration of Caroline Vega.)  ("Ex. 1.")[2]

2.     On December 30, 2013, Plaintiff requested a transfer of her Section 8 program voucher to move her family from her residence at 2202 Justin Avenue, Orlando, Florida, to Seminole County. (*Id.*, ¶¶ 4-5.)

3.     Plaintiff submitted the required information to be recertified for the Section 8 program.  (Id., ¶ 6.)  Plaintiff was informed by the OHA that she had been approved for a voucher transfer. (*Id.*)  However, Plaintiff's caseworker subsequently informed her that she could not receive the new voucher because her daughter had received a citation for a minor criminal charge. (*Id.*) Plaintiff was also informed by her caseworker that she would receive notice from the OHA about how to request a hearing concerning this decision. (*Id.*)

4.     Instead, the notice that Plaintiff received from the OHA was a letter, dated March 31, 2014, and titled "Final Termination of Section 8 Assistance[.]" This letter

---

[1]  Plaintiff moves this Court for the requested relief for the reasons set forth herein and as stated in the contemporaneously filed Complaint with Demand for Declaratory and Injunctive Relief which is incorporated herewith by reference.
[2]  All Exhibits to Plaintiff's Motion for Preliminary Injunction and Memorandum in Support are attached hereto.

informed Plaintiff that her Section 8 rental subsidy was terminated effective April 30, 2014, and that the termination action was taken based on 24 C.F.R. § 982.551(1) "Crime by household members[.]" (Ex. 2, Final Termination of Section 8 Assistance, dated, March 31, 2014.) ("Ex. 2.") The letter also stated that as of May 1, 2014, Ms. Vega would be responsible for the full amount of rent to her landlord. (*Id.*)

5.      The "Final Termination of Section 8 Assistance" from the OHA to Ms. Vega, dated March 31, 2014, did not contain any information about the right to an informal hearing or the right to appeal the OHA's decision to terminate benefits. (*Id.*)

6.      Shortly after she received the "Final Termination of Section 8 Assistance," Ms. Vega spoke with the OHA Section 8 Director, Rhonda Pierce to request a hearing. (Ex. 2, ¶ 9.) Ms. Pierce denied this request and informed Plaintiff that she did not have the right to a hearing. (*Id.*)

7.      Ms. Vega submitted a written request for a hearing to the OHA on April 30, 2014. (Ex. 3, Pl.'s Hearing Request.) ("Ex. 3.") OHA denied this second request for a hearing. (Ex. 4, OHA Hearing Denial Letter, May 7, 2014.) ("Ex. 4.") OHA's denial letter stated, in relevant part, "HUD regulations do not allow for an informal hearing for drug offenses." (*Id.*)

8.      After Defendants had denied Ms. Vega's requests for a hearing two times, her counsel wrote to Defendants on June 30, 2014, to request a hearing and provided the legal basis for the requirement of an informal hearing prior to the termination of Section 8 program assistance. (Ex. 5, Letter from Caroline Ware to OHA, June 30, 2014.) ("Ex. 5.") The OHA never responded to this request.

9.     Ms. Vega and her two children became homeless because Defendants unlawfully terminated her Section 8 program voucher and she was unable to pay market rent. (Ex. 1, ¶ 12.)

10.     Defendants' unlawful termination of Ms. Vega's Section 8 voucher in violation of her due process rights left her homeless and forced to live a transient existence of moving between the homes of family and friends. (*Id.*, ¶¶ 12, 14-15.)

11.     As a result of Defendants' unlawful termination of her Section 8 voucher without due process, Ms. Vega had to separate her family. Plaintiff had to send her then 16 year-old son out of state to live with his father because of the lack of housing for herself and her family. (*Id.*, ¶ 13.)

12.     The OHA has never provided Ms. Vega with notice as to her right to a hearing concerning the termination of her Section 8 program assistance or a hearing. (*Id.*)

13.     Participants in the Section 8 program are entitled to an informal hearing regarding a public housing agency ("PHA") decision to terminate housing assistance payments on behalf of a participant. 24 C.F.R. § 982.555(a)(1)(v); *Goldberg v. Kelly*, 397 U.S. 254, 266 (1970); *Basco v. Machin*, 514 F.3d 1177, 1182 (11th Cir. 2008) (citations omitted); *Thomas v. Hernando Cnty. Hous. Auth.*, 2008 WL 4844761, *7 (M.D. Fla. Nov. 6, 2008); (*See* Ex. 6, The Orlando Housing Authority Section 8 Housing Choice Voucher Program Administrative Plan "OHA Administrative Plan," 09/2012, Chapter 19, p. 100) ("The OHA must provide participants with the opportunity for an Informal Hearing for decisions related to any of the following determinations…[including the] Determination to terminate assistance for any reason.") ("Ex. 6.")

4

14.    The PHA must give the participant prompt written notice that she may request a pre-termination hearing. 24 C.F.R. § 982.555(c)(2). The notice must contain a brief statement of reasons for the decision; state that if the participant does not agree with the decision, she may request an informal hearing on the decision; and state the deadline to request an informal hearing. *Id.*

15.    When an informal hearing is requested by a participant, the PHA must proceed with the pre-termination hearing in a reasonably expeditious manner. 24 C.F.R. § 982.555(d).

16.    The deprivation of Plaintiff's right to due process has resulted in harm to Plaintiff and, absent extraordinary relief from this Court, she will continue to suffer irreparable harm by unwarranted violation of her constitutional and statutory rights. Defendants' unlawful acts and omissions, through the denial of due process of law, have caused Plaintiff irreparable harm, homelessness and the separation of her family. (Ex. 1, ¶¶ 12-15.)

17.    If the requested preliminary injunctive relief is not issued, Plaintiff will be subjected to continued deprivation of her due process rights and homelessness. Plaintiff faces irreparable harm and has no adequate remedy at law.

18.    Damages are not an adequate remedy at law, because, although Plaintiff has suffered injury as a consequence of Defendants' unlawful acts and omissions, damages cannot compensate Plaintiff for the continued loss and deprivation of her right to procedural due process and statutory rights, as well as homelessness and continued separation of her family.

19.    There exists a substantial likelihood that the Plaintiff's claim will succeed on the merits. Granting the relief sought will not result in the imposition of harm to Defendants and such relief is in the public interest. Public policy concerns favor the entry of a preliminary injunction to insure that a governmental entity, the OHA, follows its own rules and that Plaintiff will not be deprived of due process of law.

20.    Plaintiff respectfully requests that the Court waive the bond requirement in Fed. R. Civ. P. 65(c). Public interest litigation, such as this, is a recognized exception to the bond requirement. This is especially true where the posting of the bond would cause significant hardship to Plaintiff – who is indigent – and the relief sought will not impose a hardship on Defendants.

WHEREFORE, Plaintiff respectfully requests that this Court issue a preliminary injunction and order Defendants to immediately reinstate Ms. Vega's Section 8 program rental assistance voucher, direct Defendants to timely process any and all documents necessary for Plaintiff to obtain new housing using her Section 8 voucher and restrain Defendant OHA and its officers, agents, servants, employees, and successors from acting to limit or terminate Ms. Vega's participation in the Section 8 Program in violation of her right to due process under the Fourteenth Amendment to the U.S. Constitution, 24 C.F.R. §§ 982.555(a)(1)(v), (c)-(f), and the OHA's Administrative Plan, pending final resolution of this action.

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### I.   Plaintiff Meets the Standard for Preliminary Injunctive Relief

To prevail on a preliminary injunction, the movant must establish: (1) a substantial

likelihood of success on the merits; (2) irreparable injury unless the injunction is issued; (3)

the threatened injury outweighs whatever damage the proposed injunction might cause the

non-moving party; and (4) entry of the relief would not be adverse to the public interest.

*BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964,

968 (11th Cir. 2005); *Roundtree v. U.S. Dep't of Housing and Urban Development*, 2009 WL

7414663, *4 (M.D. Fla. 2009) (citations omitted). Plaintiff readily meets all of these factors.

### A.   Plaintiff Has a Substantial Likelihood of Success on the Merits for a Procedural Due Process Claim

A claim alleging a denial of due process requires proof of three elements: (a)

deprivation of a constitutionally protected liberty or property interest; (b) state action; and (c)

constitutionally inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir.

2003).

As to the first element, Plaintiff, as a participant in the Section 8 program, has a

property interest in her rental assistance which is protected by requirements of due process

pursuant to the Fourteenth Amendment of the U.S. Constitution. *Basco v. Machin*, 514 F.3d

1177, 1182 (11th Cir. 2008), citing *Goldberg v. Kelly*, 397 U.S. 254, 266 (1970).

As to the second element of Plaintiff's claim, the OHA is a federally subsidized,

independent public corporation organized pursuant to the laws of the State of Florida

pursuant to § 421, Fla. Stat. (2014), *et seq.*  The OHA engages in state action in exercising

7

its duties. *See e.g.*, *Johnson v. Fort Walton Beach Hous. Auth.*, 2012 WL 10688344, at *4 (N.D. Fla. Jan. 5, 2012).

As to the final element, a Section 8 housing participant is entitled to an informal pre-termination hearing regarding a PHA decision to terminate her housing assistance payments. *See* 24 C.F.R. §§ 982.555(a)(1), (a)(1)(v); *Basco*, 514 F.3d at 1182 (citation omitted); *Thomas*, 2008 WL 4844761, *7 (M.D. Fla. Nov. 6, 2008). (*See also* Ex. 6.) ("The OHA must provide participants with the opportunity for an Informal Hearing for decisions related to any of the following determinations...[including the] Determination to terminate assistance for any reason."). The pre-termination hearing provides an initial determination of the validity of the agency's grounds for discontinuing benefits to protect a recipient against an erroneous termination of benefits. *Goldberg*, 397 U.S. at 267; *Johnson*, 2012 WL 10688344, at *4-5 (N.D. Fla. Jan. 5, 2012) (finding Section 8 housing recipient entitled to be heard in meaningful time and manner before being deprived of property right) (citations omitted).

"The fundamental requisite of due process is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). The central meaning of due process is clear: "[p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation and citations omitted). Neither notice, nor an opportunity to be heard, were provided here.

Defendants have committed a fundamental violation of due process in this case – the deprivation of the opportunity and right to be heard. Despite Plaintiff, and her counsel, requesting an informal hearing three times, Defendants have never provided her with a

hearing. (Ex. 1, ¶¶ 9-11; 13.)  They affirmatively refuse to do so. (*Id.*, ¶¶ 8-11; Exs. 3-5.)
Defendants failed to even provide Plaintiff notice of her right to a hearing.  (Ex. 1, ¶¶ 7-11;
Exs. 3-5.)

Plaintiff did not only receive constitutionally inadequate process – she received
absolutely no process. Defendants not only unlawfully terminated Plaintiff's participation in
the Section 8 program through their initial defective notice, but then compounded the
violation by issuing three additional denials of due process to Plaintiff in response to her
requests for a hearing following their initial defective notice.  (Exs. 9-11.)  Each of their
subsequent actions was as unlawful and incorrect as the first.

Defendants' initial letter to Plaintiff on March 31, 2014, which informed her of the
termination of her Section 8 program rental assistance, failed to comply with due process in
several respects:

- Defendants failed to provide Plaintiff with prompt written notice that she may
  request a pre-termination hearing. 24 C.F.R. § 982.555(c)(2).

- Defendants' letter did not contain any statement that if Plaintiff did not agree
  with the decision to terminate her voucher, she may request an informal
  hearing on the decision; and state the deadline to request an informal hearing.
  *Id.*

- When an informal hearing was requested by Plaintiff, the PHA refused to
  provide a pre-termination hearing, much less follow the requirement that it
  must proceed with the pre-termination hearing in a reasonably expeditious
  manner. 24 C.F.R. § 982.555(d).

9

(*See* Ex. 2.)

In addition, Defendants' response to Plaintiff's second request for a hearing to challenge the termination of her Section 8 rental assistance incorrectly stated that "HUD regulations do not allow for an informal hearing for drug offenses[.]" (Ex. 4.)  This is incorrect as a matter of law. *See Basco*, 514 F.3d at 1182. *See also* 24 C.F.R. §§ 982.553(d)(2), 982.555(a)(1)(v), (c)-(f). (Ex. 6.)

Plaintiff has never been provided with notice of the right to an informal hearing prior to the termination of her Section program rental assistance. (Ex. 1, ¶ 13.)  Defendants have not provided her with a hearing and have affirmatively refused to do so.  (Ex. 1, ¶¶ 9-11, 13; Exs. 2, 4-5.)  Defendants' acts and omissions are an unequivocal violation of constitutional due process, the regulations governing the Section 8 program and the OHA's Administrative Plan concerning termination of vouchers. Plaintiff has established a substantial likelihood of prevailing on her due process claim.

**B.      Plaintiff Will Suffer Irreparable Injury Without a Preliminary Injunction**

It is well established that the loss of housing assistance resulting in homelessness constitutes irreparable harm.  *Roundtree v. U.S. Dep't of Hous. & Urban Dev.*, 2009 WL 7414663, at *7 (M.D. Fla. Aug. 28, 2009); *Basham v. Freda*, 805 F. Supp. 930, 932 (M.D. Fla. 1992) *aff'd*, 985 F.2d 579, 932 (11th Cir. 1993) (irreparable injury demonstrated where denial of injunction could render plaintiffs homeless); *Jackson v. Jacobs*, 971 F.Supp. 560, 565 (N.D.Ga. 1997) (irreparable injury satisfied where plaintiff and her family were homeless for past six months and will continue to be without shelter unless their Section 8 assistance is restored); *McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 254

(S.D.N.Y. 1989) ("The threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury, and satisfies the first prong of the test for preliminary injunctive relief."); *Mitchell v. U.S. Dep't of Hous. & Urban Dev.*, 569 F. Supp. 701, 704-05 (N.D. Cal. 1983) (in absence of injunction, eviction and inability to find other affordable housing constitutes irreparable injury).

Plaintiff was a tenant of Section 8 housing for approximately ten years, but is currently homeless due to Defendants' unlawful termination of her rental assistance. (Ex. 1, ¶¶ 12, 14-15.) Ms. Vega will continue to face irreparable harm and homelessness if an injunction is not granted. (*Id.*) As a result of the loss of Section 8 rental assistance, Plaintiff also had to separate her family. (Ex. 1, ¶¶ 12, 14.) Now, she is forced to live a transient life, moving between the residences of family members and friends just to keep a roof over her head. (Ex. 1, ¶¶ 13, 14-15.) She is faced with continued homelessness and separation of her family unless injunctive relief is granted. (*Id.*) Plaintiff has clearly satisfied the irreparable harm requirement for this Court to grant a preliminary injunction.

C.      **The Balance of Hardships Weighs in Plaintiff's Favor**

The balancing of harms favors the issuance of a preliminary injunction. Plaintiff will continue to suffer real and substantial injury if this Court does not issue a preliminary injunction. Defendants, however, will not suffer any harm if required to reinstate Plaintiff's Section 8 program rental assistance prior to the Court making a final determination on the merits of this claim.

The irreparable harm that Plaintiff is suffering, and will continue to suffer, outweighs whatever minor administrative measures Defendants may need to take to reinstate Plaintiff's

11

Section 8 rental assistance benefits – which were improperly terminated without due process in the first instance. *See e.g., Jackson*, 971 F. Supp. at 565 (granting injunction and finding that "the modest amount of money and administrative inconvenience a preliminary injunction would cost the Defendants outweighs the injury [plaintiff] would suffer if she were compelled to remain homeless"). Plaintiff lost the only source of shelter for herself and her children.  She will continue to remain homeless and separated from her children due to the loss of permanent affordable housing unless a preliminary injunction issues.  At most, Defendants will have to process any documents necessary for Plaintiff to be determined re-eligible for Section 8 rental assistance so that she can obtain new housing using her Section 8 voucher.  These are legal obligations that Defendants routinely perform in the normal course of business and require no additional resources. Moreover, Plaintiff's harm of continued homelessness and the loss of her Section 8 benefit without due process outweighs any expenditure of resources by Defendants to reinstate Plaintiff's Section 8 voucher to correct the improper termination without due process. *See e.g., Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987) (monetary harm is not irreparable injury).

The reinstatement of Plaintiff's Section 8 assistance merely means that Defendants will only have to provide the same housing rental assistance to Plaintiff that they provided for many years.  It does not burden the government to perform a task it has already been carrying out, and only erroneously stopped performing, because of its unlawful, unconstitutional action. The balance of hardships warrants entry of an injunction.

**D.      Entry of Relief Serves the Public Interest**

12

The public interest is served in the correct administration of the Section 8 program, guaranteeing that those in financial need are not unreasonably terminated from public assistance benefits, and in the provision of safe, decent low-income housing. *See Basham,* 805 F.Supp. at 932. *See also Johnson v. U.S. Dep't of Agric.*, 734 F.2d 774, 788 (11th Cir. 1984). The public interest includes "ensuring that participants are afforded housing benefits to which they were entitled and are 'afforded full [and meaningful] procedural due process before their participation in the program is involuntarily terminated' which protects rights to housing assistance as well as 'society's concern for close scrutiny of adverse determinations.'" *Johnson,* 2012 WL 10688344, at *8, citing *Stanley v. Baltimore Cnty. MD,* 2006 WL 1238559, at *3 (D. Md. 2006).

The provision of a pre-termination hearing to program participants is essential to due process. To deny injunctive relief while this litigation is pending would allow Defendants to continue to blatantly undermine the constitutional due process guarantees provided to Section 8 program participants. Public policy concerns weigh in favor of preliminary injunctive relief to insure that government agencies follow their own rules and that Plaintiff will not be deprived of due process. *See Campos v. I.N.S.*, 70 F. Supp. 2d 1296, 1310 (S.D. Fla. 1998).

In determining whether the public interest will be disserved by the granting of a request for preliminary injunctive relief, courts may look to the legislative intent in enacting the statute sought to be enforced. *See Johnson,* 734 F.2d at 778 ("Congressional intent and statutory purpose can be taken as a statement of public interest.") The Section 8 program was enacted for the purpose of "aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C. § 1437f(a). The public interest is

13

served in the correct administration of the Section 8 program. *Basham*, 805 F. Supp. at 932, and provision of safe, decent housing. *Johnson*, 734 F.2d at 788.

Given the likelihood of success on the merits, the public interest weighs in favor of Plaintiff and will be served by granting the preliminary injunction to reinstate Plaintiff's Section 8 program rental assistance voucher, requiring Defendants to timely process any documents necessary for Plaintiff to obtain new housing using her voucher and restraining Defendants from further unlawful actions to limit or terminate Plaintiff's participation in the Section 8 Program pending final resolution of this action.

## II.    The Court Should Waive the Bond

Exemption from the bond requirement is appropriate here. "[T]he amount of security required by [Fed. R. Civ. P. 65(c)] is a matter within the discretion of the trial court…[and] the court may elect to require no security at all." *BellSouth Telecomms.*, 425 F.3d at 971. Public interest litigation is a recognized exception to the Rule 65(c) security requirement. *See e.g., City of Atlanta v. Metro Atlanta Rapid Transit*, 636 F.2d 1084, 1094 (5th Cir. 1981);[3] *Daniels v. School Bd. of Brevard County*, 985 F. Supp. 1458, 1462 (M.D. Fla. 1997). Courts have also used their discretion to waive the security requirement where, as here, plaintiff is indigent. *Sanders v. Sellers-Earnest*, 768 F. Supp. 2d 1180, 1188 (M.D. Fla. 2010) (bond or other security requirement waived where plaintiff, an indigent Section 8 housing assistance recipient, granted preliminary injunction on procedural due process violation); *Campos*, 70 F.Supp. 2d at 1310 (no security required where plaintiffs are indigent and disabled and seek to vindicate their federal statutory and constitutional rights); *Bass v. Richardson*, 338 F.

---

[3] The Eleventh Circuit adopted all decisions the former Fifth Circuit made prior to October 1, 1981, as binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

Supp. 478, 490 (S.D.N.Y. 1971) ("It is clear that indigents, suing individually or as class plaintiffs, ordinarily should not be required to post a bond under Rule 65(c)"); *Denny v. Health & Social Serv. Bd. of State of Wis.*, 285 F. Supp. 526, 527 (E.D. Wis. 1968) ("Poor persons...are by hypothesis unable to furnish security as contemplated in Rule 65(c), and the court should order no security in connection with this preliminary injunction.").

Plaintiff is low-income, homeless and seeks preliminary injunctive relief to re-instate her Section 8 program voucher rental assistance to obtain safe, affordable housing. (Ex. 1, ¶¶ 3, 12-15.) This case implicates the public interest and the balance of hardships tips sharply in Plaintiff's favor. Accordingly, the Court should exercise its discretion and waive the bond.

## CONCLUSION

Based on the foregoing reasons, Plaintiff respectfully requests that this Court issue a preliminary injunction ordering Defendants to immediately reinstate Plaintiff's Section 8 program rental assistance voucher, ordering Defendants to timely process any and all documents necessary for Plaintiff to obtain new housing using her Section 8 voucher and restraining Defendant OHA and its officers, agents, servants, employees, and successors from acting to limit or terminate Plaintiff's participation in the Section 8 Program pending final resolution of this action.

Dated: October 20, 2014                    Respectfully submitted,

Natalie N. Maxwell, Fla. Bar No.: 16746
Community Legal Services Of Mid-Florida, Inc.
1610 S.E. 36th Avenue
Ocala, FL 34471
(352) 629-0105 (phone)
(352) 629-8877 (fax)

15

nataliem@clsmf.org
**Trial Counsel**


Caroline E. Ware, Fla. Bar No.: 47403
Community Legal Services of Mid-Florida, Inc.
122 East Colonial Dr., Suite 200
Orlando, FL 32801
(407) 841-7777 (phone)
(407) 246-1661 (fax)
carolinew@clsmf.org


Andrea Costello, Fla. Bar No.: 0532991
Legal Advocacy Center of Central Florida
310 S. Magnolia Avenue
Sanford, FL 32771
(407) 708-1020 (phone)
(407) 708-1024 (fax)
andreac@laccf.org

ATTORNEYS FOR PLAINTIFF