# EXHIBIT 6

### RESOLUTION NO.: 3327
### AUTHORIZE AMENDMENT TO
### THE HOUSING CHOICE VOUCHER ADMINISTRATIVE PLAN
### TO OPERATE ACCORDING TO THE MOVING TO WORK PLAN

**WHEREAS,** the Housing Authority of the City of Orlando (OHA), Florida's Board of Commissioners and staff are committed to its mission, "To offer a choice of safe and affordable housing options and opportunities for economic independence for residents of Orlando and Orange County," and

**WHEREAS,** on January 29, 2010, U.S. Housing and Urban Development (HUD) Assistant Secretary Sandra B. Henriquez announced that the Housing Authority of the City of Orlando, FL was selected for the Moving To Work (MTW) Demonstration Program, and

**WHEREAS,** HUD authorized Public Housing Agencies (PHA) to administer a Housing Choice Voucher Program through the use of its Housing Choice Voucher Administrative Plan, and

**WHEREAS,** the Housing Choice Voucher Administrative Plan outlines policies on matters in which OHA has discretion and to establish local policies, and

**WHEREAS,** Moving to Work (MTW) is a demonstration program for public housing authorities (PHAs) that provides them the opportunity to design and test innovative, locally-designed strategies that use Federal dollars more efficiently, help residents find employment and become self-sufficient, and increase housing choices for low-income families, and

**WHEREAS,** the MTW demonstration program gives PHAs exemptions from many existing public housing and voucher rules and provides flexibility in the use of Federal funds, and

**WHEREAS,** Moving to Work (MTW) Public Housing Agencies may implement programs that are approved by the United States Department of Housing and Urban, and

**WHEREAS,** the Orlando Housing Authority's Moving to Work Plan is incorporated into the Housing Choice Voucher Program Administrative Plan by reference.

**NOW, THEREFORE, BE IT RESOLVED** that the Housing Authority of the City of Orlando, Florida's Board of Commissioners authorizes Amendment to the Housing Choice Voucher Administrative Plan to operate in accordance with the Moving to Work Plan and authorizes the President/CEO to negotiate, execute agreements and make changes that are not substantial.


VIVIAN BRYANT, ESQ.
PRESIDENT/CEO

ED CARSON
CHAIR

aproved 05/20/2010


Admin Plan 5 & revised  18 Sept 2014 (Repaired)          9/23/14          Page 1 of 146



## RESOLUTION NO. 061903
## AUTHORIZING CHANGES TO BE MADE TO OUR CURRENT SECTION-8 HOUSING CHOICE VOUCHER (HCV) PROGRAM ADMINISTRATIVE PLAN

**WHEREAS,** the Housing Authority of the City of Orlando's Board of Commissioners and staff are committed to providing safe and affordable housing to eligible individuals and families, including persons with disabilities, and

**WHEREAS,** the United States Department of Housing and Urban Development has authorized Public Housing Agencies (PHA) to administer a Section-8 HCV program, through the use of it Administrative Plan.

**WHEREAS,** the Administrative Plan must state the PHA's policies on matters for which the PHA has discretion to establish local policies, and

**WHEREAS,** a PHA must administer its program in accordance with its Administrative Plan, and

**WHEREAS,** a PHA is required to revise its Administrative Plan to be in accordance with the Department of Housing and Urban Development (HUD) regulations and requirements, and

**WHEREAS,** the current Administrative Plan for the Section 8 HCV Program of the Housing Authority of the City of Orlando Housing (OHA), dated March 8, 2001 is not fully in accordance with revised HUD regulations as set forth in 24 CFR Parts 5,8,35,92, 882, 887,888,903, 908, 982, 983, 984, 985.

**NOW, THEREFORE, BE IT RESOLVED** that the Board of Commissioners of the Housing Authority of the City of Orlando, Florida authorizes the changes that are to be made to the current Administrative Plan for the Section-8 Housing Choice Voucher Program, and further authorizes the Executive Director to make minor procedural changes as necessary.

| | |
|---|---|
| **VIVIAN BRYANT, ESQ.** | **EDWARD CARSON** |
| **EXECUTIVE DIRECTOR** | **CHAIRMAN** |



## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................1
Chapter 1        8
PURPOSE AND GENERAL POLICIES ........................................................................................8
  A. Purpose of the Administrative Plan.........................................................................................8
  B. Background ...............................................................................................................................8
  C. Required Contents of the Administrative Plan.........................................................................9
  D. Special Housing Types —Homeownership Option ...............................................................10
  E. Intent to Administer Section 8 Project-Based Voucher Program,..........................................10
  F. Organization of this Administrative Plan ..............................................................................10
  G. Hours of Operation................................................................................................................10
Chapter 2        11
ELIGIBILITY FOR ADMISSION ..............................................................................................11
  A. Key Terminology ...................................................................................................................11
  B. Discretionary Policies Affecting Admission to the Program ................................................11
  C. Denial of Admission...............................................................................................................12
  D. OHA Discretion to Consider Circumstances. .......................................................................13
  E. Informal Review Procedures for Applicants. ........................................................................13
  F. Denials Based on Immigration Status.....................................................................................14
Chapter 3        15
APPLYING FOR ADMISSION ...................................................................................................15
  A. Two-Phase Application Process.............................................................................................15
  B. Opening/Closing of Section 8 Waiting List ..........................................................................15
  C.        Completion of Pre-Application ...................................................................................18
  D.        Administration Of Waiting List ..................................................................................21
  E.        Full Application............................................................................................................24
  F.        Final Determination And Notification Of Eligibility/Ineligibility.............................27
  G.        Selection For Voucher Issuance...................................................................................28
Chapter 4        31
PREFERENCES .............................................................................................................................31
  A.        Local Preferences........................................................................................................31
  B.        Ranking Preference .....................................................................................................32
Chapter 5        33
SUBSIDY STANDARDS ..............................................................................................................33
  A.        Determining Voucher Size.........................................................................................33
  B.        Changes in Voucher Size ...........................................................................................34
  C.        Unit Size Selected ......................................................................................................35
Chapter 6        36
VOUCHER ISSUANCE AND BRIEFINGS ...............................................................................36
  A.        Issuance Of Vouchers ................................................................................................36
  B.        Briefing Types.............................................................................................................36
  C. Term Of Voucher ...................................................................................................................36
  D.        Family Breakup and Voucher Issuance ......................................................................37
  E. Remaining Member of Tenant Family and Voucher Issuance ...............................................38
Chapter 7        39
FACTORS RELATED TO CALCULATION OF TOTAL TENANT PAYMENT ....................39
  A.        Total Tenant Payment.................................................................................................39
  B.        Minimum Rent for Section 8.......................................................................................39

C.  Financial Hardship Exemption from Minimum Rent.................................................................39
D.  Absence of Family Members ......................................................................................................39
E.  Unauthorized Family Members ..................................................................................................41
F.  Reporting Changes in Family Composition................................................................................41
G.  Averaging Income.......................................................................................................................42
H.  Zero Income families ..................................................................................................................42
I.  Income of Person Permanently Confined to Nursing Home .....................................................42
J.  Regular Contributions or Gifts...................................................................................................42
K.  Alimony and Child Support Payments.......................................................................................42
L.  Lump Sum Receipts ....................................................................................................................43
M.  Contributions To Retirement Funds-Assets ..............................................................................43
N.  Assets Disposed of for Less than Fair Market Value.................................................................43
O.  Child Care Expenses ...................................................................................................................44
P.  Medical Expenses .......................................................................................................................44
Q.  Attendant Care and Auxiliary Apparatus Expenses of Persons with Disabilities ....................44
R.  Pro-ration of Assistance for 'Mixed' Families ..........................................................................45
S.  Changes in TANF Income ..........................................................................................................45
T.  Utility Allowance and Utility Reimbursement Payments .........................................................46
Chapter 8      47
VERIFICATION PROCEDURES...........................................................................................................47
Acceptable Methods of Verification ..................................................................................................47
Types of verification ..........................................................................................................................49
Verification of Citizenship or Eligible Non-citizen Status ...............................................................52
Verification of Social Security Numbers ...........................................................................................53
Timing of Verification .......................................................................................................................53
A.  Frequency of Obtaining Verification .........................................................................................54
B.  Release of Information ................................................................................................................54
C.  Computer Matching.....................................................................................................................54
D.  Items to be Verified.....................................................................................................................54
E. Verification of Income ................................................................................................................55
F.  Income from Assets .....................................................................................................................58
G.  Verification Of Assets.................................................................................................................59
H.  Verification of Allowable Deductions from Income..................................................................59
I. Verifying Non-Financial Factors...................................................................................................61
J. Verification of Local and Ranking Preferences .............................................................................65
Chapter 9      67
REQUEST FOR TENANCY APPROVAL AND CONTRACT EXECUTION.......................................67
A. OHA Review of Request for Tenancy Approval and Lease .........................................................67
B. OHA Action Upon Receipt of Request for Tenancy Approval and Lease...................................67
C. Disapproval of Request for Tenancy Approval............................................................................68
D. Eligible Types of Housing ............................................................................................................68
E. Separate Agreements.....................................................................................................................68
F. Disapproval of Proposed Rent......................................................................................................69
G. Information to Owners...................................................................................................................69
H. Change in Ownership.....................................................................................................................69
I. Execution of Housing Assistance Payments Contract ..................................................................69
Chapter 10      71
HOUSING QUALITY STANDARDS AND INSPECTIONS................................................................71
A. Types of Inspections .....................................................................................................................71

B. Scheduling Inspections..................................................................................................71
C. Time Standards for Repairs............................................................................................72
D. Consequences if Repairs are not Made within Time-Frames Specified ..........................72
Chapter 11      74
RENT REASONABLENESS, PAYMENT STANDARDS AND RENT ADJUSTMENTS ..................74
A. Reasonable Rents.........................................................................................................74
B. Payment Standards .......................................................................................................74
C. Rent Adjustments .........................................................................................................75
Chapter 12      76
RE-CERTIFICATIONS..........................................................................................................76
A. Annual Re-certification Of Family Income and Composition..........................................76
B. Failure to Attend Scheduled Interview..........................................................................76
C. Failure to Provide Requested Information ......................................................................76
D. Payment Adjustment Notice .........................................................................................77
E. Reporting Changes in Family Income ............................................................................77
G. Interim Re-certification of Family Composition...............................................................77
H. Effective Date of Interim Re-certification ......................................................................77
Chapter 13      78
MOVES WITH CONTINUED ASSISTANCE/ PORTABILITY ...................................................78
A. Restrictions...................................................................................................................78
B. Notice Requirements .....................................................................................................78
C. HAP Payments .............................................................................................................78
D. Outgoing Portability.....................................................................................................78
E. Incoming Portability......................................................................................................79
Chapter 14      81
HAP CONTRACT TERMINATIONS .......................................................................................81
A. Automatic Termination of the HAP Contract ................................................................81
B. Termination of The HAP Contract by OHA ...................................................................81
Chapter 15      83
TERMINATION OF ASSISTANCE TO THE FAMILY BY THE OHA .........................................83
A. Grounds For Termination...............................................................................................83
B. Family Obligations.........................................................................................................84
C. Procedures for Non-Citizens .........................................................................................88
D. Option not to Terminate for Misrepresentation...............................................................89
E. Misrepresentation in Collusion with Owner....................................................................89
F. Missed Appointments and Deadlines .............................................................................90
Chapter 16      91
OWNER DISAPPROVAL AND RESTRICTIONS......................................................................91
A. Disapproval of Owner....................................................................................................91
B.Owner Restrictions and Penalties....................................................................................91
C. Other Remedies for Owner Violations ...........................................................................92
Chapter 17      93
Reserved      93
Chapter 18      94
OWNER OR FAMILY DEBTS TO THE OHA ..........................................................................94
A. Repayment Agreement for Families ...............................................................................94
B. Debts Owed for Claims .................................................................................................95
C. Debts Due to Fraud/Non-Reporting of Information.........................................................95
D. Owner Debts to The OHA..............................................................................................96

Chapter 19     97
COMPLAINTS AND APPEALS ................................................................................................. 97
    A. Complaints to the OHA ................................................................................................. 97
    B. Informal Review Procedures for Applicants .................................................................. 97
    C. Informal Hearing Procedures ......................................................................................... 98
    D. Hearing and Appeal Provisions for "Restrictions On Assistance To Non-Citizens" ..... 101
    E. Mitigating Circumstances for Applicants/Participants with Disabilities ........................ 102
LIMITED ENGLISH PROFICIENCY (LEP) PLAN ................................................................ 103
    A.    PLAN STATEMENT ................................................................................................. 103
    B.    MEANINGFUL ACCESS; FOUR-FACTOR ANALYSIS ........................................... 103
    C.    LANGUAGE ASSISTANCE ...................................................................................... 103
    E.    MONITORING ........................................................................................................... 106
    F.    LEP PLAN DISTRIBUTION AND TRAINING ......................................................... 106
VIOLENCE AGAINST WOMEN ACT POLICY ...................................................................... 107
    Definitions: ........................................................................................................................ 107
    Statement of Policy ............................................................................................................ 107
    Bifurcation ......................................................................................................................... 108
    Termination for Other Reasons........................................................................................... 108
    Actual and Imminent Threat to Others ............................................................................... 108
    Certification ....................................................................................................................... 108
    Confidentiality ................................................................................................................... 109
    Portability........................................................................................................................... 109
Chapter 19a     110
REASONABLE ACCOMMODATION POLICY AND PROCEDURES ........................................ 110
Chapter 19b     115
    Effective Communication Policy ........................................................................................ 115
Chapter 20     116
SPECIAL HOUSING TYPES -SECTION 8 HOMEOWNERSHIP PROGRAM ......................... 116
    Section 8 Housing Choice Voucher Homeownership Program ............................................ 116
Appendix A     118
ENCOURAGING PARTICIPATION BY OWNERS OF UNITS LOCATED OUTSIDE AREAS OF
LOW-INCOME OR MINORITY CONCENTRATION .............................................................. 118
    A. Encouraging Families to Expand Housing Search ......................................................... 118
    B. Revising Payment Standards ......................................................................................... 118
    C. Owner Outreach ............................................................................................................ 118
    D. Assisting Families Encountering Illegal Discrimination ............................................... 119
Appendix A-1
    Administration of Ninety (90) HCV Transferred from the Sanford Housing Authority (SHA)................
Appendix A-2
    Administration of the Sanford Housing Authority (SHA) Housing Choice Voucher Waiting List ...........
Appendix A-3
    Administer Vouchers in the Sanford Housing Authority Jurisdiction .......................................................
Appendix A-4
    Preference on the Housing Choice Voucher waiting list for current Redding Gardens Residents .............
Appendix B     121
POLICIES ON USE OF ADMINISTRATIVE FEE RESERVE.................................................. 121
Appendix C     122
DEFINITIONS 122
    Accessible Dwelling Units................................................................................................. 122

Accessible Facility ..................................................................................... 122
Accessible Route........................................................................................ 122
Adaptability................................................................................................ 122
Admission .................................................................................................. 123
Adjusted Income ....................................................................................... 123
Alteration ................................................................................................... 123
Anticipated Annual Income ...................................................................... 123
Applicant.................................................................................................... 123
Application................................................................................................. 123
Appropriate Unit Size ............................................................................... 123
Area of Operation ..................................................................................... 124
Assets 124
Auxiliary Aids............................................................................................ 124
Care Attendant .......................................................................................... 124
Ceiling Rent .............................................................................................. 124
Child Care Expenses ................................................................................ 124
Co-Head of Household ............................................................................. 125
Community Service .................................................................................... 125
Dependent ................................................................................................. 125
Designated Family .................................................................................... 125
Designated Housing.................................................................................. 125
Development .............................................................................................. 126
Dilapidated................................................................................................ 126
Disability Assistance Expense .................................................................. 126
Disabled Family ........................................................................................ 126
Disabled Person ........................................................................................ 126
Displacement............................................................................................. 127
Divestiture Income.................................................................................... 127
Domestic Violence..................................................................................... 127
Due Process Determination....................................................................... 128
Economic Self-Sufficiency Program ........................................................ 128
Elderly Family ........................................................................................... 128
Elderly Household ..................................................................................... 128
Elderly Person........................................................................................... 128
Elements of Due Process .......................................................................... 128
Eligibility Income ...................................................................................... 128
Exempt Individuals ................................................................................... 129
Extremely Low Income Family ................................................................. 129
Eviction...................................................................................................... 129
Family ........................................................................................................ 129
Family Self Sufficiency ............................................................................. 130
Flat Rents .................................................................................................. 130
Foster Child/adult..................................................................................... 130
Fraud 130
Fulltime Student........................................................................................ 130
Grievance Procedures ............................................................................... 130
Handicapped Person.................................................................................. 130
Handicapped Assistance Expenses ........................................................... 131
Hardship Waiver (Minimum Rent)........................................................... 131

Hate Crimes ..................................................................................................................................131
Head of Household ........................................................................................................................132
Homeless Family ...........................................................................................................................132
Household .......................................................................................................................................132
Housing Quality Standards (HQS)................................................................................................132
HUD 132
Imputed Welfare Income ...............................................................................................................132
Income -- Adjusted ........................................................................................................................133
Income - Annual ............................................................................................................................133
Income Based Rent ........................................................................................................................133
Income - Eligibility .......................................................................................................................133
Income Exclusions (Mandatory)...................................................................................................133
Income Exclusions (Optional) ......................................................................................................133
Income Limits ................................................................................................................................133
Individual Savings Accounts .........................................................................................................134
Interim Redetermination ...............................................................................................................134
Involuntary Displacement .............................................................................................................134
Kinship Care Giver ........................................................................................................................134
Live-in Aide ...................................................................................................................................135
Local Preference ............................................................................................................................135
Local Resident ...............................................................................................................................135
Low Income Family .......................................................................................................................135
Medical Expense ............................................................................................................................135
Medical Expense Allowance.........................................................................................................136
Minimum Rent ...............................................................................................................................136
Minor 136
Mixed Population Development .....................................................................................................136
Mixed Family.................................................................................................................................136
Monthly Income.............................................................................................................................137
Monthly Adjusted Income ............................................................................................................137
Multifamily Housing Development ...............................................................................................137
Near-Elderly Family ......................................................................................................................137
Near Elderly Person .......................................................................................................................137
Negative Rent.................................................................................................................................137
Net Family Assets..........................................................................................................................137
Non-citizen.....................................................................................................................................138
Over-Income Family ......................................................................................................................138
Participant ......................................................................................................................................138
Permissive Deductions...................................................................................................................138
Pet Policy .......................................................................................................................................139
Phase-in of Earned Income ...........................................................................................................139
Portion of Development .................................................................................................................139
Pregnant Woman or Adopting Parent ...........................................................................................139
Public Assistance ...........................................................................................................................139
Reasonable Accommodation .........................................................................................................139
Redetermination .............................................................................................................................139
Re-certification ..............................................................................................................................139
Resident .........................................................................................................................................140
Service Provider.............................................................................................................................140

Single Person ............................................................................................................................... 140
Skipping ....................................................................................................................................... 140
Specified Welfare Benefit Reduction ......................................................................................... 140
Spouse .......................................................................................................................................... 140
TANF 140
Targeting ...................................................................................................................................... 140
Temporary, Non-Recurring, Sporadic Income ........................................................................... 141
Tenant Rent .................................................................................................................................. 141
Total Tenant Payment (TTP) ....................................................................................................... 142
Transfer Request .......................................................................................................................... 142
Transfer Rules .............................................................................................................................. 142
Uniform Federal Accessibility Standards ................................................................................... 142
Utilities ........................................................................................................................................ 142
Utility Allowance ........................................................................................................................ 142
Utility Reimbursement ................................................................................................................ 143
Very Poor Family ......................................................................................................................... 143
Very Low Income Family ............................................................................................................ 143
Veteran ......................................................................................................................................... 143
Violent Criminal Activity ........................................................................................................... 143
Waiting List ................................................................................................................................. 143

# Chapter 1

# PURPOSE AND GENERAL POLICIES

## A.  Purpose of the Administrative Plan

The United States Department of Housing and Urban Development (HUD) requires each Public Housing Agency (PHA) administering tenant-based housing assistance programs under Section 8 of the United States Housing Act of 1937, as amended (42 U.S.C. 1 437f), to adopt a written Administrative Plan that establishes local policies for administration of the programs in accordance with HUD requirements.

The purpose of an Administrative Plan is to state PHA policy on matters for which the PHA has discretion to establish local policies. It is not meant to repeat, nor can it amend, non-discretionary HUD requirements. Such requirements are established by regulations appearing in the Code of Federal Regulations (CFR) and *Federal Register* Notices or other binding program directives.

The principal regulations affecting the Section 8 tenant-based programs are contained in 24 CFR Parts *5, 8, 35,* 92, 882, 887, 888, 903,908,982, 983, 984, and *985.* For the most part, these regulations carefully and unambiguously define terms, and state what applicants, participants, PHA's, and landlords "must" or "shall" do in order to participate in the programs.

In recent years, HUD has provided PHA's an increasing opportunity to develop local approaches to meet certain requirements and to exercise choice as to whether or not to take a specified action. In addition, since HUD regulations and notices do not always specify or provide guidance on "how to" meet each requirement; PHA's have to develop their own implementing instructions for some subjects.

## B.  Background

Currently, there is one active Section 8 tenant-based program—the Certificate Program has been replaced by the Housing Choice Voucher Program (Voucher Program). Unless specifically stated in this Administrative Plan, the eligibility requirements remain the same.

The Quality Housing and Work Responsibility Act of 1998 (QHWRA, also referred to as the Public Housing Reform Act or PHRA) consolidated the Section 8 certificate and voucher programs into a single tenant-based program — the Housing Choice Voucher Program. In 1999, and 2000, HUD promulgated implementing regulations for the consolidated program, which provide, in part, that subsequent to the merger date (October 1, 1999), PHA's may only enter into Housing Assistance Payments (HAP) Contracts under the Housing Choice Voucher Program. As a result, a Section 8 certificate participant will automatically become a participant in the Housing Choice Voucher Program when a PHA executes a new HAP contract on their behalf. In addition, PHA's must terminate assistance under any regular certificate HAP contract (entered into before the merger date) at the effective date of the second regular reexamination of family income and composition on or after the merger date.



## C.  Required Contents of the Administrative Plan

HUD requires a PHA to include in its Administrative Plan policies on 22 subjects. These subjects are described in 24 CFR 982.54 (d), and repeated in the table below, which cites the chapter(s) in the Administrative Plan where the OHA policy on the subject is contained.

| | Subject<br>Location | Chapter |
|---|---|---|
| 1 | Selection and admission of applicants from the PHA waiting list including any PHA admission preferences. Procedures for removing applicant names from the waiting list and procedures for closing and reopening the PHA waiting list | 3,4 |
| 2 | Issuing or denying vouchers, including PHA policy governing the voucher term and any extensions or suspensions of the voucher term. "Suspension" means stopping the clock on the term of a family's voucher after the family submits a request for approval of the tenancy. If the PHA decides to allow extensions of the voucher term, the PHA administrative plan must describe how the PHA determines whether to grant extensions or suspensions, and how the PHA determines the length of any extension or suspension | 3,4,6 |
| 3 | Any special rules for use of available finds when HUD provides finding to the PHA for a special purpose (e.g., desegregation), including funding for specified families or a specified category of families | 3 |
| 4 | Occupancy policies, including:<br>  (i)   Definition of what group of persons may qualify as a "family"<br>  (ii)  Definition of when a family is considered to be "continuously assisted" | 2 |
| 5 | Encouraging participation by owners of suitable units located outside areas of low income or minority concentration | Appendix A |
| 6 | Assisting a family that claims that illegal discrimination has prevented the family from leasing a suitable unit | Appendix A |
| 7 | Providing information about a family to prospective owners | 9 |
| 8 | Disapproval of owners | 9 |
| 9 | Subsidy standards | 5 |
| 10 | Family absence from the dwelling unit | 7 |
| 11 | How to determine who remains in the program if the family breaks up | 6 |
| 12 | Informal review procedures for applicants | 19 |
| 13 | Informal hearing procedures for participants | 19 |
| 14 | The process for establishing and revising voucher payment standards | 11 |
| 15 | The method of determining that rent to owner is a reasonable rent | 11 |



| | | |
|---|---|---|
| | (initially and during the term of a HAP contract) | |
| 16 | Special policies concerning special housing types in the program (e.g., use of shared housing) | 20 |
| 17 | Policies concerning payment by a family to the PHA of amounts the family owes the PHA | 18 |
| 18 | Interim re-determinations of family income and composition | 12 |
| 19 | Restrictions, if any, on the number of moves by a participant family (see Section 982.314(c) | 13 |
| 20 | (NOTE: Error in regulations-item 20 repeats item 19 verbatim) | |
| 21 | Approval by the Board of Commissioners or other authorized officials to charge the administrative fee reserve | Appendix B |
| 22 | Procedural guidelines and performance standards for conducting required HQS Inspections | 10 |
| 23 | PHA screening of applicants for family behavior or suitability for tenancy | 2 |
| | | |

## D. Special Housing Types —Homeownership Option

On September 12, 2000, HUD published in the *Federal Register* its Final Rule on the Section 8 Homeownership Program. This rule added a homeownership option to the list of special housing types that a PHA has the discretion to permit a family to use that is contained in subpart M of 24 CFR 982. The OHA has decided to implement a Section 8 Homeownership Program. The OHA policies for this program are contained in Chapter 20.

## E. Intent to Administer Section 8 Project-Based Voucher Program,

HUD has indicated that it will replace the Section 8 Project- Based Certificate Program with a Project-Based Voucher Program. It is the intent of OHA to implement a Section 8 Project-Based Program subsequent to HUD's issuance of its Project-Based Voucher rule.

## F. Organization of this Administrative Plan

This Administrative Plan is organized to reflect the process flow for the Section 8 Housing Choice Voucher programs. Where a requirement or procedure is non-discretionary, generally, it is not repeated in this Administrative Plan. In lieu, the appropriate CFR citation is provided. The exception is when a repeat of a non-discretionary requirement is necessary in order to clarify an OHA discretionary policy or procedure.

## G. Hours of Operation

The hours of operation for the Orlando Housing Authority Section 8 office are 8:30am-5:00pm, Monday-Thursday. The Section 8 office will service Participants by appointment only. The last appointment is 4:00pm. The Section 8 office is closed on Fridays. Phone inquiries are handled on Fridays.

Emergency situations (fire, flood, domestic violence) will receive same-day appointments.



## Chapter 2

## ELIGIBILITY FOR ADMISSION

OHA will only admit an eligible family to the program. To be eligible, the applicant must be a "family", must be income-eligible, must be 18 yrs or older (unless the individual is an emancipated minor and has court documentation to prove that status) and must be a citizen or a non-citizen who has eligible immigration status as determined in accordance with 24 CFR Part 5. The definition of a family will be as described in 24 CFR 982.201 (c).

### A.  Key Terminology

"Admission to the program" means that OHA has executed a HAP Contract on behalf of a family. When this occurs, a family moves from "applicant" status to that of "participant". The requirements pertaining to a program participant differ from those pertaining to an applicant. Denial of admission can occur at any stage, depending on circumstances. OHA may determine, for example, that a family that has completed a pre-application has too high an income to be eligible for the Section 8 program and not place the family on the PHA waiting list. When verifying information provided by an applicant who is on the waiting list who has been invited to complete a full application, denial of admission to the program would occur when, for example, OHA determines not to issue the family a voucher because the applicant would not sign the release form enabling OHA to verify income, or that the applicant provided false information. At a later stage, OHA may deny an applicant admission to the program because even though issued a voucher, the family failed to locate an approvable unit within the time period permitted.

### B.  Discretionary Policies Affecting Admission to the Program

**(1) Low-income Eligibility.** In addition to the HUD-required income-eligibility factors set forth in 24 CFR 982.201(b), OHA, pursuant to the authority granted by Section 982.201(b)(iii), has determined that a low-income family will be considered income-eligible if the head, spouse, or sole member has been continually employed for six (6) months.

**(2) Expanded Definition Of Family.** Family includes, but is not limited to, regardless of marital status, actual or perceived sexual orientation, or gender identity, the following:
(1) A single person, who may be an elderly person, displaced person, disabled person, near-elderly person, or any other single person; or
(2) A group of persons residing together, and such group includes, but is not limited to:
    (a) A family with or without children (a child who is temporarily away from the home because of placement in foster care is considered a member of the family);
    (b) An elderly family;
    (c) A near-elderly family;
    (d) A disabled family;
    (e) A displaced family; and
    (f) The remaining member of a tenant family.



**(3) Continuously Assisted.** In addition to the definition of "continuously assisted" contained in 24 CFR 982.201 (d) (1), OHA, pursuant to the requirement contained in Section 982.201 (d) (2), has determined that a brief interruption of 90-days or less will <u>not</u> be considered a break in continuity of assistance under the 1937 Housing Act.

**(4) Live-in Aide.** A live-in aide may only reside in the unit with the approval of OHA. Written verification will be required from a professional, such as a medical doctor, psychologist, or social worker that the live-in aide is essential to the care and well being of the Section 8 recipient.

**(5) Live-in Aide Family Member.** Family members of a "live-in aide" as defined in 24 CFR 5.403 may reside in a unit occupied by one or more elderly persons, or near elderly persons, or persons with disabilities provided that this does not increase the subsidy by the cost of an additional bedroom and that the presence of the live-in aide's family members does not overcrowd the unit.

**(6) Joint Custody of Children.** Children who are subject to a joint custody agreement will be considered a member of the household of the parent they live with at least *51%* of the time (183 days of the year, which do not have to run consecutively).

**(7) Split households.** When a family on the waiting list splits into two otherwise eligible families due to a divorce or legal separation and the new families both claim the same placement on the waiting list and there is no court determination, the Authority will make the decision regarding who will retain the place on the waiting list, taking into consideration the following factors:

1. Which family member applied as head of household;
2. Which family unit retains the children or any disabled or elderly members;
3. Restrictions that were in place at the time the family applied;
4. Role of verified domestic violence in the split.

**(8) Violence Against Women and Department of Justice Reauthorization Act of 2005.** A victim of domestic violence, dating violence, or stalking, as these terms are defined in the law, is not a basis for denial of assistance or admission to the section 8 housing choice voucher program if the applicant otherwise qualifies for assistance or admission.

## C. Denial of Admission.

In addition to HUD-mandated reasons for denial of admission set forth in 24 CFR 982.552 (b), OHA has determined to utilize the authority provided by Section 982.552 (c) including the requirements of the Proposed Rule (FR 7/23/99) 24 CFR 5 Subparts I and J, to deny admission to an applicant who:

    (1)    **Violates Family Obligations.** OHA will deny admission if the family fails to supply information. ("Information" includes any requested certification, release or



other documentation.) that OHA or HUD determines is necessary in the administration of the program, including (a) submission of required evidence of citizenship or eligible immigration status (as required by 24 CFR Part 5) and (b) provision of social security numbers (as required by 24 CFR part 5, subpart B). Any information supplied by the family must be true and complete.

(2)   **Engages in Crime.** OHA will deny admission if any member of the household has a history of criminal activity involving crimes to persons or property and/or other criminal acts that affect the health, safety, or the right to peaceful enjoyment of the premises by other residents commits drug related or violent criminal activity within the last five (5) years, as provided by Section 982.553. (ii) B

(3)   **Has Been Evicted from Federally Assisted Housing.** OHA will deny participation if any member of the family has been evicted from Federally assisted housing.

(4)   **Committed Corrupt or Criminal Acts.** OHA will deny participation if any member of the family has committed fraud, bribery, or any other corrupt or criminal act in connection with any Federal housing program within five (5) years of processing their paperwork.

(5)   **Owes Rent to PHA.** OHA will deny participation if the family currently owes rent or other amounts to OHA or another PHA in connection with Section 8 or public housing assistance.

(6)   **Engages in Abusive Behavior.** OHA will deny participation if the family has engaged in or threatened, verbally abusive or violent behavior towards OHA personnel and/or property owners.

(7)   **Sex Offenders** will be permanently denied admission.

(8)   **Producers of Amphetamine on OHA Premises** will be permanently denied admission or will be terminated from program participation.

(9)   **Persons with a Current and Recent History and Pattern of Drug and/or Alcohol Abuse** will be permanently denied admission.

## D.  OHA Discretion to Consider Circumstances.

In determining whether to deny admission because of action or failure to act by members of the applicant family, OHA will consider of the circumstances in each case. This includes considering the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member and the effects of denial of assistance on other family members who were not involved in the action or failure.

### Discretion Limitations
Such discretion does not apply to persons evicted from Federally assisted housing within the last five (5) years for drug related or criminal activity, sex offenders subject to a lifetime registration requirement, persons convicted of producing amphetamine on the premises of assisted housing.

## E.  Informal Review Procedures for Applicants.

OHA provides an applicant that is denied admission an opportunity to request an informal review of the decision. It is OHA policy that a request for an informal review must be received in



writing by the close of the business day, no later than ten business days from the date of OHA's written notice denying admission. Within ten business days from the date the request is received, OHA will schedule the informal review.

Generally, the hearing officer or other designee will conduct the review. In the event that either of these persons made or approved the decision under review, a senior OHA staff member not responsible for making or approving the decision will conduct the review.

The applicant will be given the option of presenting oral or written objections to the decision. Both OHA and the family may present evidence and witnesses. The family may use *an* attorney or other representative to assist them at their own expense.

OHA will provide the applicant a written notice of its final decision within ten business days following the review. This notice will include a brief statement of the reasons for the final decision.

## F. Denials Based on Immigration Status

If an applicant is denied participation on the basis of ineligible immigration status, the applicant will be provided the opportunity to have an informal "hearing" as described in 24 CFR Part 5, in lieu of the informal review process discussed above that is applicable to denials for other reasons.

Up-dated: 01/05/2012



## Chapter 3

## APPLYING FOR ADMISSION

This chapter describes the application process, procedures for opening, closing, and removing applicant names from the waiting list, selecting and admitting applicants and local preferences. The OHA will implement an on-line process for accepting applications for the Housing Choice Voucher program to replenish the Housing Choice Voucher waiting list.

### A. Two-Phase Application Process

Families who wish to obtain tenant-based Housing Choice Voucher rental assistance must provide information to enable OHA to determine whether the family meets the eligibility requirements for admission to the program.

OHA uses a two-phase application process when the waiting list is open. (see B. below).

The first phase consists of OHA receiving an "initial" application for assistance. This initial application is referred to as a "pre-application". Based on the information provided in the pre-application, OHA determines whether the family is <u>apparently eligible</u> for admission and determines the apparent preference category, if any, of the family. Pre-applications will be submitted on-line, and will be maintained in the computer data base.

The second phase consists of OHA receiving a "full application" which provides current information on the family's composition, income and eligibility for any preferences to enable OHA to make a final determination of eligibility for issuance of a voucher. Applicants with an on-line pre-application will be ranked according to preferences (see chapter 4) and given computer generated numbers; this process must be verified by an independent auditor. The computer will select pre-applicants from the data base according to the preferences selected at the time the application was submitted.

It is at the full application stage that OHA verifies information provided by the applicant. A full application is requested when applicants reach the top of the waiting list (see E. below) or their pre-application is selected from the computer data base.

### B. Opening/Closing of Section 8 Waiting List

### (1) Opening the Waiting List.

Determination of Need
OHA will open the waiting list at such times when the Admissions Department and the Section 8 Department mutually agree that the pool of applicants is insufficient to meet the general demand for vouchers, the specific demand for a special program set-aside such as Family Reunification or specific regulatory and other requirements such as targeting and de-concentration. (See Section G below).

It is the policy of the Authority to conduct outreach as needed to maintain an adequate application pool of eligible households which meet the priorities of the agency. Marketing efforts will include outreach to those least likely to apply. Outreach efforts will take into consideration:



- The number of vouchers available or anticipated to be available in the next 12 months by specified program types
- Progress of the PHA in meeting HUD targeting and de-concentration requirements
- Progress of the PHA in meeting its program priorities and preferences
- The characteristics of applicants already on the waiting list and the likelihood that the PHA can meet its targeting requirements, de-concentration and program priorities and preferences

The Authority will periodically assess the factors in order to determine the need for and scope of any marketing efforts.

Marketing efforts by the PHA shall occur whenever the waiting list is less than the number of applicants anticipated to be placed in the next 12 months by program.

<u>Marketing Strategies</u>
Based on interviews with unsuccessful and successful applicants, Housing Choice-Section 8 and Admissions will review the factors which need to be addressed such as the briefing and assistance provided in locating a suitable unit, the suitability of the tenant for the program or such other factors, which might need to be addressed.

In addition, Housing Choice-Section 8 and Admissions will work together with other experts in real estate marketing to determine the most effective way to attract applicants, which meet the needs of the agency in terms of its priorities and preferences.

Based on such regular analysis, when new applicants are needed on the waiting lists in general or to meet specific targeting and priority goals, Admissions will develop a marketing program acceptable to Housing Choice-Section 8 and approved by the Executive Director. This program will require a specific delineation of the target populations to be reached, the characteristics of such a population for 'sales' purposes and the chosen methods to reach and 'sell' those population segments.

In the case of targeting needs, Admissions will take into account the possibility that suitable applicants may be on an existing waiting list (i.e., extremely low income families needed for HC-S 8 may be on the LRPH waiting list) and that a marketing program to those families may take precedence over one to families outside of the agency.

<u>All marketing and informational materials will:</u>

1. Comply with the Fair Housing Act requirements with respect to the Equal Housing Opportunity logo and use of nondiscriminatory language; (24 *CFR 109.30* (a))
2. Describe the housing units, application process, waiting list, priority system and eligibility accurately;
3. Be written in plain language and will use more than strictly English language print media;
4. Target all agencies, which serve and advocate for potential applicants;
5. Make clear who is eligible: low income individuals and families, including the elderly and persons with disabilities; working and non-working people;



6. Make clear that it is the Authority's responsibility to provide reasonable access to accommodations for people with disabilities.

A Fair Housing Poster bearing the Equal Opportunity Housing Logo and emblem will be prominently displayed at the main entrance lobby where applications for housing are filed.

## OHA Procedures

OHA will use the following procedures when opening the waiting list:

### (1)    Opening the Waiting list

It will advertise the opening of the waiting list through public notice in newspapers, minority publications and media entities, including, but not limited to: The Orlando Sentinel, La Prensa, The Orlando Times, and the Internet.

The notice will contain: the dates, times, and locations where families may obtain application forms and apply, a brief description of the program, eligibility requirements, local preferences, and limitations, if any, on who may apply (see D below).

OHA will provide the notice in an accessible format if requested by a person with a disability. Upon request from a person with a disability, additional time after the closing deadline may be permitted as a reasonable accommodation to enable the person to submit an application.

### (2)    Closing the Waiting List

OHA may close the waiting list when there are a sufficient number of applicants claiming local preferences to enable OHA to fill the anticipated openings over the next 12 months resulting from turnover and anticipated new allocations of funds, and enable OHA to meet HUD targeting requirements (currently requiring that at least 75 % of new admissions from the waiting list be Extremely Low Income).

When a decision is made to close the waiting list, a public notice will be published in the same newspapers and media used to announce the opening of the waiting list.

### (3)    Limitations on Who May Apply

If OHA receives funds for a specified category of waiting list families, and there are not a sufficient number of families on the waiting list with the specified characteristics, OHA may limit new applications to families with these characteristics.

If the waiting list does not adequately represent all categories of families (e.g. large families, elderly families, and persons with disabilities) with housing needs and priorities identified in OHA's PHA Plan, new applications may be limited to such families.



## C. Completion of Pre-Application

### 1. General Conditions

Under no circumstances will anyone be denied the right to request or submit a pre-application for housing, unless the Authority has publicly announced the temporary closing of all or part of the waiting lists. Closing of part of the waiting lists means that the PHA has sufficient applicants whose characteristics meet the preferences, the program priorities, or the specific requirements of a PHA program. In the same way, the PHA may open a waiting list to accept pre-applications from families with those characteristics needed to meet preferences, program priorities or specific program requirements.

Even if the Authority is not accepting applications because of the length of the waiting list, the Authority will not refuse to place an eligible applicant on the Waiting List if the applicant claims he/she qualifies for and meets PHA program priorities or a specific program requirement, unless the Authority determines, on the basis of applicants already on the list who claim a preference and the number of anticipated project admissions, that:

1. There is an adequate pool of applicants likely to qualify for a Preference and meet PHA program priorities or to meet a specific program requirement.
2. It is unlikely that, based on the Authority's system of applying preferences and the preference claimed that the applicant would qualify for assistance before other applicants on the waiting lists or specific programs within the waiting lists.

Pre-applications will be entered in to the computer based upon date and time the application is received, and factors of preference or priority. If the waiting list is opened for a period of less than two weeks, applicants in each preference category who submit applications within the two-week period will be will be assigned the same date and time, and will be ranked randomly (within each preference category). Pre-applications received after the random ranking will be given a date and time ranking within preference categories. Pre-applications taken on-line will be maintained in the computer data base, within preference categories, with computer generated numbers.

Applicants may choose which program waiting lists they wish to be placed on which normally will be LRPH and/or S 8 but may include specific sub-lists such as homeownership, family reunification, mainstream and others providing the waiting list is opened.

### 2. The Pre-application Procedure

<u>Pre-application</u>
Pre-applications will be accepted during specified days and times when the waiting list is open. To complete a pre-application, the Head and/or Spouse/Co-head must have a current/valid photo I.D. and Social Security card.
To complete a pre-application on-line a computer will be made available at the OHA for applicants who do not have access to a computer and/or for applicants who need reasonableness accommodations to complete an application.



<u>Purpose and Authority of Pre-application Information</u>
HUD requires the PHA to collect and maintain the following information in a waiting list *(24 CFR 982.204 (b))*:
1. Applicant name;
2. Family unit size (number of bedrooms for which family qualifies under PHA occupancy standards);
3. Date and time of application;
4. Qualification for preference. Any such claims will require a Preference Claim form to be completed; and
5. Racial or ethnic designation of the head of household.

In addition to this required information the OHA will obtain and maintain additional information including the following:
- The address and telephone number of the applicant
- The relationship of household members to the head of the household
- Sex and dates of birth of household members
- Social security cards for the applicant and all family members.  Refusal or failure to provide the social security cards (or the application for such) of any person   will be cause for a determination of non-eligible
- The marital status of members of the household
- Any member of the household who have been involved in criminal activity–within the last ten (10) years, as provided by the "one strike rule" in the 1998 Quality Housing and Work Responsibility Act (QHWRA), as amended.
- Questions the applicant and family members who will occupy the unit as follows:
    i. Are you or any member of your family a current illegal abuser or otherwise addicted to a controlled substance (drugs/alcohol)?
    ii. Have you or any member of your family been convicted of the illegal manufacture or distribution of a controlled substance (drugs/alcohol)?
    iii. Would you pose a direct threat to the health or safety of other residents or staff in any way?
    iv. Are you able and willing to pay your rent in full when it is due?
    v. Are you and all members of your family able and willing to comply with all rules, regulations and policies regarding occupancy if you are accepted by the OHA?
    vi. Are you or any member of your family a registered sex offender?

    *If applicant refuses to answer all of the questions on this form, their application will be considered incomplete and they will be found not eligible.*
    *If applicant does not answer questions truthfully and their answer constitutes a material misrepresentation in that if they had answered, truthfully they would have been found not eligible, the application will be considered fraudulent and the applicant will be found not eligible.*

- Birth certificates and/or Citizenship/eligible immigration status of all household members
- Special housing needs such as accessible unit, special service needs and other information helpful in providing appropriate housing



- Any special language needs for any household members
- Disability status for any and all household members
- Income of all household members
- Permission to access criminal, credit and drug treatment center information

The PHA will make a preliminary assessment of the family's eligibility, its family composition and its preference and priority status for any and all programs. The application and related documents are designed to accomplish this.

## Post Application and Pre-Selection Procedures

### 1.    Applicant Responsibility and Procedures
The notice will state that it is the responsibility of the applicant to notify OHA in writing within 30 days of changes in family composition, income, preference status, telephone and mailing address. The notice will state further, that failure to report such changes will be cause for removal from the waiting list. In addition, the family has the responsibility of responding promptly to any mailing received from the OHA in order to maintain their status on the waiting list/s.

### 2.    PHA Responsibility and Procedures
The pre-applicant's file will be reviewed to make a final determination of preliminary eligibility or ineligibility. Such a review will be of:

1.  Statements made; and
2.  The Authority's internal records to determine if a applicant has participated in any of the programs administered by this Authority or any other Housing Authority and has a record of a prior eviction from public housing; or left a program owing rent, damages, vacancy loss, or other charge. (Such a pre-applicant will not be determined eligible until all funds are repaid in full).
3.  If an applicant has been evicted from housing assisted under the United States Housing Act (Public, Indian, Section 8, Section 23, HODAG or RRP housing) because of drug-related criminal activity (drug use or drug distribution) by any member of the applicant family, the applicant will be deemed not eligible for five (5) years from the date of that eviction. The Housing Authority may waive this restriction for a particular applicant if the Housing Authority determines by documented verification that the evicted person:
    1) Has successfully completed a rehabilitation program approved by the PHA;
    2) Clearly, did not participate in or know about the drug-related criminal activity;
    3) No longer participates in any drug-related criminal activity.
4.  If an applicant has been evicted from any assisted property for the manufacture of Methamphetamine, the application will be denied.
5.  If an applicant has a serious and recent pattern of drug or alcohol abuse they may be denied admissions.
6.  If an applicant is a sex offender they will be denied admissions.



7. An applicant and/or any member of the household, who have been involved in any criminal activity within the last five (5) years, will be denied admission.

8. An applicant who has been released from prison and/or completed probation within the last five (5) years will be denied admissions.

9. If any member of an applicant's household has used or possessed an illegal substance for personal use, the OHA may notify the applicant of denial of admissions, if the use or possession occurred within the 24 months period prior to the date of this notification. If the person/s are able to show that they have an addiction to this substance and show evidence that they are participating in or have completed successfully a treatment program and do not possess or use such substances currently, they will be admitted.

Eligibility Specialist will run a criminal, credit and other relevant checks. If based on this additional research, a pre-applicant is determined ineligible; he/she will be notified in writing within twenty five (25) working days of the date of the revocation of pre-application acceptance or change in preference status, and the notice will:

1. Specify the reason(s) for ineligibility or change in preference status;
2. Inform pre-applicant that she/he has thirty (30) calendar days from the date of the notice to request an informal review.

If, as a result of information presented by the applicant at the informal hearing, the hearing officer reverses the Authority's decision to deny the applicant, no new application is required and the applicant will be returned to the appropriate spot on the waiting list.

If no hearing or informal review is requested in accordance with this Policy, or the hearing officer upholds the decision of the Authority, the pre-applicant is removed from the waiting list. The pre-application will be filed and kept for three years.

Each applicant is required to complete the OHA provided initial application form (pre-application) and consent forms and meet with OHA staff who will obtain any necessary documentation to complete the interview, and collect information on the forms into OHA's computerized waiting list, in those cases where the applicant is apparently eligible for admission to the program.

## D.    Administration Of Waiting List

The Authority will administer its waiting list as required by *(24 CFR Part 982.204 through 982.207, Part 5, Subparts E and F, Part 945 and 960.201 through 960.215).*

The waiting list will reflect, for each application, the following information and will be consistent with Title VI objectives and other requirements:
- The date and time of receipt
- Race and ethnicity of head of household



- Local preference priority status
- Date determined eligible or ineligible
- The appropriate voucher size(s) for the applicant
- The pre-application form
- Computer assigned numbers and default date for on-line applicants, only.

All pre-applications will be filed by date and time of receipt. The waiting list will be divided into two segments. Those pre-applications that apparently (verification does not occur at the pre-application stage) qualify for one or more of the local preferences will be filed in the "Preference-Holder" segment, and those that apparently do not qualify for a preference will be filed in the "Non-Preference-Holder" segment.

Non-Preference Applications submitted on-line will remain in the non-preference segment of the computer data base.

In filling an actual or expected vacancy, the Authority will offer the voucher to an applicant in the appropriate sequence, with the goal of accomplishing the mission and objectives of the agency and meeting other requirements such as targeting and de-concentration.

The application will be a permanent record and relevant information from the application will be maintained on the computer.

Applications equal in preference will be ordered by date and time sequence or by lottery assignment, as appropriate.

All applicants must meet applicable income eligibility and preference requirements as established by HUD and OHA. Any change in preference or eligibility information for the family must be to the agency within 30 days. Failure to update information on this timely basis may result in removal from the waiting list.
Based on an analysis of the availability of vouchers from turnover and new funds, and analysis of the success and failure rates of families issued vouchers, the OHA will process a sufficient number of applicants to enable leasing goals to be met. Applicants who have successfully completed processing will be placed in a "Process Pool". They will then be drawn out of the pool in verified order to be issued vouchers as they become available.

Removal of applications from the waiting list.

The Authority will remove an applicant's name from the waiting list under the following circumstances:
- The applicant may submit a written request to have their name removed from the waiting list. The Admissions & Occupancy Manager must approve the request, or other person(s) designated by the Executive Director, prior to removal.
- The applicant has failed to advise the Authority of his/her continued interest in being on the waiting list by failing to respond to a 'still interested' letter sent by the Authority. If a letter is returned by the Post Office without a forwarding address, the applicant's name



will be removed from the waiting list without further notice, and the envelope and letter will be maintained in the file. If a letter is returned with a forwarding address, it will be re-mailed to the address indicated. The waiting list will be purged at least annually. The mailing will ask for current information and confirmation of continued interest through the completion of a pre-application form. Responses to this mailing may also result in OHA determining that an applicant's preference status has changed.

- The Authority has made reasonable efforts to contact the applicant to schedule interviews or obtain information necessary to complete the application process and the applicant has failed to respond.
- The applicant has failed to pay an outstanding balance owed to the Authority and the Authority has notified the applicant of its intention to remove the applicant's name because the applicant was determined ineligible based on preliminary information on the application or pursuant to the verification process. In this case, the applicant may request an Informal review for Denials, if he/she responds within ten (10) calendar days of the date of the written notification including proof of action taken to remove or remedy the problems.
- However, the Authority may consider mitigating circumstances such as disabilities, health problems or lack of transportation in determining if any application should be withdrawn.

<u>Closing the waiting list</u>
Decisions about closing the waiting list will be based on the number of applications available for a particular size and type of unit (LRPH) and the ability of the Authority to house an applicant in an appropriate unit within a reasonable period of time and will be made only by the Executive Director and/or the Board of Commissioners. The Authority may close the waiting list if there are enough local preference holders to fill anticipated openings for the next twelve months. The waiting list may not be closed if it would have a discriminatory effect inconsistent with applicable civil rights laws. Suspension of application taking is announced in the same way as opening the waiting list. During the period when the waiting list is closed, the Authority <u>will not</u> maintain a list of individuals who wish to be notified when the waiting list is re-opened.

<u>Reopening the waiting list</u>
When the list has been closed and the Authority reopens the waiting list, a sign will be placed in the lobby (office), and the Authority will advertise through public notice in newspapers, minority publications and media entities such as The Orlando Sentinel, La Prensa and The Orlando Times.

The Authority may also contact service organizations, which assist persons with disabilities. The notice (which will be made in an accessible format, if requested) will contain:

1. The Authority address and telephone number.
2. The dates, times, and the locations where families may apply.
3. How to submit an application, and information on eligibility requirements.
4. Any system of site-based waiting list offered by the Authority.
5. The programs for which applications will be taken.
6. A brief description of the program.
7. Limitations, if any, on who may apply.



Depending upon the composition of the waiting list with regard to income, family types and preferences and to better serve the needs of the community, at times the Authority may only accept applications from households claiming local preferences or who fit a unit type with a short waiting time or which are necessary to meet targeting and de-concentration requirements. At no time will such selective opening of the list create any violations of Title VI.

When OHA determines that, as a result of turnover or the receipt of additional voucher funds, new vouchers may be issued, OHA will invite an appropriate number of applicants that are apparent preference holders to submit full applications. The invitation process will begin with the applicant that is on the waiting list the longest period of time (as determined by the actual date and time of application, or by lottery position for a lottery closing period assigned date and time), followed by the applications in the preference segment of the data base and so on until an adequate pool of applicants have been invited to submit full applications. However, skipping may occur to meet targeting and de-concentration requirements. (See Section G below).

In the event that some or all of the available funds for the vouchers was provided to OHA for a specified category of waiting list families and there are not a sufficient number of apparent preference-holders with the necessary qualifications and no preference holders in the preference, the non-preference holder segment of the waiting list will be searched and the applicants longest on the waiting list (as determined by actual date and time of application or by lottery position for a lottery closing period assigned date and time) with the specified characteristics will be invited to submit full applications.

When an applicant notifies OHA of a change in preference status, or OHA otherwise obtains information that an applicant's preference status has changed, the application will be re-filed in the appropriate waiting list segment by date of original application. Applications taken on-line with a preference change will be retuned back to the data base in the appropriate waiting list segment.

### E.    Full Application

In order for the applicant to be found eligible for admission, the applicant will receive a letter with the day and time an interview to complete a full application with an employee from the Admissions staff.

OHA utilizes the full application interview to discuss the family's circumstances in greater detail, to clarify information provided by the family in its initial application and to ensure that the information is complete. The applicant may be requested to complete an entirely new application form. The interview is also used as a vehicle to meet the informational needs of the family by providing information about the application and verification process, as well as to advise the family of other OHA services or programs that may be available.

As the applicant name approaches the top of the waiting list and it is likely that the applicant will be offered a voucher <u>within the next 90 days</u> as a result of turnover or issuance of new vouchers or to meet special needs of the agency such as targeting or de-concentration, the Admissions



Manager will select the next appropriate applicant and assign that family to an Eligibility Specialist. The Eligibility Specialist will schedule an interview and will send a letter to the family along with a list of documents required for the interview. The applicant will be advised in that letter of what other information will be necessary in order to make a final eligibility determination.

The family must come in person to the Admissions office or such other location, as the letter will designate, to make the final application. However, when there is a disability or other extenuating circumstance, which would prevent her/him from coming into the office to fill out the application, special arrangements may be requested and approved by the Authority.

At the time the applicant comes to the office to make a final application, the Admissions staff will:

1.  Provide a Full Application Package which consists of:

    a. Full Application Form and Applicant Certification
    b. Information Concerning Citizenship Verification
    c. Citizenship Declaration 214 Form/Certification of Non-eligible Immigrant Status (if applicable)
    d. Authorization for Release of Information/Privacy Act Notice: This will allow the Authority to request information from third party sources (i.e., parole officers, social worker, physicians, landlords, police departments) who may be able to offer specific information about the applicant's habits, criminal records and character. This will include a consent form to access information from any drug treatment center.
    e. Criminal History Check Acknowledgment Form. Applicants for housing who have been determined, through documentation, to have engaged in criminal activity will have their admittance to housing delayed until such time as the applicant's case has been settled and the applicant has been exonerated of all charges. At the time the applicant's case has been settled, the applicant file will be reactivated and he/she will be offered a unit in accordance with their waiting list position.

2.  If an applicant has been evicted from housing assisted under the United States Housing Act of 1937, as amended (Public, Indian, Section 8, Section 23, HODAG or RRP housing) because of drug-related criminal activity (drug use or drug distribution) by any member of the applicant family, the applicant will be deemed not eligible for <u>three years</u> from the date of that eviction. The Housing Authority may waive this restriction for a particular applicant if the Housing Authority determines by documented verification that the evicted person:
    -- has successfully completed a rehabilitation program approved by the PHA;
    -- clearly did not participate in or know about the drug-related criminal activity;
    -- no longer participates in any drug-related criminal activity.

3.  If any member of an applicant's household has used or possessed an illegal substance for personal use, the OHA may notify the applicant of denial of admissions, if the use or possession occurred within the 12 months period prior to the date of this notification. If



the person/s are able to show that they have an addiction to this substance and show evidence that they are participating in or have completed successfully a treatment program and do not possess or use such substances currently, they will be admitted.

4. Eligibility Verification Information. The Eligibility Specialist will review the standard form included in the full application package, outlining the proof or documentation, which will be necessary to determine eligibility. If the necessary information required for verification is not complete, the applicant will be given 30 days to respond and provide the necessary information. During the 30 day period, the application will be held in a screening location after which it will be closed if the information required has not been provided and a notice of such closure will be mailed to the applicant.

5. The family will sign the full application form printed from and sign all certifications and release documents.

The Authority will work on the assumption that the facts certified to by the applicant in the application are correct, although all are subject to verification later in the application process. The Authority ensures that verification of all HUD and Authority eligibility factors are current in order to determine the family's eligibility for an offer of a voucher.

Persons with Disabilities
The Authority may not compel any applicant to reveal information about the nature of an applicant's disability as a routine part of the application process. However, the Authority may

1. Ask all applicants whether they need any special locations for their unit, special features in their units or any special processing (reasonable accommodation) because of a disability.
2. Ask all applicants whether the head or spouse is a person with a disability for the purposes of qualifying the family for the $400 disabled family deduction from income and if an elderly or disabled family, the deduction of non-reimbursed medical expenses above 3% of the household annual income.
3. Ask all applicants claiming a deduction of non-reimbursed medical expenses above 3% of the household annual income for the assistance of a disabled person in the household to permit that person or any other household member, to work, to provide documentation of the presence of a person with such a disability and the work related relevance of those expenses.
4. Require all applicants claiming disability status to verify this by any of the following:

    1. Proof from the SSA or VA.
    2. Doctor certification on an approved authority form (which will contain language from *24 CFR 5.403*) even in the case where an SSA or VA application is pending. *(24 CFR 5.403)* defines a person with disabilities. This definition will be supplied to anyone claiming disability status.

Other:
If misrepresentations any time during the application process result in housing an ineligible or unsuitable family, the family may be required to be terminated even though currently eligible. If misrepresentation or failure to provide facts has resulted in payment of a lower rent than



should have been paid, the family will be required to pay the difference between the TTP paid and the amount which should have been paid.

In justifiable cases, the Authority may take such other action as deemed reasonable.

Income, household composition, citizenship/eligible immigrant status, and eligibility for preferences will be verified subsequent to this interview. OHA must find that the applicant currently qualifies for a preference in order to continue to treat the applicant as a preference-holder.

Applicants must attend the full application interview at the scheduled time, except that where special circumstances exist, or where necessary as accommodations for persons with disabilities, OHA may agree to alternate arrangements to obtain the required information.

If an applicant is unable to make a scheduled appointment, it is the applicant's responsibility to notify the staff person who scheduled the appointment no later than two (2) business days before the original appointment date. This requirement will be communicated to the applicant when the original appointment is scheduled.

An applicant failing to appear for a scheduled interview without such prior notification of OHA will not receive approval of his/her application and will not be given another appointment unless he/she provides documentation acceptable to OHA that an emergency prevented the applicant from making the appointment.

### F.   Final Determination And Notification Of Eligibility/Ineligibility

#### Eligible Applicants
If the family is determined eligible, the file will be sent to the Section 8 Department. This Department will mail the family a notification of the date, time, and place of the required voucher issuance briefing. The Director of Section 8 may return to the Admissions Department applications, which could result in failure to meet special funding or other targets.

#### Ineligible Applicants

The Admissions & Occupancy Manager will notify an applicant found ineligible or unqualified:

1. The specific reason(s) for the determination.
2. The source(s) of any information and specific facts on which the determination is based.
3. The right to request reconsideration in writing within twenty (20) days if there is any new and relevant information not previously considered by the OHA.
4. The right to request in writing an informal review of a finding of ineligibility.
5. The right to be represented by counsel or other person of choice.
6. The right to examine his/her files prior to reconsideration or review.

On-line applicants who are found ineligible or unqualified applications will be placed back into the data base.

---



The Admissions & Occupancy Manager will record the appeal and send it to the senior staff person not involved in the decision and designated by the Executive Director to conduct such informal reviews.

The informal review will be conducted within ten (10) days of receipt of the request, and notice of date, time and place of will be given promptly in writing to the applicant.

The purpose of the informal review is to discuss the reasons for the OHA's decision and to permit the applicant, or his or her representative, to present rebuttal or additional information, ask questions of those present and offer documentation, testimony or argument.

Within ten (10) working days after such informal review, the OHA will notify the applicant in writing of its decision with an explanation of its reasons and specify any change, if appropriate, in the applicant's eligibility, qualification, priority, or preference status.

## G.    Selection For Voucher Issuance

It is mandatory for an applicant to remain in the Section 8 Housing Choice Voucher Program for two (2) years before changing to the Low Rent Public Housing that is also administered by the Housing Authority of the City of Orlando, Florida.

### Policies on Selection and Admission of Applicants from Waiting List

Subsequent to verification of the information provided in the full application, OHA will group the applications into two tiers.

Tier 1 will include all applicants with incomes that do not exceed 30 % of median income for the Orlando area (NOTE: Families in this income category are termed Extremely Low-Income (ELI) families).

Tier 2 will include all applicants with incomes that exceed 30 % of median income but do not exceed
50 % of median income for the area (Such families are termed Very low-Income Families).

Within each tier, families with local preferences will be listed first. Those preference-holders meeting the ranking preference described in Chapter 4. B. will be filed first by earliest date and time of pre-application, followed by preference-holders not meeting the ranking preference ordered by earliest date of pre-application.

In order to assure that the statutory income-targeting requirement that "not less than 75 % of the families admitted to a PHA's tenant-based voucher program during the PHA fiscal year from the PHA waiting list be ELI families", 9 of the initial 12 vouchers issued to families on the waiting list will be to Tier I families and 3 of the initial 12 vouchers issued will be to Tier 2 families that are preference-holders. If there is not a sufficient number of Tier 2 preference-holders, one or more of the vouchers which were to be initially issued to Tier 2 families will be issued to Tier I



preference-holders.

If Tier I voucher-holders are unsuccessful in locating acceptable dwelling units for which OHA is able to execute Housing Assistance Payments Contracts, OHA will not issue new vouchers to Tier 2 families until the targeting requirements are met.

Applicants with income that exceeds 50% of the median income will be determined ineligible applicants. The application will remain on the waiting list in a withdrawn status not to exceed 12 months, before being permanently removed. They well be notified of this determination according to letter 'F' of this section.

**Issuance of vouchers when funding is provided for a specified category of waiting list families.**

From time to time, HUD may conduct competitions for incremental vouchers for special purposes. Only applicants eligible for special purpose vouchers will be issued these vouchers. For example, in the case of Family Unification Program (FUP) vouchers, the public agency responsible for determining that a child is at imminent risk of placement in out-of-home care or that a child in out-of-home care may be returned to his or her family must certify families as eligible for FUP. When OHA is provided with such list of certified families, OHA will compare the names with those already on the waiting list and will provide a special purpose voucher to waiting list families certified as eligible in order of position on the waiting list. Any family certified as eligible must be placed on the waiting list—even when the waiting list is closed. To the extent feasible, the 2-tier approach noted above will be followed. In the event that there are an insufficient number of eligible families to enable OHA to meet the targeting requirement applicable to selection from the waiting list, but there are sufficient eligible families to utilize the hinds provided for the special purpose, OHA will issue vouchers to the eligible families.

(1) Special Admission (non-waiting list)

When HUD awards funding which is targeted for families living in specified units, OHA will use the assistance for families living in these units. Consistent with HUD guidance, if the funds cannot be used immediately for families in the targeted units, OHA may issue vouchers to waiting list families, provided OHA determines that a sufficient number of replacement vouchers will be available when needed. Such determination will be based upon an analysis of the number of turnover vouchers, and new fair-share vouchers, likely to be available when needed by the targeted families.

(2) Absorption of Incoming Portable Families (non-waiting list)

From time-to-time OHA will absorb incoming Portable families into its Housing Choice Voucher Program. This will occur when it is necessary to meet lease-up and funding utilization goals, or as a result of consideration of: (l) the low amount of administrative fee that will be earned if OHA administers a Portable voucher on behalf of certain initial PHA's; or (2) previous experience indicating that an initial PHA did not make timely or correct payments to OHA for administering assistance for a Portable family.



(3) Special Circumstances

The Section 8 Director or the Executive Director may determine that the extreme urgency of need of a holder of a preference (described in Chapter 4. A.) is such that a voucher must be issued immediately, without regard to dates of pre-application or tier. In such event, the Director will document the reasons for selecting such family for immediate issuance of vouchers.



## Chapter 4

## <u>PREFERENCES</u>

The need for tenant-based rental assistance in greater Orlando, Florida area exceeds the number of Housing Choice Vouchers that are available. It is necessary to create an order for the issuance of the housing choice vouchers based on local preferences and priorities. The Orlando Housing Authority's local preferences and priorities are described below.

### A.   <u>Local Preferences</u>

Preference will be given to applicants and pre-applicants that live work or have a verified offer for employment in Orange County. Applicants and pre-applicants must meet the local preference before they can be placed on the preference waiting list. Use of this residency preference will not have the purpose or effect of delaying or otherwise denying admission to the program based on the race, color, ethnic origin, gender, religion, disability, or age of any member of an applicant family.

With respect to the lower of 534 vouchers or a number of vouchers using the total average Orlando Housing Authority housing choice voucher budget authority for 534 vouchers, as determined by the Orlando Housing Authority, preference will be given to applicants and pre-applicants that live, work or have a verified offer for employment in Sanford or Seminole County. Applicants and pre-applicants must meet the local preference before they can be placed on the preference waiting list. Use of this residency preference will not have the purpose or effect of delaying or otherwise denying admission to the program based on the race, color, ethnic origin, gender, religion, disability, or age of any member of an applicant family.

Preference will be given to applicants who can verify that they have been honorably discharged from any branch of the military and a criminal background record clear for a minimum of 5 years.

Special Preference for the allocation of housing choice vouchers be provided for: eligible residents or Jackson Court/Division Oaks; non-elderly disabled households living in an elderly-only public housing development, for non-elderly disabled households residing in Lorna Doone and Johnson Manor Apartments as of August 20, 2009; and victims of federally-declared natural disasters who are displaced.

Subject to those preferences, the following preferences will apply:

(1) Involuntary displacement due to domestic violence, which is independently verified.
(2) Six (6) months of full-time continuous employment and those unable to work because of age or verified disability. (Continuous employment is defined as: an average of twenty-eight (28) hours or more per week. An interruption of four (4) weeks or less is not considered a break in continuity. Consideration will be given for longer breaks in employment if the adult family members were working an average of twenty (20) hours per week and attending school or job training for ten (10) or more hours per week.)
(3) Graduates of Transitional Housing Programs:, defined as......
(4) Former Public Housing or Section 8 Voucher tenant who has acquired a home has met the requirements of the OHA homeownership program (including homeownership training) and has lost that home due to insufficient income.

---



**B.    Ranking Preference**

**SPECIAL PREFERENCE**-Special Preference will be given to eligible residents of Jackson Court/Division Oaks.
**SPECIAL PREFERENCE**- Special Preference will be given to non- elderly disabled households that live in Lorna Doone and Johnson Manor August 20, 2009.
**SPECIAL PREFERENCE**-Special Preference will be given to eligible victims of federally-declared natural disasters who are displaced.

**Priority 1** Involuntary displacement due to domestic violence, which is independently verified.

**Priority 2** Working households as currently defined above six (6) months of full-time continuous employment and those unable to work because of age or verified disability.
**Priority 2** Graduates of Transitional Housing Programs, defined as...
**Priority 2** Former Public Housing or Section 8 Voucher tenant who has acquired a home, has met the requirements of the OHA homeownership program (including homeownership training) and has lost that home due to insufficient income

All selections are made within preferences and for those without preference by date and time of application.

Approved/Up-dated 06/9/2014



## Chapter 5

### SUBSIDY STANDARDS

HUD guidelines require that OHA's establish subsidy standards for the determination of Voucher and Voucher bedroom size, and that such standards provide for a minimum commitment of subsidy while avoiding overcrowding. The standards used for the Voucher size also must be within the minimum unit size requirements of HUD's Housing Quality Standards. This Chapter explains the subsidy standards, which will be used to determine the voucher size for various sized families when they are selected from the waiting list, as well as the OHA's procedures when a family's size changes or a family selects a unit size that is different from the Voucher.

### A.   Determining Voucher Size

The OHA does not determine who shares a bedroom/sleeping room, but there must be at least one person per bedroom on the Voucher. The OHA's subsidy standards for determining voucher size will be applied in a manner consistent with Fair Housing guidelines.

For subsidy standards, an adult is a person 18 years or older.

All standards in this section relate to the number of bedrooms on the Voucher, not the family's actual living arrangements.

The unit size on the Voucher remains the same as long as the family composition remains the same, regardless of the actual unit size rented.

The OHA assigns one bedroom to two people.

Single parents with one child will be issued a one (1) bedroom voucher.

Foster children will be included in determining unit size only if they will be in the unit on a permanent basis, as verified by the placement agency.

Live-in attendants will generally be provided a separate bedroom. No additional bedrooms are provided for the attendant's family.

Space will not be provided for a family member who will be absent most of the time, such as a member who is away in the military.

Single person families shall be allocated an efficiency or one bedroom size unit.



## Guidelines For Determining Voucher Size

| Voucher Size (Minimum #) | Persons in Household (Maximum #) |
|---|---|
| 0 Bedroom | 1 |
| 1 Bedroom | 2 |
| 2 Bedrooms | 4 |
| 3 Bedrooms | 6 |
| 4 Bedrooms | 8 |
| 5 Bedrooms | 10 |
| 6 Bedrooms | 12 |

## B.   Changes in Voucher Size

### Changes for Applicants

The voucher size is determined prior to the briefing by comparing the family composition to the OHA subsidy standards. If an applicant requires a change in the voucher size, the following guidelines will apply:

### Requests for Exception to Subsidy Standards for Applicants

The OHA will not issue a larger size Voucher due to additions of family members other than by birth, adoption, marriage or court-awarded custody (including foster children placed on a permanent basis).

Circumstances may dictate a larger size than the Subsidy Standards permit when persons cannot share a bedroom because of an accommodation which has been requested, such as persons who cannot share a bedroom because of a verified medical or health reason.

A doctor must verify requests based on health related reasons with a written report and letter of need.

### Changes for Participants

The members of the family residing in the unit must be approved by the OHA. The family must obtain approval of any additional family member before the person occupies the unit except for additions by birth, adoption, or court-awarded custody (including foster children placed on a permanent basis).

### Requests for Exception to Subsidy Standards for Participants

The OHA will grant an exception upon request as an accommodation for persons with disabilities.

The OHA will not issue a larger size Voucher due to additions to the family other than by birth,



adoption, marriage or court-awarded custody.

<u>Under-housed and Over-housed Families</u>

If a unit does not meet HQS space standards due to an increase in family size, (unit too small), the OHA will issue a new voucher and assist the family in locating a suitable unit.

If a voucher family is occupying a unit, which has more bedrooms than allocated under the OHA's subsidy standards, and the gross rent exceeds the Payment Standard rent for the family size under the OHA's subsidy standards, the OHA may issue the family a new voucher and assist the family in finding a suitable unit.

If the OHA makes an error in the clients favor while assigning the appropriate bedroom size, the OHA will issue the family a voucher with the correct size at annual re-certification so that the family is not penalized. If the error is not in our clients' favor, the OHA will issue a voucher immediately, as not to create an under-housed living arrangements.

**C.    Unit Size Selected**

The family may only select a dwelling unit that is 1 bedroom size larger than the bedroom size that is listed on the Voucher.

There are three criteria to consider:

1.    <u>Rent Limitation</u>: For the Voucher Program the OHA uses the Payment Standard for the Voucher specified unit size or the unit size selected by the family, *whichever is less.*

2.    <u>Utility Allowance</u>: The utility allowance used to calculate the gross rent is based on the actual size of the unit the family selects, regardless of the size authorized on the family's Voucher.

3.    <u>Housing Quality Standards</u>: The standards allow two persons per living/sleeping room and permit maximum occupancy levels (assuming a living room is used as a living/sleeping area) as shown in the table below. The levels maybe exceeded if a room, in addition to bedrooms and living room, is used for sleeping.



Chapter 6

## <u>VOUCHER ISSUANCE AND BRIEFINGS</u>

### A.   <u>Issuance Of Vouchers</u>

OHA will issue vouchers as described in Chapter 3.1. The number of vouchers issued will reflect recent voucher-holder success rates in order to assure that the funds available will be utilized.

### B.   <u>Briefing Types</u>

(1)  Section 8 Briefing-_Applicants will receive their vouchers at the HUD required oral briefing. This briefing will be conducted in English and in other languages when necessary.  At this briefing, OHA will provide information on the subjects specified by HUD in 24 CFR 982.301 (a), and provide applicants with a briefing packet that includes information on the subjects specified in 24 CFR 982.301 (b).

OHA generally conducts these briefings at group meetings. Applicants who provide prior notice of inability to attend a group briefing will automatically be scheduled for the next briefing. Applicants who fail to attend a scheduled briefing without prior notification and approval by OHA may be denied the issuance of a voucher, if OHA determines that the circumstances were such that prior notification could have been made. Families who attend group briefings and still have the need for further explanation will be requested to contact the Eligibility Specialist assigned to the family. Where special circumstances exist, OHA may provide individual briefings in lieu of group meetings. If necessary because of an applicant's disability, OHA will conduct individual briefings at the applicant's home.

(2)  Move Briefing-_Participants who have notified OHA that they have given proper notice to their landlords of their intent to vacate, consistent with the terms of their lease, and wish to continue to receive Section 8 rental assistance in another unit, will be required to attend a briefing prior to the issuance of a voucher. As in (1) above, failure to attend a scheduled briefing without prior notification and approval by OHA may result in the denial of the issuance of a voucher to the family.

(3)  Port Briefing-Applicants or Participants, who have exercised the Portability feature of the Housing Choice Voucher program, are also required to attend an oral briefing conducted by OHA staff.  These briefings are generally group briefings and will be performed on a weekly basis or as needed.

### C.  <u>Term Of Voucher</u>

(1)  Initial Term-The initial term of the voucher will be 60 calendar days from the date of issuance, and may be extended an additional 60 days, not to exceed 120 days from issuance



date. A Request for Tenancy Approval and a copy of the proposed lease, including the HUD prescribed tenancy addendum, must be submitted during the initial term of the voucher, or any OHA approved extensions. All request for extensions must be in writing at least 5 days prior to the expiration date of the Voucher.

(2) Extensions of Term

(a) Special Circumstances

If the family needs and requests an extension of the initial voucher term as a reasonable accommodation in accordance with part 8 of 24 CFR, in order to make the program accessible to a family member who is a person with disabilities, OHA will extend the voucher term up to the term reasonably required for this purpose but not to exceed 60 days.

OHA may extend a voucher beyond a single 60-day extension where special circumstances clearly beyond the control of the voucher-holder exist. This would include disasters such as hurricanes, earthquakes, fires, and floods, or explosions resulting in a significant loss of acceptable housing or an inability of voucher-holders to search for housing. It would also include an unforeseen and significant tightening of the vacancy rate for housing renting within the Payment Standards established by OHA, resulting from such events as major plant closings or an influx of refugees.

(b) Suspensions of the voucher term

OHA will stop the clock on the term of a family's voucher when the family submits a Request for Tenancy Approval and proposed lease with HUD-prescribed tenancy addendum within the term of the voucher, including any OHA-approved extension. The duration of the suspension will be measured from the date of receipt of the Request for Tenancy Approval to the date of the letter notifying an owner that the unit passed or failed its Housing Quality Standards (HQS) inspection.

## D.  Family Breakup and Voucher Issuance

In those instances when a family assisted under the Section 8 program becomes divided into otherwise eligible families due to divorce, legal separation or the division of the family, and the new families cannot agree as to which new family unit should continue to receive the assistance, and there is no determination by a court, OHA will consider the following factors to determine which of the families will continue to be assisted:

1. Which of the two new family units has custody of dependent children.
2. Which family member was the head of household when the Certificate or Voucher was initially issued (listed on the initial application).
3. The composition of the new family units, and which unit contains elderly or disabled members, and minor children.
4. Whether domestic violence was involved in the breakup.
5. Which family members remain in the unit.
6. Recommendations of social service professionals.



Where the breakup of the family also results in a reduction in the unit size for which the household is eligible, the Payment Standard applicable to the reduced unit size shall apply. The family may remain and pay a higher percentage of income for rent, or consistent with the terms of the lease, the family may give notice to the owner of intent to vacate, and be issued another voucher to search for a smaller unit. In special circumstances, the Section 8 Director or the Executive Director may approve the issuance of an additional new voucher to a member of the household, where both parties are eligible.

## E.  Remaining Member of Tenant Family and Voucher Issuance

To be considered the remaining member of the tenant family, the person must have been previously approved by OHA to be living in the unit. In order for a minor child to continue to receive assistance as a remaining member of a tenant family: (1) emancipated minor status must be awarded by a court, or (2) OHA must verify that a social service agency and/or the Juvenile Court has arranged for another adult to be brought into the assisted unit to care for the child (ren) for an indefinite period.

As above, where the reduction in family size also results in a reduction in the unit size for which the household is eligible, the Payment Standard applicable to the reduced unit size shall apply. The family may remain and pay a higher percentage of income for rent, or consistent with the terms of the lease, the family may give notice to the owner of intent to vacate, and be issued another voucher to search for a unit.



## Chapter 7

## FACTORS RELATED TO CALCULATION OF TOTAL TENANT PAYMENT

Accurate calculation of Annual Income is necessary to assure that families are within the eligibility income limits for the program *and* are not paying more or less money for rent and utilities than their obligation under the program regulations (see 24 CFR Parts 5 and 982). Section *5.609* provides a detailed explanation of what is included in Annual Income and what is excluded. Additional exclusions are contained in the HUD Notice in *58 Federal Register 41287, August 3, 1993,* and PIH Notice 2000-I. The regulations and Notices do not provide explicit guidance on how to" make all of the required determinations, and allow PHA's discretion to define certain terms and develop standards. This Chapter addresses those areas where PHA's have such discretion.

### A.   Total Tenant Payment

Total Tenant Payment (TTP)(see 24 CFR 5.628) is the term describing the minimum amount a participant in the Section 8 housing choice voucher program must pay towards the gross rent for the unit the participant is occupying. Gross rent consists of the Contract Rent —the rent an owner is entitled to get under the lease and HAP Contract, and the amount of the OHA-established utility allowance for tenant —paid utilities. TTP is the higher of: 10 % of monthly income, 30 % of monthly-adjusted income, welfare rent, or PHA minimum rent.

The TTP amount is critical in determining the HAP subsidy in the housing choice voucher program, since the amount of subsidy is the lower of: (1) the payment standard minus the TTP, or (2) the gross rent (rent to the owner plus utility allowance) minus the TTP.

### B.   Minimum Rent for Section 8

The regulations permit a PHA to establish a minimum rent up to $50.00. OHA  has determined that it is minimum rent for the Section 8 housing choice voucher program will be $50.00. The term minimum rent includes the combined amount a family is required to pay toward rent to an owner and utilities, if tenant paid.

The regulations permit a PHA to establish a minimum rent up to $50.00. OHA   has determined that the minimum rent for the Housing and Urban Development and The Department of Veterans Affairs program will be zero dollars ($0). The term minimum rent includes the combined amount a family is required to pay toward rent to an owner and utilities, if tenant paid.   Effective June 1, 2012 the  minimum rent for Veteran families with no income zero (0).

### C.   Financial Hardship Exemption from Minimum Rent

Section 5.630(b) requires PHA's to grant an exemption from the payment of minimum rent if the family is unable to pay the minimum rent because of financial hardship.  OHA will use the definitions of financial hardship contained in 5.630 (b)(i),(ii),(iii), and (iv).  OHA will not consider additional circumstances as permitted by 5l630 (b)(v).

### D.   Absence of Family Members

Income of family members, who are on the lease, including those who are temporarily absent, will be counted unless excluded by HUD regulations or notices (for example, the earned income of minors who are underage 18, except for the head of household or spouse, are not considered in determining annual income). Income of a spouse or head of household who is temporarily absent will be counted, even if such person is not on the lease. Income of persons permanently absent from the household will not be counted.

1. Absence of entire household



OHA requires families to notify OHA if the entire household will be absent from a unit for more than 30 consecutive days.

As required by 24 CFR 982.312, if the entire family is absent from the unit for more than 180 consecutive calendar days, housing assistance payments will terminate. In order to determine if the family is absent from the unit, OHA may: (1) write and/or telephone the family at the unit; (2) interview neighbors and/or the landlord; and/or (3) verify dates utilities were disconnected.

2.   Absence of any member

Any member of the household will be considered permanently absent if he/she is away from the unit for more than 180 days in a year, except as provided below. A finding that a family member is permanently absent will result in OHA no longer including the income of the family member in the annual income of the family, and may result in the elimination of an allowable deduction from income. In addition, it may result in the issuance of a voucher for a reduced number of bedrooms and/or result in a different Payment Standard for the family.

3. Full-time students

Full-time students who attend school away from the home and live with the family during school recess will not be considered permanently absent from the household.

4. Absence due to medical reasons

If any member leaves the household to enter a facility such as a hospital, nursing home, or rehabilitation center, OHA will seek advice from a reliable, qualified source as to the likelihood and timing of his/her return. If the information available to OHA indicates that the family member will be permanently confined to a nursing home, the family member will be considered permanently absent. If the information indicates that the family member will return in less than 90 consecutive days the family member will not be considered permanently absent, even if he/she has been confined in such facility more than 180 days in a year.

5. Foster care and absences of children

If the family includes a child or children absent from the home due to placement in foster care, OHA will obtain information from the appropriate agency as to when the child/children will be returned to the home. If the agency indicates that the children have been removed permanently from the home, promptly upon examining the court order or other appropriate documentation attesting to this action, OHA will notify the family that it will no longer be able to claim deductions for the children, re-compute the TTP for the family and reduce the voucher size and Payment Standard applicable to the family.

6.   Absence of Adult

If neither parent remains in a household with minor children nor the appropriate agency has determined that another adult is to be brought into the assisted unit to care for the children for an indefinite period, OHA will treat that adult as a visitor for the first 30 days. If, by the end of that period, court-awarded custody or legal guardianship has been awarded to the caretaker, the voucher will be transferred to the caretaker. If the appropriate agency cannot confirm the guardianship status of the caretaker, OHA will review the status at 30-day intervals. If custody or legal guardianship has not been awarded by the court, but the action is in process, OHA will secure verification from social services staff or the attorneys to the status.



OHA will transfer the voucher to the caretaker, in the absence of a court order, if the caretaker has been in the unit for more than six months and it is reasonable to expect that custody will be granted.

When OHA approves a person to reside in the unit as caretaker for the child/children, his/her income will be counted pending a final disposition. OHA will work with the appropriate service agencies and the landlord to facilitate a smooth transition in cases where neither parent remains in the household.

If a member of the household is subject to a court order that restricts him/her from the home for more than six months, the person will be considered permanently absent.

If an adult family member moves out of the household, the family must notify OHA in writing of this change in family composition within 10 days of the household member's departure, if he/she is expected to be permanently absent. If an adult family member goes into the military and leaves the household, he/she will be considered permanently absent.

### E.   Unauthorized Family Members

Any adult not included on the HUD 50058 form who has been residing in the Section 8 assisted unit more than 30 consecutive days will be considered to be living in the unit as an unauthorized family member. In a joint custody arrangement, however, if the minor is in the household less than 180 days per year, the minor will be considered to be an eligible visitor and not an unauthorized family member.

OHA will investigate when there are allegations concerning the presence of an unauthorized family member. If OHA finds that the visitor is using the unit address as the visitor's current residence, or the visitor does not provide evidence of another address, OHA will consider the visitor to be unauthorized, and will terminate assistance for the family. Even if the visitor provides evidence of another address, OHA will investigate to determine whether, in fact, the visitor continues to reside at this address. If the investigation finds that the visitor does not continue to reside at the other address, assistance will also be terminated for the family.

### F.   Reporting Changes in Family Composition

It is the responsibility of the participant family to notify OHA, in writing, of any change in family composition. A participant family must report changes in household composition and receive OHA approval to add any additional family member as an occupant of the unit and to inform OHA of the birth, adoption, or court-awarded custody of a child.  The family must present a birth certificate from a municipality, and a Social Security card.

The family must request OHA approval, in writing, at least 10-days in advance of move-in, to add any additional adult members to the household. OHA must approve or deny admission to the proposed new household member. If admission is approved, OHA will re-compute TTP and make appropriate modifications in the voucher size and payment standards to reflect the increased household size. If admission is denied, and the proposed new adult family member moves into the unit, assistance will be terminated for the family. If the family does not obtain prior written approval from OHA, and the person moves in, OHA will terminate assistance for the family if the person resides in the unit for 30 consecutive days (unauthorized family member), or if OHA determines that the person does not meet the admission criteria.

Participants must notify OHA in writing of any reductions in family size within 10-days of the move-out or death of a household member. If the family member that moves from the unit was



earning income, the OHA must have proof that the income is no longer being received at that household. Ex. Individual in household receives SSI and they are moving out of the house. The OHA will need to obtain a copy of the award letter showing that the income is no longer going to that household in order for us to remove the income and adjust the family's rent. OHA will then conduct an interim reexamination of income and eligibility.

## G.   Averaging Income

When Annual Income cannot be anticipated for a full 12 months, OHA may average known sources or income that vary to compute an annual income, or, annualize current income and conduct an interim reexamination if income changes.

If there are bonuses or overtime that the employer cannot anticipate for the next 12 months, bonuses and overtime received during the previous year will be used.

Income from the previous year may be analyzed to determine the amount to anticipate when third party or check-stub verification is not available.

If by averaging, an estimate can be made for those families whose income fluctuate from month to month, this estimate will be used so that the housing payment will not change from month to month.

The method used will depend upon the regularity, source and type of income.

## H.   Zero Income families

Families who report zero income are required to complete a written certification of income at least every ninety (90) days.

## I.   Income of Person Permanently Confined to Nursing Home

If a family member is permanently confined to a hospital or nursing home and there is a family member(s) left in the household, in determining TTP for the member(s) remaining in the assisted unit, OHA will exclude the income of the person permanently confined to the nursing home, and will give the family no deductions for medical expenses of the confined family member.

## J.   Regular Contributions or Gifts

Regular contributions or gifts received from organizations or from persons not residing in the unit are required to be included in Annual Income. OHA considers any contribution or gift received every month, or more frequently, a "regular" contribution or gift unless the total amount is less than $300 per year. This includes rent and utility payments made on behalf of the family and other cash or non-cash contributions provided on a regular basis, it does not include casual contributions or sporadic gifts.

## K.   Alimony and Child Support Payments

Regular alimony and child support payments are required to be included in Annual Income. OHA will count the amount awarded by the court, unless the family can provide documentation verifying that this amount is not being regularly provided. Acceptable documentation will be written verification from the agency responsible for enforcement or collection, or documentation that the family filed a child support or alimony collection action through a child support enforcement/collection agency, or filed an enforcement or collection action through an attorney.



**L.    Lump Sum Receipts**

Lump-sum payments caused by delays in processing periodic payments (unemployment or TANF assistance) or caused by deferral of periodic payments due to a dispute are included in Annual Income.

In order to determine the amount of retroactive tenant rent that the family owes as a result of the lump sum receipt, OHA will calculate Annual Income retroactively to date of receipt.

1. **Prospective Calculation Methodology**

   If the payment is reported on a timely basis the calculation will be done prospectively and will result in an interim adjustment calculated as follows:

   a.   The entire lump-sum payment will be added to the annual income at the time of the interim.
   b.   OHA will determine the percent of the year remaining until the next annual re-certification as of the date of the interim (e.g. three months would be 25 % of the year).
   c.   At the next annual re-certification, OHA will apply the percentage balance (75% in this example) to the lump sum and add it to the rest of the annual income.
   d.   The lump sum will be added in the same way for any interim that occurs prior to the next annual re-certification.

2. **Retroactive Calculation Methodology**

   a.   OHA will go back to the date the lump-sum payment was received, or to the date of admission, whichever is closer.
   b.   OHA will determine the amount of income for each certification period, including the lump sum, and recalculate the tenant rent for each certification to determine the amount due OHA.

The family must pay the "retroactive" amount to OHA in a lump sum or periodic payments as set forth in a repayment agreement. The amount owed by the family is a collectible debt even if the family becomes unassisted.

The family's attorney fees may be deducted from the lump-sum payment when computing Annual Income, if the attorney's efforts recovered a lump-sum compensation, and the recovery paid to the family does not include an additional amount in full satisfaction of the attorney fees.

**M.    Contributions To Retirement Funds-Assets**

While an individual is employed in a company where he/she earns a pension, OHA will treat as assets the amount the family can withdraw without retiring or terminating employment. After retirement or termination of employment, the income derived from any amount the employee elects to receive as a lump sum will be treated as asset income.

**N.    Assets Disposed of for Less than Fair Market Value**

OHA requires applicants and participants to declare whether an asset has been disposed of for less than fair market value during the two years preceding initial certification or re-certification. Assets are considered to be disposed of for less than fair market value if the cash value of the



disposed asset exceeds the gross amount the family received by more than $1,000.

Assets disposed of as a result of foreclosure or bankruptcy, or divorce or separation, are not considered to be assets disposed of for less than fair market value.

## O.   Child Care Expenses

One of the mandatory adjustments OHA must deduct in determining Adjusted Income is "any reasonable child care expenses necessary to enable a member of the family to be employed or to further his or her education" (24 CFR 5.611(a) (4).  Childcare expense must not exceed the employment income.

For the purposes of this deduction, OHA limits its applicability to children age 13 and under, exceptions may be made for minor children with special needs.

If the childcare is for the purpose of enabling a family member to work, allowable childcare expenses cannot exceed the income derived from the work. If the family member goes to work and goes to school, OHA will pro-rate the childcare expense for each activity to assure that the limitation contained in the preceding sentence is met.

In the case of a child attending private school, only the costs of after normal school hour care will be eligible to be considered for this deduction.

OHA will not allow childcare expenses if there is an adult household member capable of caring for the child.

Child support payments for children who do not reside with the family will not be deducted.

When the purpose of the childcare is to enable a member of the family to further his or her education, the number of hours claimed for childcare may not exceed the number of hours the family member is attending school (plus one hour travel time to and from school).

## P.   Medical Expenses

Another mandatory deduction in determining Adjusted Income is "un-reimbursed medical expenses of any elderly family or disabled family" (24 CFR 5.611(a) (3) (i)-- to the extent that this sum exceeds 3 % of annual income. In the event that a family member also qualifies for the deduction described in Q. below, the 3 % test applies to the sum of both sets of expenses.

When it is unclear as to whether or not to allow a claimed medical expense, OHA will use IRS Publication 502 as a guide. Nonprescription medicines will not be considered medical expenses unless recommended by a doctor. The costs of services or procedures that are not medically necessary will not be considered eligible expenses.

Acupuncture and chiropractic services will only be considered a medical expense if recommended by a medical doctor.

## Q.   Attendant Care and Auxiliary Apparatus Expenses of Persons with Disabilities

A mandatory deduction in determining Annual Income is "un-reimbursed reasonable attendant care and auxiliary apparatus expenses for each member of the family who is a person with disabilities, to the extent necessary to enable any member of the family (including the member who is a person with disabilities) to be employed, but this allowance may not exceed the earned income received by family members who are 18 years of age or older who are able to work



because of such attendant care or auxiliary apparatus" (24 CFR 5.611(a) (3) (ii)—to the extent that this sum exceeds 3% of annual income).

Attendant care includes, but is not limited to, home medical care, nursing services, housekeeping and errand services, interpreter for persons who are deaf or hard of hearing, and reader for persons with visual disabilities.

Auxiliary apparatus includes, but is not limited to, wheelchairs, reading devices for persons with visual disabilities and equipment added to cars and vans to permit their use by the family member with a disability, hearing aids, TDD's and assistive or service animals (seeing eye dogs). The veterinarian costs and food costs of a service animal are allowable as auxiliary apparatus expenses.

If the attendant care and auxiliary apparatus expense enables more than one person to be employed, OHA will consider the combined incomes of those persons in determining the maximum allowance.

### R.    Pro-ration of Assistance for 'Mixed' Families

*Mixed Families* are those that include both citizens/eligible immigrants and non-eligible immigrants.

Annual income for mixed families is determined in the same manner as for families with no ineligible members. The income of ineligible family members is included even though no assistance will be paid on their behalf.

The procedure that OHA will follow in prorating housing assistance for mixed families is described in 24 CFR 5.520 (c) (2). Essentially assistance is prorated by the percentage of family members who are eligible under Section 214. See also Chapter 8 Section I below.

### S.    Changes in TANF Income

1.    Imputed TANF income: when TANF income is reduced and annual income is not reduced.

As specified in 24 CFR *5.615*, in cases where a family receives TANF income or other benefits (e.g. subsidized transportation or childcare) under a governmental program that requires participation in economic self-sufficiency programs as a condition for such assistance, there are two circumstances when the family's annual income is not reduced when benefits are reduced: (1). When the TANF agency verifies that a family member has committed fraud, and (2) When the TANF agency verifies that the family is being sanctioned for non-compliance with a requirement to participate in an economic self-sufficiency program.

In the cases described above, OHA will request written verification from the TANF agency of the amount and term of the benefit reduction , and the reason for such reduction.

2.    When TANF income is reduced and annual income is reduced.

When there is a reduction or termination of TANF benefits for other reasons (e.g. the family reached the maximum time limit for benefits, family members are unable to find employment despite full compliance with all TANF department requirements, the family is being sanctioned for failure to comply with TANF department requirements other than participation in an economic self-sufficiency program), annual income will be reduced by the amount of the



reduction.

## T.    Utility Allowance and Utility Reimbursement Payments

The Utility Allowance is intended to help defray the costs of utilities not included in the rent and is subtracted from Total Tenant Payment to establish the family's rent to the landlord. The allowances are based on actual rates and average consumption studies, not on a family's actual consumption. The Utility Allowance applicable to a family is based on the actual unit size and housing type selected.

Where families provide their own range and refrigerator, OHA will establish an allowance adequate for the family to purchase or rent a range or refrigerator, even if the family already owns either appliance. Allowances for ranges and refrigerators will be based on the lesser of the cost of leasing or purchasing the appropriate appliance over a 12-month period.

The Utility Reimbursement is the portion of the housing assistance payment, which exceeds the amount of the rent to the owner. OHA has elected not to pay the Utility Reimbursement to the utility supplier. It is OHA policy that the Utility Reimbursement will be paid by direct deposit payment directly to the family.

\* Utilities must be in the name of the head of household or spouse.

Revised: 09/20/2012
and 10/18/2012



## Chapter 8

## <u>VERIFICATION PROCEDURES</u>

HUD regulations require that the factors of eligibility and Total Tenant Payment be verified by the OHA. Applicants and program participants must furnish proof of their statements whenever required by the OHA, and the information they provide must be true and complete. The OHA's verification requirements are designed to maintain program integrity. This Chapter explains the OHA's procedures and standards for verification of preferences, income, assets, allowable deductions, family status, and when there are changes in family members. The OHA will ensure that proper authorization from the family is always obtained before making verification inquiries.

<u>**Acceptable Methods of Verification**</u>

Income information will be verified by the following five verification methods acceptable to HUD, in the order of preference indicated:

1.  **Enterprise Income Verifications (EIV)**

    EIV is the verification of income through an independent source that systematically maintains income information in computerized form for a large number of individuals.

    Current EIV resources include the following:

    a.  **Tenant Assessment Subsystem (TASS)** – HUD's online system for Social Security (SS) and Supplemental Security Income (SSI) information.

    b.  **State Wage Information Collection Agencies (SWICAs)**

    c.  **State systems for the Temporary Assistance for Needy Families (TANF) program**

    d.  **Credit Bureau Information (CBA) credit reports**

    e.  **Internal Revenue Service (IRS) Letter 1722**

    f.  **Private sector databases (e.g. The Work Number)**

    The Orlando Housing Authority will use additional EIV resources as they become available. This will be done before, during and/or after examinations and/or re-examinations of household income as appropriate.



It is important to note that EIV data will only be used to verify an participant's eligibility for participation in a rental assistance program and to determine the level of assistance the participant is entitled to receive and only by properly trained persons whose duties require access to this information. Any other use, unless approved by the HUD Headquarters EIV Security System Administrator, is specifically prohibited and will not occur.

No adverse action can be taken against a participant until the Orlando Housing Authority has independently verified the EIV information and the participant has been granted an opportunity to contest any adverse findings through the established grievance procedure. The consequences of adverse findings may include the Orlando Housing Authority requiring the immediate payment of any over-subsidy, the entering into a repayment agreement, eviction, criminal prosecution, or any other appropriate remedy.

Furthermore, the information the Orlando Housing Authority derives from the EIV system will be protected to ensure that it is utilized solely for official purposes and not disclosed in any way that would violate the privacy of the affected individuals.

Once the data has served its purpose, it shall be destroyed by either burning or shredding the data.

## 2.   Third –Party Written Verifications

This type of verification includes written documentation, with forms sent directly to and received directly from a source, not passed through the hands of the family.  It may also be a report generated automatically by another government agency, i.e., Department of Welfare, Veterans Administration, etc.

Third-party written verifications may also be used to supplement Up-front Income Verifications. They will be utilized when there is a discrepancy of $200 a month or more and the participant disputes the UIV results.

Third party verification of SS and SSI benefits shall be obtained by getting a copy of an official Social Security Administration letter of benefits from the person receiving the benefits and verification from HUD's on-line systems. If either of these forms of verification are not obtainable, then the file shall be documented as to why third party verification was not used.

The Orlando Housing Authority will allow two (2) weeks for the return of third party written verifications prior to continuing on to the next type of verification.



3. **Third-Party Oral Verifications**

This type of verification includes direct contact with the source, in person or by telephone. When this method is used, staff members will be required to document in writing with whom they spoke, the date of the conversation and the facts obtained.

The Orlando Housing Authority will allow two (2) business days for the return of third party oral verifications prior to continuing on to the next type of verification.

4. **Review of Documents**

When UIV, written and oral third party verifications are not available within the two (2) week and two (2) business days period allowed in paragraphs 2 and 3 above, the Housing Authority will use the information received by the family, provided that the documents provide complete information. Photocopies of the documents, excluding government checks, provided by the family will be maintained in the file. In cases in which documents are viewed and cannot be photocopied, staff reviewing the documents will complete a written statement as to the contents of the document(s).

5. **Self-Certification and Self-Declaration**

When UIV, written and oral third party verifications are not available within the two (2) week and two (2) business days period allowed in paragraphs 2 and 3 above, and hand-carried verification cannot be obtained, the Housing Authority will accept a statement detailing information needed, signed by the head, spouse, co-head, or other adult family member.

Verification forms and reports received will be contained in the applicant/tenant file. Oral third party documentation will include the same information as if the documentation had been written, i.e. name, date of contact, amount received, etc.

When any verification method other than Up-Front Income Verification is utilized, the Orlando Housing Authority will document the reason for the choice of the verification methodology in the applicant/resident's file.

**Types of verification**

The chart below outlines the factors that may be verified and gives common examples of the verification that will be sought. To obtain written third party verification, the Orlando Housing Authority will send a request form to the source along with a release form signed by the applicant/participant via first class mail.



| Verification Requirements for Individual Items | | |
|---|---|---|
| **Item to Be Verified** | **3rd party verification** | **Hand-carried verification** |
| **General Eligibility Items** | | |
| Social Security Number | Letter from Social Security, electronic reports | Social Security card |
| Citizenship | N/A | Birth certificate, Passport, Naturalization papers, Resident Alien Card, etc. |
| Eligible immigration status | INS SAVE confirmation # | INS card |
| Disability | Letter from medical professional, SSI, etc | Proof of SSI or Social Security disability payments |
| Full time student status (if >18) | Letter from school | For high school and/or college students, any document evidencing enrollment |
| Need for a live-in aide | Letter from doctor or other professional knowledgeable of condition | Request for Reasonable Accommodations. |
| Child care costs | Letter from care provider | Bills and receipts |
| Disability assistance expenses | Letters from suppliers, care givers, etc. | Bills and records of payment |
| Medical expenses | Letters from providers, prescription record from pharmacy, medical professional's letter stating assistance or a companion animal is needed | Bills, receipts, records of payment, dates of trips, mileage log, receipts for fares and tolls |
| **Value of and Income from Assets** | | |
| Savings, checking accounts | Letter from institution | Passbook, most current statements |
| CDs, bonds, etc | Letter from institution | Tax return, information brochure from institution, the CD, the bond |
| Stocks | Letter from broker or holding company | Stock or most current statement, price in newspaper |