| Verification Requirements for Individual Items | | |
|---|---|---|
| **Item to Be Verified** | **3rd party verification** | **Hand-carried verification** |
| | | or through Internet |
| Real property | Letter from tax office, assessment, etc. | Property tax statement (for current value), assessment, records or income and expenses, tax return |
| Personal property held as an investment | Assessment, bluebook, etc | Receipt for purchase, other evidence of worth |
| Cash value of whole life insurance policies | Letter from insurance company | Current statement |
| Assets disposed of for less than fair market value | N/A | Original receipt and receipt at disposition, other evidence of worth |
| **Income** | | |
| Earned income | Letter from employer | Multiple pay stubs |
| Self-employed | N/A | Tax return from prior year, books of accounts |
| Regular gifts and contributions | Letter from source, letter from organization receiving gift (i.e., if grandmother pays day care provider, the day care provider could so state) | Bank deposits, other similar evidence |
| Alimony/child support | Court order, letter from source, letter from Human Services | Record of deposits, divorce decree |
| Periodic payments (i.e., social security, welfare, pensions, workers' comp, unemployment) | Letter or electronic reports from the source | Award letter, letter announcing change in amount of future payments |
| Training program participation | Letter from program provider indicating<br>- whether enrolled<br>- whether training is HUD-funded<br>- whether State or local program<br>- whether it is employment training<br>- whether payments are for out- of-pocket expenses incurred in order to participate in a program | N/A |

| Verification Requirements for Individual Items | | |
|---|---|---|
| **Item to Be Verified** | **3rd party verification** | **Hand-carried verification** |
| | | |

Verification of Citizenship or Eligible Non-citizen Status

The citizenship/eligible non-citizen status of each family member regardless of age must be determined.

Prior to being admitted, or at the first reexamination, all citizens and nationals will be required to sign a declaration under penalty of perjury. (They will be required to show proof of their status by such means as birth certificate, military ID or military DD 214 Form.)

Prior to being admitted or at the first reexamination, all eligible non-citizens who are 62 years of age or older will be required to sign a declaration under penalty of perjury. They will also be required to show proof of age.

Prior to being admitted or at the first reexamination, all eligible non-citizens must sign a declaration of their status and a verification consent form and provide their original INS documentation. The Orlando Housing Authority will make a copy of the individual's INS documentation and place the copy in the file. The Orlando Housing Authority also will verify their status through the INS SAVE system. If the INS SAVE system cannot confirm eligibility, the Orlando Housing Authority will mail information to the INS so a manual check can be made of INS records.

Family members who do not claim to be citizens, nationals or eligible non-citizens, or whose status cannot be confirmed, must be listed on a statement of non-eligible members and the list must be signed by the head of the household.

Non-citizen students on student visas, though in the country legally, are not eligible to be admitted to the Section 8 Program. If they are members of families that include citizens, the rent must be pro-rated.

Any family member who does not choose to declare their status must be listed on the statement of non-eligible members.

If no family member is determined to be eligible under this Section, the family's admission will be denied.

The family's assistance will not be denied, delayed, reduced or terminated because of a delay in the process of determining eligible status under this Section, except to the extent that the delay is caused by the family.



If the Orlando Housing Authority determines that a family member has knowingly permitted an ineligible non-citizen (other than any ineligible non-citizens listed on the lease) to permanently reside in their Section 8 unit, the family's assistance will be terminated. Such family will not be eligible to be readmitted to Section 8 for a period of 24 months from the date of termination.

Verification of Social Security Numbers

Prior to admission, each family member who has a Social Security Number and who is at least six years of age must provide verification of his or her Social Security Number. New family members at least six years of age must provide this verification prior to being added to the lease. Children in assisted households must provide this verification at the first regular reexamination after turning six.

The best verification of the Social Security Number is the original Social Security card. If the card is not available, the Orlando Housing Authority will accept letters from Social Security that establish and state the number. Documentation from other governmental agencies will also be accepted that establish and state the number. Driver's license, military ID, passports, or other official documents that establish and state the number are also acceptable.

If individuals state that they do not have a Social Security Number they will be required to sign a statement to this effect. An adult must sign for minor children. The Orlando Housing Authority will not require any individual who does not have a Social Security Number to obtain a Social Security Number.

If a member of an applicant family indicates they have a Social Security Number, but cannot readily verify it, the family cannot be assisted until verification is provided.

If a member of a participating family indicates they have a Social Security Number, but cannot readily verify it, they shall be asked to certify to this fact and shall up to 60 calendar days to provide the verification. If the individual is at least 62 years of age, they will be given 120 calendar days to provide the verification. If the individual fails to provide the verification within the time allowed, the family will be denied assistance or will have their assistance terminated.

Timing of Verification

Verification must be dated within ninety (90) calendar days of certification or reexamination. If the verification is older than this, the source will be contacted and asked to provide information regarding any changes.

When an interim reexamination is conducted, the Housing Authority will verify and update only those elements reported to have changed.



## A.    Frequency of Obtaining Verification

Household income and composition will be verified at least annually.

For each family member, citizenship/eligible non-citizen status will be verified only once unless the family member is an eligible immigrant in a transitional stage of admission. In this situation, their status must be updated until they are admitted for permanent residency. This verification will be obtained prior to admission. If the status of any family member was not determined prior to admission, verification of their status will be obtained at the next regular reexamination. Prior to a new member joining the family, their status will be verified.

For each family member age 6 and above, verification of Social Security Number will be obtained only once. This verification will be accomplished prior to admission. When a family member who did not have a Social Security Number at admission receives a Social Security Number, that number will be verified at the next regular reexamination. Likewise, when a child turns six, their verification will be obtained at the next regular reexamination.

## B.    Release of Information

The family will be required to sign specific authorization forms when information is needed that is not covered by the HUD form 9886, Authorization for Release of Information.

Each member requested to consent to the release of information will be provided with a copy of the appropriate forms for their review and signature.

Family refusal to cooperate with the HUD prescribed verification system will result in denial of admission or termination of assistance because it is a family obligation to supply any information requested by the OHA or HUD.

## C.    Computer Matching

Where allowed by HUD and/or other State or local agencies, computer matching will be done.

## D.    Items to be Verified
1. U.S. citizenship/eligible immigrant status.
2. Social Security numbers for all family members six years of age or older.
3. "Preference" status based upon Local preferences and rankings.
4. Marital status when needed for head or spouse definition.
5. Disability for determination of preferences, allowances or deductions.
6. All income not specifically excluded by the regulations.
7. Zero-income status of household.
8. Full-time student status including High School students who are 18 or over.
9. Current assets including assets disposed of for less than fair market value in preceding two years.



10. Childcare expense where it allows an adult family member to be employed or to further his/her education.
11. Total medical expenses of all family members in households whose head or spouse is elderly or disabled.
12. Disability assistance expenses to include only those costs associated with attendant care or auxiliary apparatus that allow an adult family member to be employed.

## E. Verification of Income

This section defines the methods the OHA will use to verify various types of income.

### Employment Income

Verification forms request the employer to specify the:

Dates of employment
Amount and frequency of pay
Estimated income from overtime, tips, and bonus pay expected during next 12 months.

Acceptable methods of verification include, in this order:

1. Employment verification form completed by the employer.
2. Check stubs or earning statements that indicate the employee's gross pay, frequency of pay or year to date earnings.
3. W-2 forms plus income tax return forms.
4. Income tax returns signed by the family may be used for verifying self-employment income, or income from tips and other gratuities.

Applicants and program participants may be requested to sign an authorization for release of information from the Internal Revenue Service for further verification of income.

In cases where there are questions about the validity of information provided by the family, the OHA will require the most recent federal income tax statements.

Where doubt regarding income exists a referral to IRS for confirmation will be made on a case-by-case basis.

### Social Security, Pensions, Supplementary Security Income (SSI), Disability Income

Acceptable methods of verification include, in this order:

1. Benefit verification form completed by agency providing the benefits.
2. Award or benefit notification letters prepared and signed by the providing agency.
3. Computer report electronically obtained or in hard copy.



<u>Unemployment Compensation</u>

Acceptable methods of verification include, in this order

1. Verification form completed by the unemployment compensation agency.
2. Computer printouts from unemployment office stating payment dates and amounts.
3. Payment stubs.

<u>TANF Payments or Other Forms of Welfare</u>

Acceptable methods of verification include, in this order:

1. OHA verification form completed by payment provider.
2. Written statement from payment provider indicating the amount of grant/payment, start date of payments and anticipated changes in payment in the next 12 mouths.
3. Computer generated Notice of Action.
4. Computer generated list of recipients from the TANF Department

<u>Alimony or Child Support Payments</u>

Acceptable methods of verification include, in this order:

1. Copy of a separation or settlement agreement or a divorce decree stating amount and type of support and payment schedules.
2. Copy of latest check and/or payment stubs from Court Trustee OHA must record the date, amount and number of the check.

If payments are irregular or non existing the family must provide:

1. A notice of action showing amounts received by an agency for child support, or
2. A written statement from an attorney certifying that a collection or enforcement action has been filed.

<u>Net Income from a Business</u>

In order to verify the net income from a business the OHA will view IRS and financial documents from prior years and use this information to anticipate the income for the next 12 months.

Acceptable methods of verification include:

1. IRS Form 1040, including:

   a) Schedule C (Small Business)
   b) Schedule E (Rental Property Income)
   c) Schedule F (Farm Income)



2. If accelerated depreciation was used on the tax return or financial statement an accountant's calculation of depreciation expense computed using straight-line depreciation rules.
3. Audited or un-audited financial statement(s) of the business.
4. Credit report or loan application.
5. Documents such as manifests, appointment books, cash books, bank statements and receipts will be used as a guide for the prior six months (or lesser period is not in business for six months) to project income for the next 12 months. The family will be advised to maintain these documents In the future if they are not available.

Child Care Business

If any applicant/participant is operating, a day care business income will be verified as with any other business.

If the applicant/participant is operating a "cash and carry" operation (which may or may not be licensed) the OHA will require that the applicant/participant complete a form for each customer which indicates name of person(s) whose child (children) are being cared for, phone number, number of hours child is being cared for, method of payment (cheek/cash), amount paid, and signature of person.

If the family has filed a tax return, the family will be required to provide it.

If the childcare services were terminated a third party verification will be sent to the parent whose child was cared for.

Recurring Gifts

The family must furnish a self-certification that contains the following information:

1. The person who provides the gifts
2. The value of the gifts
3. The regularity(dates) of the gifts
4. The purpose of the gifts

Zero Income Status

Families claiming to have no income will be required to execute verification forms to determine that forms of income such as unemployment benefits, TANF, SSI, etc. are not being received by the household.

The OHA will request information from the State Employment Development Department, from the TANF agency and from the IRS (Form 1722).

The OHA may check records of other departments in the jurisdiction (such as government utilities) that have information about income sources of customers.



Full-Time Student Status

Only the first $480 of the earned income of full time students 18 years of age or older, other than head or spouse, will be counted towards family income

Financial aid, scholarships and grants received by full time students are not counted towards family income.

Verification of full time student status includes:

1. Written verification from the registrar's office or other school official.
2. School records indicating enrollment for sufficient number of credits to be considered a full-time student by the educational institution.

**F. Income from Assets**

Acceptable methods of verification include, in this order:

Savings Account Interest Income and Dividends

Will be verified by:

1. Account statements, passbooks, certificates of deposit or OHA verification forms completed by the financial institution.
2. Broker's statements showing value of stocks or bonds and the earnings credited the family. Earnings can be obtained from current newspaper quotations or oral broker's verification.
3. IRS Form 1099 from the financial institution, provided that the OHA must adjust the information to project earnings expected for the next 12 months.

Interest Income from Mortgages or Similar Arrangements

1. A letter from an accountant, attorney, real estate broker, the buyer or a financial institution stating interest due for next 12 months. (A copy of the check paid by the buyer to the family is not sufficient unless a breakdown of interest and principal is shown.)
2. Amortization schedule showing interest for the 12 months following the effective date of the certification or rectification.

Net Rental Income from Property Owned by Family

1. IRS Form 1040 with Schedule E (Rental Income).
2. Copies of latest rent receipts, leases or other documentation of rent amounts.
3. Documentation of allowable operating expenses of the property, tax statements, insurance invoices, bills for reasonable maintenance and utilities and bank statements or amortization schedules showing monthly interest expense.



## G. Verification Of Assets

The OHA will require the necessary information to determine the current cash value (the net amount the family would receive if the asset were converted to cash).

1. Verification forms, letters, or documents from a financial institution or broker.
2. Passbooks, checking account statements, certificates of deposit, bonds or financial statements completed by a financial institution or broker.
3. Quotes from a stockbroker or realty agent as to net amount family would receive if they liquidated securities or real estate.
4. Real estate tax statements if the approximate current market value can be deducted from assessment.
5. Financial statements for business assets.
6. Copies of closing documents showing the selling price and the distribution of the sales proceeds.
7. Appraisals of personal property held as an investment.
8. Life Insurance (cash value).

Assets Disposed of for Less Than Fair Market Value (FMV)

(During two years preceding effective date of certification or re-certification)

1. For all Certifications and Re-certifications the OHA will obtain the Family's certification as to whether any member has disposed of assets for less than fair market value during the two years preceding the effective date of the certification or re-certification.
2. If the family certifies that they have disposed of assets for less than fair market value verification [or certification] is required that shows (a) all assets disposed of for less than FMV, (b) the date they were disposed of, (c) the amount the family received, and (d) the market value of the assets at the time of disposition. Third party verification will be obtained wherever possible.

## H. Verification of Allowable Deductions from Income

Child Care Expenses

1. Written verification from the person who receives the payments is required. If the childcare provider is an individual he/she must provide a statement of the amount they are charging the family for their services.
2. Verifications must specify the child care provider's name, address, telephone number, Social Security number, tax ID number, the names of the children cared for, the number of hours the child care occurs, the rate of pay and the typical yearly amount paid including school and vacation periods.
3. Family's certification as to whether any of those payments have been or will be paid or reimbursed by outside sources.

Medical Expenses



Families who claim medical expenses or expenses to assist a person(s) with a disability (see below) will be required to submit a certification as to whether or not any expense payments have been or will be reimbursed by an outside source. All expense claims will be verified by one or more of the methods listed below.

1. Written verification by a doctor, hospital, clinic personnel, dentist, pharmacist of; (a) the anticipated medical costs to be incurred by the family and regular payments due on medical bills, and (b) extent to which those expenses will be reimbursed by insurance or a government agency.
2. Written confirmation by the insurance company or employer of health insurance premiums to be paid by the family.
3. Written confirmation from the Social Security Administration Medicare premiums to be paid by the family over the next 12 months. A computer printout will be accepted.
4. For attendant care:

    a. A reliable, knowledgeable professional's certification that the assistance of an attendant is necessary as a medical expense and a projection of the number of hours the care is needed for calculation purposes.
    b. Attendant's written confirmation of hours of care provided and amount and frequency of payments received from the family or agency (or copies of canceled checks the family used to make those payments) or stubs from the agency providing the services.

5. Receipts, canceled checks or pay stubs that verify medical costs and insurance expenses likely to be incurred in the next 12 months. outstanding medical bills that will continue over all or part of the next 12 months.
6. Copies of payment agreements or most recent invoice that verifies payments made on
7. Receipts or other record of medical expenses incurred during the last 12 months that can be used to anticipate future medical expenses. OHA may use this approach for "general medical expenses" such as non-prescription drugs and regular visits to doctors or dentists, but not for one-time, non-recurring expenses from the previous year.
8. The OHA will use mileage at the IRS rate, or cab, bus fare or other public transportation cost for verification of the cost of transportation directly related to medical treatment.

<u>Assistance to Persons with Disabilities (see 24 CFR 5.511 (a) (ii)</u>

1. In all cases:

    (a) Written certification from a reliable, knowledgeable professional that the person with disabilities requires the services of an attendant and/or the use of auxiliary apparatus to permit him/her to be employed or to function sufficiently independently to enable another family member to be employed.

    (b) Family's certification as to whether they receive reimbursement for any of the expenses of disability assistance and the amount of any reimbursement received.



2. Attendant Care:

(a) Attendant's written certification of amount received from the family, frequency of receipt and hours of care provided.
(b) Certification of family and attendant and/or copies of canceled checks family used to make payments.

3. Auxiliary apparatus:

(a) Receipts for purchases or proof of monthly payments and maintenance expenses for auxiliary apparatus.
(b) In the case where the person with disabilities is employed a statement from the employer that the auxiliary apparatus is necessary for employment.

**I. Verifying Non-Financial Factors**

Verification of Legal Identity

In order to prevent program abuse the OHA will require applicants to furnish verification of legal identity for all family members.

The documents listed below will be considered acceptable verification of legal identity for adults. If a document submitted by a family is illegible or otherwise questionable, more than one of these documents may be required.

1. Certificate of birth, naturalization papers
2. Current valid driver License
3. U.S. Military discharge (DD 214)
4. U.S. Passport
5. State of Florida identification
6. Military ID card

Documents considered acceptable for the verification of legal identity for minors may be one or more of the following:

1. Certificate of birth
2. Adoption papers
3. Custody agreement
4. Permanent Health and Human services ID
5. School records

Verification of Marital Status

Verification of divorce status will be a certified copy of the divorce decree signed by a Court Officer.



Verification of a separation may be a copy of court-ordered maintenance or other records.

Verification of marital status is a marriage certificate.

Familial Relationships

Certification will normally be considered sufficient verification of family relationships. In cases where reasonable doubt exists the family may be asked to provide verification.

The following verifications will always be required if applicable:

Verification of relationship:

1. Official Identification showing names
2. Birth certificates

Verification of guardianship is:

1. Court-ordered assignment
2. Verification from social services agency
3. School records

Evidence of a stable family relationship:

1. Joint bank accounts or other shared financial transactions
2. Leases or other evidence of prior cohabitation
3. Credit reports showing relationship

Verification of Permanent Absence of Adult Member

If an adult member, who was formerly a member of the household is reported permanently absent by the family the OHA will consider any of the following as verification:

1. Husband or wife institutes divorce action.
2. Husband or wife institutes legal separation.
3. Order of protection/restraining order obtained by one family member against another.
4. Proof of another home address, such as utility bills, canceled checks for rent, driver's license, or lease or rental agreement, if available.
5. Statements from other agencies such as social services or a written statement from the landlord or manager that the adult family member is no longer living at that location.
6. If the adult family member is incarcerated a document from the Court or prison should be obtained stating how long they will be incarcerated.

Verification of Change in Family Composition

The OHA may verify changes in family composition (either reported or unreported) through



letter, telephone calls, utility records, inspections, landlords, neighbors, credit data, school or DMV records and other sources.

Verification of Disability

Verification of disability must be receipt of SSI, VA or SSA disability payments under section 223 of the Social Security Act or 102(7) of the Developmental Disabilities Assistance and Bill of Rights Act (42 U.S.C. 6001(7) or verified by appropriate diagnostician such as physician, psychiatrist, psychologist, therapist, rehab specialist or licensed social worker, using the HUD language as the verification format.

Verification of Citizenship/Eligible Immigrant Status

To be eligible for assistance, individuals must be U.S. citizens or eligible immigrants. Individuals who are neither may elect not to contend their status. Eligible immigrants must fall into one of the categories specified by the regulations and must have their status verified by Immigration and Naturalization Service (INS). Each family member must declare his or her status once. Assistance cannot be delayed, denied, or terminated while verification of status is pending except that assistance to applicants may be delayed while the OHA hearing is pending.

1.  Citizens or Nationals of the United States are required to sign a declaration under penalty of perjury.
2.  Eligible Immigrants who were Participants and 62 or over on or before June 19, 1995, are required to sign a declaration of eligible immigration status and provide proof of age.
3.  Non-citizens with eligible immigration status must sign a declaration of status and verification consent form and provide their original immigration documents which are copied front and back and returned to the family. The OHA verifies the status through the INS SAVE system. If this primary verification fails to verify status, the OHA must request, within then days, that the INS conduct a manual search.
4.  Ineligible family members who do not claim to be citizens or eligible immigrants must be listed on a statement of ineligible family members signed by the head of household or spouse.
5.  Non-citizen students on student visas are ineligible members even though they are in the country lawfully. They must provide their student visa but their status will not be verified and they do not sign a declaration but are listed on the statement of ineligible members.

Failure to Provide. If an applicant or participant family member fails to sign required declarations and consent forms or provide documents, as required, they must be listed as an ineligible member. If the entire family fails to provide and sign as required the family may be denied or terminated for failure to provide required information.

Time of Verification. For applicants verification of U.S. citizenship/eligible immigrant status occurs at the same time as verification of other factors of eligibility for final eligibility determination. For participants it is done at the first regular re-certification after June 19, 1995. For family members, added after other members have born verified, the verification occurs at the first re-certification after the new member moves in. Once verification has been completed for



any covered program, it need not be repeated except that, in the case of port-in families, if the initial OHA does not supply the documents the OHA must conduct the determination.

Extensions of Time to Provide Documents. Extensions must be given for persons who declare their eligible immigration status but need time to obtain the required documents. The length of the extension shall be based on individual circumstances. The OHA will generally allow up to 30 days to provide the document or a receipt issued by the INS for issuance of replacement documents.

Acceptable Evidence of Eligible Immigration Status. Section 5.5 10 (b) defines acceptable evidence of eligible immigration status as the original of a document designated by INS as acceptable evidence of immigration status in one of the six categories (for which non-citizens may qualify for eligible immigration status). These documents may change from time to time. Currently, the following documents are acceptable:

- Resident Alien Card (1-55 1)
- Alien Registration Receipt Card (1-151)
- Arrival-Departure Record (1-94)
- Temporary Resident Card (1-683)
- Employment Authorization Card (I-688B)
- Receipt issued by the INS for issuance of replacement of any of the above documents that shows that the individual's entitlement has been verified.

Note: All applicants and recipients of assistance will fall into one of three categories:

1. Ineligible – no members of the family are US Citizens, US Nationals or have Eligible Immigrant status.
2. Mixed – at least one member of the family is a US Citizen, US National or has Eligible Immigrant status. Assistance must be prorated for those who have eligible status. Ineligible members of the family cannot receive 'their share' of assistance.
3. Eligible – All members of the family are US Citizens, US Nationals or have Eligible Immigrant status.

Verification of Social Security Numbers

Social Security numbers must be provided as a condition of eligibility for all family members, age six and over, if they have been issued a number. Verification of Social Security numbers will be done through a Social Security card issued by the Social Security Administration. If a family member cannot produce a Social Security card, only the documents listed below, showing his or her Social Security number may be used for verification. The family is also required to certify, in writing, that the documents(s) submitted in lieu of the Social Security card information provided is/are complete and accurate:

- A driver's license
- Identification card issued by a Federal, State or local agency
- Identification card issued by a medical insurance company or provider (including Medicare and Medicaid)



- An identification card issued by an employer or trade union
- An identification card issued by a medical insurance company
- Earnings statements or payroll stubs
- Bank statements
- IRS Form 1099
- Benefit award letters from government agencies
- Retirement benefit letter
- Life insurance policies
- Court records such as real estate, tax notices, marriage and divorce, judgment or bankruptcy records
- Verification of benefits or Social Security number from Social Security Administration

New family members, ages six and older, will be required to produce their Social Security card or provide the substitute documentation described above, together with their certification that the substitute information provided is complete and accurate. This information is to be provided at the time the change in family composition is reported to the OHA.

If an applicant or participant is able to disclose the Social Security number, but cannot meet the documentation requirements, the applicant or participant must sign a certification to that effect provided by the OHA. The applicant/participant or family member will have an additional 30 days to provide proof of the Social Security number. If they fail to provide this documentation, the family's assistance will be terminated.

In the case of an individual, at least 62 years of age the OHA may grant an extension for an additional 60 days to a total of 120 days. If, at the end of this time, the elderly individual has not provided documentation, the family's assistance will be terminated.

If the family member states that they have not been issued a number, the family member will be required to sign a certification to this effect.

Medical Need for Larger Unit

A written certification that a larger unit is necessary must be obtained from a reliable, knowledgeable professional.

**J. Verification of Local and Ranking Preferences**

Graduate of Transitional Housing for the Homeless—Acceptable evidence is a written statement signed by the Director or other appropriate official of the transitional housing facility that identifies the applicant as a current or recent (within the last 12 months resident of the transitional housing facility, has completed the training and other requirements for independent living and is capable of independent living in OHA housing.

Working Families—Verification form signed by employer or designated official of company indicating



- Date applicant started work
- The number of hours per week that the applicant is working
- If the applicant has been working less than 30 hours per week and the employer has them enrolled or independently they are enrolled in educational, training, or upward mobility programs resulting in a combination of work and training of 30 hours per week or more

Non-employed applicants with adult members enrolled in educational, training, or upward mobility programs, shall be considered working families. Verification will consist of copies of official transcripts, or written verification by registrar or other appropriate official of the educational, job training or upward mobility training institution that the adult family members are enrolled for an annual average of at least 30 hours per week taking into consideration interruptions due to vacations, semester breaks etc, or a combination of such training and part-time work averaging 30 hours or more per week.

Victims of domestic violence – Written verification from the police, court or other law enforcement agency. Verification must be obtained from a landlord or other appropriate source that the abuser still resides at the unit. The family must certify that the abuser will not return to the household without the advance written approval of OHA. Approval will not be given unless OHA is provided with evidence that the family members have been through a counseling program and that the counselor and relevant service provider believe that that the abusive behavior is not likely to reoccur and reconciliation is likely. Note: This is not a preference for LRPH but Section 8 only.

Disability—Certification by a relevant health care provider (e.g., medical doctor, osteopath, psychologist, psychiatric social worker) that

- the individual meets the definition of person with disabilities contained in 24 CFR 5.403
- the individual requires the special physical conditions (such as specially equipped unit, special location – eg., first floor, etc) requested
- the individual's claimed exemption from the Community Service Requirement (for a covered person in LRPH only) is valid (24 CFR 960.601, 605)

Former Homeowner – Notation by the OHA from its records that the applicant was a LRPH or Section 8 Voucher tenant who had acquired a home and had met the requirements of the OHA Homeownership program (including Homeownership Training). In addition, independent verification from the former sources of income, that the family lost all or part of that income through no fault of their own and that thereby it was unable to pay the mortgage and lost that home.

**Ranking Preference** — The ranking preferences are the same as the preferences but given a different value. Therefore, the documentation required for ranking is the same as that required for claiming a preference.



## Chapter 9

## REQUEST FOR TENANCY APPROVAL AND CONTRACT EXECUTION

### A. OHA Review of Request for Tenancy Approval and Lease

OHA will review the Request for Tenancy Approval and the proposed lease completed by the family and the owner or other party authorized to execute the lease.

OHA will **not** approve a lease and execute a Housing Assistance Payments Contract:

- If the information concerning responsibility for utilities and appliances is inconsistent with that contained in the Request for Tenancy Approval (form HUD-52517)
- If the HUD-required Tenancy Addendum is not made part of the lease
- If all of the information required by 24 CFR 932.308 (d) is not specified in the lease
- IF OHA determines that the lease does not comply with State or local law
- If the rent requested is not reasonable
- If the unit does not meet HQS
- If the owner does not provide documentation showing proof of ownership of the unit
- If the owner does not agree to direct deposit of HAP payments (except that the Section 8 Director may authorize execution of a HAP Contact with an owner who declines to participate in direct deposit where special circumstances exist. In such event, the Section 8 Director must document in a memorandum to the file the reasons for such approval and provide the Executive Director a copy of this memorandum)
- If the owner is ineligible for the reasons set forth in 24 CFR 982.306
- If the family share of the rent exceeds 40 percent of the family's monthly adjusted income at the times family initially receives tenant-based assistance for occupancy of a dwelling unit, and the gross rent of the unit exceeds the applicable payment standard for the family

### B. OHA Action Upon Receipt of Request for Tenancy Approval and Lease

Promptly upon receipt of the Request for Tenancy Approval and Lease, OHA will review to ascertain whether: l) the Lease accurately reflects the information with respect to responsibility for utilities and appliances set forth in the Request for Tenancy Approval and is not inconsistent with State or local law; 2) the family share of the rent does not exceed 40 percent of the family's adjusted income as described above; and 3) the owner is not ineligible. Processing will continue only if this review is positive or in the event that OHA finds that corrections must be made to the Lease the owner is willing to make the corrections. OHA will then schedule an HQS inspection and a rent reasonableness review. To the extent practicable, this inspection will be completed within 15 days after the family and owner submit an otherwise approvable Request for Tenancy Approval. The HQS inspection process is described in chapter 10, and the rent reasonableness review is described in chapter 11. OHA may schedule an HQS inspection upon receipt of a Request for Tenancy Approval even though the proposed lease is not included. The required determinations relative to the Lease and the owner qualifications must be completed prior to



execution of any Housing Assistance Payment (HAP) Contract with an owner.

**C. Disapproval of Request for Tenancy Approval**

As required by 24 CFR 982.305 (d), OHA will promptly notify the family and owner whether the assisted tenancy is approved. If not approved, OHA will advise the family and owner of the changes which must be made to enable the request to be approved. If the changes are not made, OHA will provide the family with another Request for Tenancy (RFTA) form and Owner's Packet to enable the family to continue to search for eligible housing. OHA will execute a Housing Assistance Payments Contract with the owner only if the conditions for approval are met.

**D. Eligible Types of Housing**

All housing types including walk-up and elevator apartments, single-family detached homes, and attached town homes are eligible for the program. In addition, of the special housing types permitted to be used per 24 CFR 982.601, OHA permits the use single room occupancy (SRO) housing, congregate housing, independent group residences, cooperatives (including mutual housing), manufactured homes, and the homeownership option (see Chapter 20). A description of the types of housing that OHA will not assist is found at 24 CFR 982.352.

As required by 24 CFR 982.601 (b) (3), OHA will permit the use of any of the special housing types if needed as a reasonable accommodation.

**E. Separate Agreements**

Separate agreements are not necessarily illegal side agreements. Families and owners will be advised of the prohibition of illegal side payments for additional rent, or for items normally included in the rent of unassisted families, or for items not shown on the approved lease.

Owners and families may execute separate agreements for services, appliances (other than range and refrigerator), security deposit payments, and other items that are not included in the lease if the agreement is in writing and approved by OHA.

Any appliances, services or other items that are routinely provided to unassisted families as part of the lease (such as air conditioning, dishwasher, or garage) or are permanently installed in the unit, cannot be put under separate agreement and must be included in the lease. For there to be a separate agreement, the family must have the option of not utilizing the service, appliance, or other item.

OHA is not liable for unpaid charges for items covered by separate agreements, and nonpayment of these agreements may be cause for eviction and may be cause for program termination.

If the family and owner have come to a written agreement on the amount of allowable charges for a specific item, so long as these charges are reasonable and not a substitute for higher rent, they will be allowed.



All agreements for special items or services must be attached to the lease submitted with the RFTA.

**F. Disapproval of Proposed Rent**

If the gross rent exceeds the reasonable rent, OHA will require the owner to reduce the Contract Rent or include some or all utilities in the Contract Rent, so that the gross rent does not exceed the amount of rent OHA determines to be reasonable.

If the case of owner agreement to a lower rent, OHA will continue processing the RFTA. If the owner agrees to include some or all of the utilities in the rent, the RFTA and Lease must be revised accordingly.

**G. Information to Owners**

As required by 24 CFR 982. 307 (b), OHA will give the owner the family's current and prior address and name and address of the landlord at the family's current and prior address. However, OHA will not provide this information if the family's whereabouts must be protected due to domestic abuse or witness protection.

OHA will not screen applicants for family behavior or suitability for tenancy, but will provide the owner the information required to be given to an owner by 24 CFR 982.307 (b) (1), and the following additional information (based on documentation in OHA files): eviction history, damage to rental units, and drug trafficking by family members. The Section 8 Director will provide this additional information.

**H. Change in Ownership**

Part B. 14 of the HAP Contract (form HUD-5264 1 (3/2000) contains the requirements regarding assignment of the HAP Contract to a new owner.

Upon receipt of a written request to assign the contract to a new owner, accompanied by a copy of the escrow statement or other document showing the transfer of title, a statement by the new owner that he/she agrees to be bound by and comply with the HAP Contract, the Employee Identification Number or Social Security Number of the new owner, and the direct deposit authorization information with a voided check, OHA will begin to process a change of ownership.

OHA will not approve the assignment of a HAP Contract if OHA determines that the new owner falls into any of the categories for disapproval contained in Part B.14. c. d. e. and f. of the HAP Contract.

**I. Execution of Housing Assistance Payments Contract**

OHA will use its best efforts to execute the HAP contract before the beginning of the lease term.



As required by HUD, the HAP contract must be executed no later than 60 calendar days from the beginning of the lease term. The lease term may not begin earlier than the date OHA inspects and passes the unit as meeting HQS, and approves the rent.

The family may move into the unit at the beginning of the lease term, even if OHA has not executed the HAP contract with the owner. However, HAP payments will not be paid until the HAP contract is executed. When the HAP contract is executed within the period of 60 calendar days from the beginning of the lease term, OHA will pay housing assistance payments to cover the portion of the lease term before execution of the HAP contract

A voucher holder may submit a Request for Tenancy Approval for the unit the voucher holder has been residing in prior to issuance of the voucher. If OHA approves the Request for Tenancy Approval ,OHA may execute a HAP contract for the unit. In such event, although the family is in residence at the unit, housing assistance payments will not be paid for any period before the beginning of the lease term set forth in the new lease, which OHA reviewed and approved for use in the Section 8 housing choice voucher program.



## Chapter 10

## HOUSING QUALITY STANDARDS AND INSPECTIONS

Housing Quality Standards (HQS) are the minimum criteria a dwelling unit must meet to ensure the health and safety of occupants of Section 8 tenant-based housing assistance. The HQS are described in 24 CFR 982.401. They consist of performance requirements and acceptability criteria (minimum acceptable level of conditions or performance to meet each standard). OHA will conduct an HQS inspection prior to the initial term of the lease, at least annually during assisted occupancy, and at other times as needed to determine if the unit meets the HQS (see A. below).

It is the policy of OHA to encourage owners to provide housing above HQS minimum standards.

### A. Types of Inspections

There are five types of inspections OHA will perform:

1. Initial/Move-in: conducted upon receipt of a Request for Tenancy Approval and a positive determination that the conditions described in chapter 9 B. are met.

2. Annual re-inspection: OHA generally will conduct such inspections within 60 to 90 days prior to the anniversary month of the initial HAP contract

3. Special complaint inspection: conducted following a complaint by the family, owner, or other public agency or third party. A special inspection will be conducted whenever OHA obtains information that the unit is in violation of HQS. A special inspection may be conducted in response to owner requests to determine if a unit(s) qualifies for potential participation (Such preliminary inspections will not be considered as substitutions for required initial inspections that result from a Request for Tenancy Approval).

4. Move-out/Vacate inspection: conducted only for those HAP contracts that were executed before 11/1/95, and only at the owner's request.

5. Supervisory quality control inspections: conducted by a supervisor or other qualified person for a sample of recently completed HQS inspections.

### B. Scheduling Inspections

Inspections will be conducted on business days between the hours of 8:30 AM and 5:00 PM. Where special circumstances exist, the Section 8 Director may approve inspections on weekends or holidays and after 5:00 PM.

OHA will notify the family in writing, or facsimile or email, where appropriate, at least 5 days prior to the date of the annual, complaint, or quality control inspection.



If the family is unable to be present, OHA requires that the family reschedule the appointment before the inspection date. The rescheduled appointment must be completed within 10 days of the initial appointment.

If the family does not contact OHA to reschedule the inspection, or if the family misses one inspection appointment, OHA will consider the family to have violated a family obligation, and the family may be terminated from the program.

**C. Time Standards for Repairs**

1. Life-Threatening Defects

If a defect is life threatening, the owner (or the family if the HQS breach is caused by the family) must correct the defect within no more than 24 hours of notification by OHA of the defect. In the event an inspection finds life threatening defects, OHA will contact the owner as expeditiously as possible (e.g. by phone, or in person, a note to the file will document such contact) and follow-up with a written notification. The 24-hour time limit will be measured from time of initial contact. In those cases where there is leaking gas or potential of fire or other threat to public safety, and the responsible party cannot be notified expeditiously, or is unable to effect the repair within the 24-hour period, OHA will notify the proper authorities.

2. Other Defects

Non life-threatening violations of HQS can range from serious (e.g. lack of functioning toilet) to minor (e.g. a single burner on a 4-burner stove not operating properly).

Where OHA determines that an HQS violation is serious (but not life-threatening), OHA requires the responsible party to make the repairs within 72 hours of notification.

For other defects, the responsible party must correct the defect within no more than 30 calendar days from the date of notification.

**D. Consequences if Repairs are not Made within Time-Frames Specified**

During the HQS inspection, the OHA inspector will determine whether the items not meeting HQS are the responsibility of the owner or the assisted family.

1. Owner responsibility.

When OHA determines that a unit fails to meet HQS, and the owner is responsible for completing the necessary repairs, OHA will abate housing assistance payments for the unit beginning on the date of the inspection determining that the unit failed HQS.

A Notice of Abatement will be sent to the owner. The duration of the abatement will depend on the nature of the repairs required to be made.



OHA will inspect the unit promptly upon receipt of notification from the owner that the necessary repairs have been made. If the owner makes repairs during the abatement period, payments will resume effective the date the unit passes inspection. If repairs are not made during the abatement period, OHA will take other appropriate action including issuance of a voucher to the family and termination of the HAP contract.

No retroactive payments will be made to the owner for the period of time the HAP payment was abated, and the unit did not comply with HQS.

2. Family Responsibility.

OHA will notify the family in writing if it determines that an HQS violation is the responsibility of the family and indicate the date by which the necessary repairs must be made.

OHA will schedule a re-inspection of the unit on the first working day following the date indicated in the notification for completion of the repairs. If the family fails to make the repairs, OHA will notify the family that assistance will be terminated and that the family has the right to an informal hearing prior to termination.



## Chapter 11

## RENT REASONABLENESS, PAYMENT STANDARDS AND RENT ADJUSTMENTS

### A. Reasonable Rents

Rents to owners must be determined to be "reasonable" in relation to comparable unassisted units in the housing market area. As required by HUD (24 CFR 982.507), in making this determination, OHA will consider the location, quality, size, unit type, age of the contract unit, amenities, and housing services, maintenance and utilities to be provided by the owner.

In multifamily properties containing assisted and unassisted units OHA staff will document that the rent to owner does not exceed rents currently charged by the same owner for an equivalent unit in the same building or complex.

In determining whether a proposed rent is reasonable in relation to rents charged by other owners, at least two comparables will be used. Wherever possible, OHA will utilize information on the rents charged in similar properties in close proximity to or in the same neighborhood as the subject property. Rent information for unassisted units will be obtained from newspaper and internet listings, multiple listing services of realtors and real estate companies that handle rental property, associations, inquiries of owners, market surveys, census data, and other available sources.

Within the Orlando/Orange County housing market area, there are distinct sub markets (i.e., the same housing unit would rent for a different amount in a different location within the housing market area). The database maintained by OHA will contain information on rents in the different sub markets. In determining the reasonableness of rents, OHA will compare the rents for the subject property with the rents of units in locations having neighborhood conditions (including crime rates and accessibility to services, employment, transportation etc.) similar to the subject's.

OHA is cognizant that the three factors generally identified as most important in explaining differences in rents are the location of the unit, number of bedrooms in the unit, and type of unit (e.g. high-rise, garden apartment, duplex, town-home, single-family home). Other factors (e.g. storage room outside unit, onsite maintenance staff) may increase the desirability of a unit, and thus result in the unit being rented faster, but have little effect on the rent. Where feasible and appropriate, OHA will assign a dollar value for a specific amenity or management service. OHA will consider all relevant factors in making a determination that a proposed unit is reasonable.

### B. Payment Standards

OHA will establish its Payment Standard Schedule for its operating jurisdiction between 90 and 110% of the published Fair Market Rents (FMR) for the Orlando metropolitan area. If a family includes a person with disabilities and requires a higher payment standard in order to obtain accessible housing, as a reasonable accommodation, OHA will establish a Payment Standard up to 110% of the published FMR.
Periodically, OHA will review its Payment Standards to determine whether an adjustment should



be made for some or all unit sizes (as measured by number of bedrooms). This determination will consider recent success rates of holders of vouchers for different size units, whether successful voucher holders are limited to areas of high poverty or certain sub markets, and whether a significant portion of voucher holders initially admitted to the program have had to pay more than 30% of their adjusted incomes for their units. If necessary to improve success rates, and/or increase housing opportunities in a wide range of locations, aid/or reduce rent burdens, OHA will use its discretionary authority to increase the Payment Standards up to 110 % of the published FMR for some or all unit sizes, and some or all portions of the OHA operating jurisdiction.

OHA will monitor the rent burdens to determine whether 40 % or more of the families occupying particular unit sizes currently pay more than 30 % of their adjusted monthly incomes for rent and utilities. Where this occurs, OHA will adjust its Payment Standards up to 110% of FMR.

OHA will request HUD field office approval of an exception Payment Standard above 110 % of the published FMR up to 120% when necessary as a reasonable accommodation for a family that includes a person with disabilities.

OHA will request HUD field office approval of an area exception payment standard above 110% of the published Payment Standard up to 120% where necessary to enable families to find (or retain) housing outside areas of high poverty, or because voucher holders have trouble finding housing for lease under the program within the term of the voucher, provided that OHA determines that the data required by 24 CFR.982.503 (c) (2) (A) or (B) would justify HUD approval.

OHA will only request field office approval if OHA is able to provide supporting documentation of the program-related reason(s) for the area exception payment standard increase as exemplified by the guidance contained in paragraph 6 E. of PIH Notice 2000-46 (OHA).

OHA will request HUD approval of "success rate payment standard amounts" based on the 50th percentile rent, if the conditions for approval as set forth in PIH Notice 2001-1 are met.

**C. Rent Adjustments**

To be eligible for a rent adjustment, an owner must notify OHA in writing at least 60 days before the first day of the month the rent change is to go into effect. OHA will approve a rent adjustment if OHA determines that the proposed new rent is reasonable.

*Updated: 10/20/2005*



# Chapter 12

## RE-CERTIFICATIONS

### A. Annual Re-certification Of Family Income and Composition

In implementing the HUD requirement that family income and composition be reexamined at least annually, OHA will notify families in writing between 75 to 90 days before the date the re-certification is scheduled to be completed (generally each year on the first day of the month in which the initial HAP Contract was effective). The written notification will be transmitted via US Mail, or E-Mail, or facsimile transmission, where appropriate. OHA will send one (1) appointment letter.

The OHA notification will specify an appointment date (at least seven days from the date of the notification letter) and time for the re-certification interview, and inform the family of the basic documentation required to be brought by the family to the appointment. The notification will state that the family may call to request another appointment date and/or time up to two days before the scheduled appointment date. The notification will further state that the head of household and/or spouse is required to attend the interview, but that OHA will make alternate arrangements if necessary, as a reasonable accommodation for persons with disabilities.

At the appointment, an OHA Eligibility Specialist will review the documentation and interview the family. As a result of this interview, additional documentation may be required to be provided in order to enable OHA to complete the re-certification process. At the conclusion of the interview, the OHA Eligibility Specialist will provide the family with a written notice specifying the additional material required to be provided. The written notice will state that if the requested information is not provided within ten (10) business days from the date of the notice, the family's Section 8 assistance will be terminated.

OHA will conduct a criminal background check at The Annual Re-certification on all adult family members 18 years and older. If any family member fails the criminal background the head of household has the right to request an informal review. (In accordance with chapter 19)

### B. Failure to Attend Scheduled Interview

If a family fails to attend the scheduled interview or fails to call to reschedule within two days of the appointment date, OHA will send to the family a notice of intent to terminate rental assistance as of a specified date. The notice will state that the family has a right to request an informal hearing to appeal this decision, and, that if the family desires such an informal hearing, the family must notify OHA in writing within ten business days of the date of the OHA notice.

### C. Failure to Provide Requested Information

If the family is present for the scheduled appointment and fails to provide the OHA with all of the requested information required as a result of the re-certification appointment, the family will



be rescheduled. If the new appointment is to be conducted after the lease expires, the family will be responsible for the full contract rent for that month.

**D. Payment Adjustment Notice**

OHA will verify income and family composition following the procedures set forth in Chapter 8. In the event that the re-verification process results in changes in the amount the family must pay towards rent to the owner and any tenant-paid utilities, the family will be notified in writing of the changed amounts, and the effective date of the change. The notification will indicate that if the family does not agree with OHA's determination, the family may request an informal hearing, and specify that the deadline date to request a hearing is ten business days from the date of the notification. OHA will make every effort to send the payment adjustment notice at least 30 days before the effective date of the change. A copy of this notice, which also will indicate the changed HAP amount, will be sent to the owner.

**E. Reporting Changes in Family Income**

Participant families must report to OHA increases in family income of $100 per month or more, which occur between regularly scheduled re-certifications -- within 10 days of the change. However, an interim re-certification does not need to be conducted.

**F. Interim Re-certification of Family Income**

The OHA will conduct an interim re-certification of family income when a family member goes from zero income to earning some type of income, or in any case where the families income decreases. All other reported changes in family income will be promptly filed away and verification of the change will be needed at the families scheduled annual re-certification appointment.

**G. Interim Re-certification of Family Composition**

Promptly after receiving notification by the family of any change in family composition as required by paragraph F. of Chapter 7, OHA will initiate an interim re-certification of the family. However, if OHA receives the report of change in family composition within 90 days of the effective date of an annual re-certification, no separate interim re-certification will be completed. When conducting an interim re-certification, OHA will verify only those factors that have changed since the last certification/re-certification or were not previously verified.

**H. Effective Date of Interim Re-certification**

If re-certification results in a change in rent payment, a letter is sent to the tenant and the landlord detailing those changes. If the rent charged to the tenant is increased, the new charges take effect on the first day of the month following at least 30 days (but no more than 60 days) from the date of the letter. If the tenant rent payment is decreased, the tenant shall pay the reduced amount on the first day of the month following the date of the letter.



## Chapter 13

## MOVES WITH CONTINUED ASSISTANCE/ PORTABILITY

In accordance with the provisions of 24 CFR 982.314 (b), a family may move to a new unit and continue to receive tenant-based assistance.

### A. Restrictions

During the initial lease term, families are not permitted to move to another unit and continue to receive assistance unless OHA terminates the HAP contract for the owner's breach or if there are extenuating circumstances, a mutual recession between landlord and tenant may end the rental relationship.

The Section 8 Director may make exceptions to these restrictions for emergencies that are beyond the control of the family.

### B. Notice Requirements

If a family intends to terminate its lease with an owner, the family must provide to the owner a written notice of its intention to move within the time period specified in the lease for such notice (generally 30 to 6o days). A copy of the notice must be provided to OHA at the same time, and the family must request an appointment to receive a new voucher. If the family has not been re-certified within the last 90 days, OHA will complete the re-certification process prior to issuance of the new voucher. The new voucher will be issued only after the family attends a move briefing and receives a briefing packet. OHA will **not** issue a new voucher if the family moves out of its unit in violation of the lease.

If the family wants to move to a new unit outside the jurisdiction of OHA, the family's notice to OHA must specify the area where the family wants to move. See D. below for portability procedures.

### C. HAP Payments

When a family moves with continued assistance, full HAP payments are made to the owner of the old unit for the month in which the family ceased to occupy the unit, unless proper notice was given to end a lease prior to the end of a month. Housing assistance payments with respect to the new unit will be made beginning on the effective date of the lease and HAP contract. If such effective date occurs in the month the family moved out of the old unit, HAP payments will overlap.

### D. Outgoing Portability

A family has the right to receive tenant-based assistance anywhere in the United States where there is a PHA operating a tenant-based Section 8 program.



1. Move-Outs by Participant Families

Promptly upon receipt of the notice from a participant family that it intends to move to an area outside the jurisdiction of OHA, OHA will determine whether there is a PHA operating a Section 8 tenant-based program in the area. If there is one, OHA will advise the family how to contact the PHA and notify the PHA to expect the family. If more than one PHA operates in the area to which the family wishes to move, OHA will exercise its discretion to designate one of the PHA's as the "receiving" PHA.

It is the responsibility of the family to promptly contact the receiving PHA and comply with the receiving PHA procedures for incoming Portable families.

2. Portability by Resident Applicants

All families issued a voucher by OHA must enter into an approved lease agreement within the jurisdiction of OHA —for twelve (12) months before they can exercise the Portability rights. -, as described in 24 CFR 982.353. A family wishing to exercise the portability rights must notify OHA prior to the expiration of the voucher. OHA will advise the family how to contact the receiving PHA and notify the receiving PHA to expect the family.

Voucher-holders who are not current Section 8 participants must be income-eligible for admission to the receiving PHA's Section 8 program. For these voucher-holders, OHA will review the current income limit tables and advise the family if the family's Annual Income is not within the Very Low-Income limit for the jurisdiction of the receiving PHA.

3. Portability Limitation for Nonresident Applicants

A family does not have any right to Portability for its initial lease-up where neither the head of household or spouse had a legal residence in the jurisdiction of OHA at the time the family first submitted its pre-application for Section 8 to OHA. Consistent with the authority provided in 24CFR982.353 (c), OHA does not choose to allow Portability for initial lease-up for such families.

**E. Incoming Portability**

OHA will maintain a log of all calls from an initial PHA advising OHA to expect a Portability family. This log will contain information about the family and the name, address, phone/fax numbers of the PHA making the call. When the Part I of Family Portability Information form HUD- 52665 is received by OHA, staff will promptly review the form and attachments and request from the initial PHA any necessary additional information.

When the Portability family contacts OHA, staff will advise the family of the date and time of the briefing and any missing documentation that the family needs to bring to the briefing. Portable families are required to meet the same requirements as other OHA voucher holders with respect to the expiration dates of vouchers and extensions.



Subsequent to receipt of a Request for Tenancy Approval from an incoming Portable family, HQS inspection of the unit and approval of the rent, OHA will determine whether to absorb the family into OHA's program, or bill the initial PHA under Portability procedures. Generally, if funds are available under OHA's consolidated Annual Contributions Contract (ACC), and OHA lease-up goals have not been met, OHA will absorb the family into OHA's voucher program. In making the decision to absorb or bill, OHA will consider such relevant factors as amount of administrative fee from the initial PHA, past experience with respect to prompt and accurate payments from the initial PHA, and the HAP payment amount. When necessary to help achieve lease-up or other goals, or as a result of persistent billing or other problems, OHA may absorb an incoming Portability family at a later date.

The Executive Director is authorized to waive locally established portability policies and procedures when there has been a State of Federally-declared disaster.

OHA will deny or terminate assistance for a Portability family's action or inaction in accordance with 24CFR932.552 and 932.553.



# Chapter 14

## HAP CONTRACT TERMINATIONS

The Housing Assistance Payments (HAP) contract is a contract between OHA and the owner. The term of the HAP contract begins on the first day of the initial term of the lease between the family and the owner and terminates on the last day of the term of the lease (including the initial lease term and any extension).

Part B of the HAP contract lists nine circumstances causing termination of a HAP contract. Certain of the circumstances result in automatic termination, and others allow discretion by OHA.

### A. Automatic Termination of the HAP Contract

The HAP Contract terminates automatically if the owner or the family terminates the lease, if the family moves from the unit, if OHA terminates program assistance for the family, and when 180 calendar days passes after the last housing assistance payment to the owner.

#### 1. Termination of Lease by Owner

An owner may terminate the lease at the end of its term by providing advance written notice to the family accordance with the terms of the lease.

An owner may terminate the tenancy during the term of the lease for the circumstances described in item 8 of the Tenancy Addendum (Part C of the HAP Contract).

It is OHA policy that the required notice of the owner's grounds for eviction specifies the section of the lease that has been violated and cites some, or all, of the ways in which the tenant has violated the cited section. This will enable the OHA to determine whether to issue a new voucher to the family to enable the family to move with continued assistance. OHA will **not** issue a new voucher to a family if the grounds for eviction of the family include: serious or repeated violation of the lease, criminal activity or alcohol abuse as provided in Section 8c of the Tenancy Addendum and "other good cause" as specified in Section 8d(2) of the Tenancy Addendum.

#### 2. Termination of the Lease by the Family

The family may terminate the lease with appropriate notice to the owner as provided in the lease, but not less than 30 days. It is the responsibility of the family to provide OHA with a copy of the notice of termination at the same time it is provided to the owner. Failure to do this is a breach of family obligations as is failure by the family to notify the owner and OHA before moving from the unit.

### B. Termination of The HAP Contract by OHA

In addition to the circumstances cited above for automatic termination of the HAP contract,



OHA may terminate the HAP contract when there is an owner breach of contract as described I. Part B item 10 of the HAP Contract, or when the owner assigns the HAP contract to a new owner without the prior written consent of OHA.

If OHA determines that the dwelling unit is overcrowded because of an increase in family size or a change in family composition, the family will be issued a new voucher to locate a larger unit, and OHA will terminate the HAP contract for the overcrowded unit.

OHA will provide the owner and family at least 30 days written notice of termination of the HAP contract



## Chapter 15

## TERMINATION OF ASSISTANCE TO THE FAMILY BY THE OHA

The OHA may terminate assistance for a family because of the family's action or failure to act. The OHA will provide families with a written description of the Family Obligations under the program, the grounds under which the OHA can deny or terminate assistance, and the OHA's informal hearing procedures. This Chapter describes when the OHA is required to terminate assistance and the grounds for termination of assistance under an outstanding HAP contract.

### A. Grounds For Termination

If termination is based upon behavior resulting from a disability, the OHA will delay the termination in order to determine if there is an accommodation, which would meet the behavior resulting from the disability.

#### Form of Termination

Termination of assistance for a participant may include any or all of the following:

1. Refusing to enter into a HAP contract or approve a lease
2. Terminating housing assistance payments under an outstanding HAP contract
3. Refusing to process or provide assistance under Portability procedures

#### Mandatory Termination

The OHA must terminate assistance for participants:

1. If any member of the family fails to sign and submit HUD or OHA required consent forms for obtaining information.
2. If no member of the family are a U.S. citizen or eligible immigrant.
3. If the family is under contract and 180 days have elapsed since the OHA's last housing assistance payment was made.

#### Grounds for Termination of Assistance

The OHA may, at any time, terminate program assistance for a participant, for any of the following reasons:

1. The family violates any family obligation under the program as listed in 24 CFR 982.551. The family shall not allow any one, who does not reside in the unit to use their address.
2. Any member of the family has ever been evicted from public housing.
3. The family currently owes rent or other amounts to the OHA or to another OHA in connection with Section 8 or public housing assistance under the 1937 Act.
4. The family has not reimbursed any OHA for amounts paid to an owner under a HAP contract



for rent, damages to the unit, or other amounts owed by the family under the lease.

5. The family breaches an agreement with a PHA to pay amounts owed to a PHA, or amounts paid to an owner- by a PHA.
6 The family has engaged in, or threatened, abusive or violent behavior toward OHA personnel.

"Abusive or violent behavior towards OHA personnel" includes verbal as well as physical abuse or violence. Use of expletives that are generally considered insulting, racial epithets or other language, written or oral, which is customarily used to insult or intimidate, may be cause for termination or denial.

"Threatening" refers to oral or written threats or physical gestures that communicate intent to abuse or commit violence.

Actual physical abuse or violence will always be cause for termination.

Family Self Sufficiency (FSS)

Failure to fulfill the obligations and conditions of the FSS contract is grounds for termination of assistance.

The OHA will terminate assistance for FSS families who fail to comply with the FSS Contract of Participation without good cause.

**B. Family Obligations**

1. The family must supply any information that the OHA or HUD determines is necessary in the administration of the program, including submission of required evidence of citizenship or eligible immigration status (as provided by 24 CFR, part 5). "Information" includes any requested certification, release or other documentation.
2. The family must supply any information requested by the OHA or HUD for use in a regularly scheduled re-examination or interim re-examination of family income and composition in accordance with HUD requirements.
3. The family must disclose and verify Social Security Numbers as provided by 24 CFR part 5 and must sign and submit consent forms for obtaining information in accordance with 24 CFR part 760 and 24 CFR, part 5.
4. All information supplied by the family must be true and complete.
5. The family is responsible for an HQS breach caused by the family as described in 982.404(b).
6. The family must allow the OHA to inspect the unit at reasonable times and after reasonable notice.
7. The family may not commit any serious or repeated violation of the lease.
8. The family must notify the owner in writing and, at the same time, provide a copy of the notice the OHA before the family moves out of the unit or terminates the lease on notice to the owner.
9. The family must promptly give the OHA a copy of any owner eviction notice.
10. The family must use the assisted unit for residency by the family. The unit must be the family's only residence.
11. The composition of the assisted family residing in the unit must be approved by the OHA. The family must promptly inform the OHA of the birth, adoption or court-awarded custody of a child. The family must request OHA approval to add any other family member as an occupant of the unit.



12. The family must promptly notify the OHA if any family member no longer resides in the unit.
13. If the OHA has given approval, a foster child or live-in aide may reside in the unit. If the family does not request approval, or OHA approval is denied, the family may not allow a foster child or live-in aide to reside with the assisted family.
14. Members of the household may engage in legal profit-making activities in the unit, but only if such activities are incidental to primary use of the unit as a residence by members of the family.
15. The family must not sublease or let the unit.
16. The family must not assign the lease or transfer the unit.
17. The family must supply any information or certification requested by the OHA to verify that the family is living in the unit, or relating to family absence from the unit, including any OHA requested information or certification on the purposes of family absences. The family must cooperate with the OHA for this purpose. The family must promptly notify the OHA of absence from the unit
18. The family must not own or have any interest in the unit.
19. The members of the family must not commit fraud, bribery or any other corrupt or criminal act in connection with the programs.
20. The members of the family may not engage in drug-related criminal activity or violent criminal activity.
21. An assisted family, or members of the family, may not receive Section 8 tenant based assistance while receiving another housing subsidy, for the same unit or for a different unit, under any duplicative (as determined by HUD or in accordance with HUD requirements) federal, State or local housing assistance program.
22. The utilities must be turned on in the Head of household or Spouse's name. The family must pay utility bills and provide and maintain any appliance that the owner is not required to provide under the lease.

Housing Authority Discretion

In deciding whether to terminate assistance because of action or failure to act by members of the family the OHA has discretion to consider all of the circumstances in each case, including the seriousness of the case, the extent of participation or culpability of individual family members, the length of time since the violation occurred and more recent record of compliance, and the effects of termination of assistance on other family members who were not involved in the action or failure to act.

The OHA may impose, as a condition of continued assistance for other family members, a requirement that family members who participated in, or were culpable for the action or failure, will not reside in the unit. The OHA may permit the other members of a family to continue in the program.

Enforcing Family Obligations

Explanations and Terms

The term "Promptly", when used with Family Obligations always means "within ten days". Termination of assistance is always optional except where this Plan or the regulations state otherwise.

HQS Breach: the inspector will determine if an HQS breach, as identified in 24 CFR 982.404(b), the responsibility of the family. Families may be given extensions to cure HQS breaches by the Section 8 Director.

Lease Violations: the following criteria will be used to decide if a serious or repeated violation of the



lease will cause a termination of assistance:

- If the owner terminates tenancy through court action for serious or repeated violation of the lease
- If the owner notifies the family of termination of assistance for serious or repeated lease violations, and the family moves from the unit prior to the completion of court action
- If there are police reports, neighborhood complaints or other third party information, and the OHA has verified the information

Notification of Eviction: if the family requests issuance of a Voucher to move, and the family did not notify the OHA of an eviction within ten days of receiving the Notice of Lease Termination, the move Voucher request will be denied.

Proposed additions to the family will be denied if such additional family members are:

- Persons who have been evicted from public housing
- Persons who have previously violated a family obligation listed in 24 CFR 982.551 or the HUD regulations
- Persons who have been part of a family whose assistance has been terminated under the Certificate or Voucher program
- Persons who commit drug-related criminal activity or violent criminal activity
- Persons who do not meet the OHA's definition of family
- Persons who commit fraud, bribery or any other corrupt or criminal act in connection with any federal housing program
- Persons who have engaged in, or threatened, abusive or violent behavior toward OHA personnel

Family Member moves out: families are required to notify the OHA if any family member leaves the assisted household. The notification must provide the following information:

- The date the family member moved out.
- The new address, if known, of the family member.
- A statement as to whether the family member is temporarily or permanently absent

Drug Related and Violent Criminal Activity

*Drug-related criminal activity* is the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute or use a controlled substance.

Drug-related criminal activity means on or off the premises not just on or near the premises.

**Violent criminal activity** includes any criminal activity that has as one of its elements the use, attempted use, or threatened use of physical force against a person or property, and any family member is engaging in the activity.

**The OHA will waive this requirement** if it is documented/verified that this participant is a victim of domestic violence, dating violence, or stalking. Incidents or threats of abuse will not be construed as serious or repeated violations of lease or other "good causes" for termination of the lease. Criminal activity directly relating to abuse, engaged in by a member of a tenant's household or any guest or other



person under the tenant's control, shall not be cause for termination of assistance, tenancy, or occupancy rights if the participant or an immediate member of the participant's family is a victim or threatened victim of that abuse.

Ineligibility if Evicted for Drug-Related Activity

Persons evicted from public housing, Indian housing, Section 23, or any Section 8 program because of drug-related criminal activity are ineligible for admission to public housing for a three-year period beginning on the date of such eviction.

The OHA will waive this requirement if:

- The person demonstrates successful completion of a rehabilitation program approved by the OHA, or

- The circumstances leading to the eviction no longer exist For example, the individual Involved in drugs is no longer in the household became the person is incarcerated

Applicants will be denied assistance if they have been:

- Arrested, convicted or evicted from a unit due to violent criminal activity within the last three years prior to the date of the certification interview.

Participants may be terminated who have been:

1) Arrested, convicted or evicted from a unit due to drug-related or violent criminal activity within the last 3 years prior to the date of the notice to terminate assistance, and whom activities have created a disturbance in the building or neighborhood.
2) Criminal background checks will be conducted each year during annual re-certification.

If the family violates the lease for drug-related or violent criminal activity, the OHA will terminate assistance.

In appropriate cases, the OHA may permit the family to continue receiving assistance provided that family members, determined to have engaged in the proscribed activities, will not reside in the unit. If the violating member is a minor, the OHA may consider individual circumstances with the advice of Juvenile Court officials.

**Required Evidence**

Preponderance of evidence is defined as evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it that is, evidence which as a whole shows that the fact sought to be proved is more probable than not. The intent is not to prove criminal liability, but to establish that the act(s) occurred.

Preponderance of evidence may not be determined by the number of witnesses, but by the greater weight of all evidence.

Credible evidence may be obtained from police and/or court records. Testimony from neighbors, when combined with other factual evidence can be considered credible evidence. Other credible evidence



includes documentation of drug raids or arrest warrants.

The OHA will pursue fact-finding efforts as needed to obtain credible evidence.

Notice of Termination of Assistance

In any case, where the OHA decides to terminate assistance to the family the OHA must give the family written notice, which states:

- The reason(s) for the proposed termination
- The effective date of the proposed termination
- The family's right, if they disagree, to request an Informal Hearing to be held before termination of assistance
- The date by which a request for an informal hearing must be received by the OHA

The OHA will simultaneously provide written notice of the contract termination to the owner so that it will coincide with the Termination of assistance. The Notice to the owner will not include any details regarding the reason for termination of assistance.

**C. Procedures for Non-Citizens**

Termination due to Ineligible Immigrant Status

Assistance may not be terminated while verification of the participant family's eligible immigration status is pending. Participant families in which all members are neither U.S. citizens nor eligible immigrants must have their assistance terminated. They must be given an opportunity for a hearing.

Temporary Deferral of Termination of Assistance

Ineligible families who were participants as of June 19, 1995 may request a temporary deferral of termination of assistance in order to allow time to locate affordable housing and thereby preserve the family.

Temporary deferral of termination of assistance is also available to mixed families who were participants on June 19, 1995 who elect not to accept prorated assistance, and are not eligible for Continued Assistance. (See Chapter 14, "Contract Terminations".) The OHA must allow the mixed family time to find housing for ineligible members or for the entire family by defining the termination.

Mixed families who choose temporary deferral of termination of assistance may change to prorated assistance at the end of any deferral period, if they have made a good faith effort to locate housing.

Criteria for Approving Temporary Deferral of Termination of Assistance

The OHA will grant temporary deferral so long as the family makes reasonable efforts to find affordable housing.

Affordable housing is defined as housing that is based on HQS standards, of appropriate size based on HQS, and for which the rent plus utilities is no more than 25% greater than the OHA calculated Total Tenant Payment.



To determine whether a family is eligible for temporary deferral of termination of assistance, or for a renewal of temporary deferral of termination of assistance the OHA will:

Require a search record to document the family's efforts to locate housing before granting or extending temporary deferral of termination of assistance.

Length of Deferral

The initial temporary deferral is granted for an interval not to exceed six months. Additional deferrals can be made up to a maximum of three years. A notice is sent to the family at the beginning of each deferral period reminding them of their ineligibility for full assistance and their responsibility to seek other housing.

The family will be notified, in writing, 60 days before the end of the three year maximum deferral period that there cannot be another deferral, and will be offered the option of prorated assistance if they are a mixed family and have made a good faith effort to locate affordable housing.

False or Incomplete Information

When the OHA has clear, concrete, or substantial documentation (such as a permanent resident card or information form another agency) that contradicts the declaration of citizenship made by an applicant or participant, an investigation will be conducted and the individual given an opportunity to present relevant information.

If the individual is unable to verify their citizenship, the OHA may give him/her an opportunity to provide a new declaration as an eligible immigrant or to elect not to contend their status. The OHA will then verify eligible status, deny, terminate, or prorate as applicable.

The OHA will deny or terminate assistance based on the submission of false information or misrepresentations.

Procedure for Termination

If the family (or any member) claimed eligible immigrant status and the INS primary and secondary verifications failed to document the status, the family may make an appeal to the INS and request a hearing with the OHA either after the INS appeal or in lieu of the INS appeal.

After the OHA has made a determination of ineligibility, the family will be notified of the determination and the reasons and informed of the option for prorated assistance (if applicable) or, for participants who qualify, for Temporary Deferral of Termination of Assistance.

**D. Option not to Terminate for Misrepresentation**

If the family has misrepresented any facts that caused the OHA to overpay assistance the OHA may choose not to terminate and may offer to continue assistance provided that the family executes a Repayment agreement and makes payments in accordance with the agreement or reimburses the OHA in full.

**E. Misrepresentation in Collusion with Owner**



If the family willingly and knowingly commits fraud or is involved in any other illegal scheme with the owner, the OHA will deny or terminate assistance.

In making this determination the OHA will carefully consider the possibility of overt or implied intimidation of the family by the owner and the family's understanding of the events.

**F. Missed Appointments and Deadlines**

It is a Family Obligation to supply information, documentation, and certification as needed for the OHA to fulfill its responsibilities. The OHA schedules appointments and sets deadlines in order to obtain the required information. The Obligations also require that the family allow the OHA to inspect the unit and appointments are made for this purpose.

An applicant or participant who fails to keep an appointment, or to supply information required by a deadline without notifying the OHA may be sent a Notice of Denial or Termination of Assistance for failure to provide required information, or for failure to allow the OHA to inspect the unit.

Appointments will be scheduled and time requirements will be imposed for the following events and circumstances:

1. Eligibility for Admissions
2. Verification Procedures
3. Voucher Issuance and Briefings
4. Housing Quality Standards and Inspections
5. Re-certifications
6. Appeals

Procedure when Appointments are Missed or Information not Provided

For most purposes of this Plan, the family will be given one opportunity before being issued a notice of termination or denial for breach of a family obligation.



## Chapter 16

## OWNER DISAPPROVAL AND RESTRICTIONS

It is the policy of the OHA to recruit owners to participate in the program, and to provide owners with prompt and professional service in order to maintain and adequate supply of available housing throughout the jurisdiction of the OHA. The regulations define when the OHA must disallow an owner participation in the program, and they provide the OHA discretion to disapprove, or otherwise restrict the participation of owners in certain categories. This Chapter describes the criteria for owner disapproval, and the various penalties for owner violations.

### A. Disapproval of Owner

The owner does not have a right to participate in the program. For purposes of this section, "owner" includes a principal or other interested party.

OHA must disapprove an owner for the following reasons:

- If OHA has been informed by (HUD or otherwise) that the owner has been disbarred, suspended or subject to a limited denial of participation under 24 CFR part 24
- HUD has informed the OHA that the federal government has instituted an administrative or judicial action against the owner for violation of the Fair Housing Act or other federal equal opportunity requirements and such action is pending
- HUD has informed the OHA that a court or administrative agency has determined that the owner has violated the Fair Housing Act or other federal equal opportunity requirements

Pursuant to the authority set forth in 24 CFR 982.306 (c) OHA will deny approval of an assisted tenancy if:

- The Owner has violated obligations under a housing assistance payments contract under Section 8 of the 1937 Act
- The owner has committed fraud, bribery or any other corrupt act in connection with any federal housing program
- The owner has engaged in drug trafficking
- The owner has a history or practice of non-compliance with the HQS f6r units leased under the tenant-based programs or with applicable housing standards for units leased with project-based Section 8 assistance or leased under any other federal housing program
- , The owner has not paid State or local real estate taxes, fines or assessments

### B.Owner Restrictions and Penalties

If an owner commits fraud or abuse or is guilty of frequent or serious contract violations, the OHA will restrict the owner from future participation in the program for a period of time commensurate with the seriousness of the offense. The OHA may also terminate some or all contracts with the owner.



Before imposing any penalty against an owner, the OHA will review all relevant factors pertaining to the case, and will consider such factors as the owner's record of compliance and the number of violations.

The OHA guidelines for restrictions are contained in the table below:

DISAPPROVAL OF OWNERS/PARTICIPATION RESTRICTIONS

| BREACH | PENALTY |
| --- | --- |
| HUD notification of owner debarment/suspension | Termination |
| HUD notification of violation of fair housing/federal equal opportunity | Termination |
| Violation of contract obligations | Termination |
| Owner fraud, bribery or other corrupt act in federal housing program | Termination |
| Owner engaged in drug trafficking | Termination |
| History of noncompliance with HQS | Termination |

**C. Other Remedies for Owner Violations**

If the landlord has been overpaid as a result of fraud, misrepresentation or violation of the Contract; the OHA may terminate the Contract and arrange for restitution to the OHA and/or family as appropriate.

The OHA will make every effort to recover any overpayments made as a result of landlord fraud or abuse. Payments otherwise due to the owner may be debited in order to repay the OHA or the tenant, as applicable.



## Chapter 17

**Reserved**



## Chapter 18

## OWNER OR FAMILY DEBTS TO THE OHA

This Chapter describes the OHA's policies for the recovery of monies, which have been overpaid for families, and to owners. It describes the methods that will be utilized for collection of monies and the guidelines for different types of debts. It is the OHA's policy to meet the informational needs of owner and families, and to communicate the program rules in order to avoid owner and family debts. Before a debt is assessed against a family, or owner, the file must contain documentation to support the OHA's claim that the debt is owed. The file must further contain written documentation of the method of calculation, in a clear format for review by the owner, the family or other interested parties.

When families or owners owe money to the OHA, the OHA will make every effort to collect it. The OHA will use a variety of collection tools to recover debts including, but not limited to:

- Requests for lump sum payments
- Civil suits
- Repayment agreements
- Abatements
- Reductions
- Collection agencies
- Credit bureaus

### A. Repayment Agreement for Families

A Repayment Agreement, as used in this Plan, is a document entered into between the OHA and a person who owes a debt to the OHA. It is similar to a promissory note, but contains more details regarding the nature of the debt, the turns of repayment, any special provisions of the agreement and the remedies available to the OHA upon default of the agreement.

The maximum amount for which the OHA will enter into a repayment agreement with a family is $1,000.00.

The maximum length of time the OHA will enter into a repayment agreement with a family is 12 months.

Late Payments

A payment will be considered to be in arrears if the:

- Payment has not been received by the close of the business day on which the payment was due
- Due date is on a weekend or holiday the due date will be at the close of the next business day

If the family's repayment agreement is in arrears the OHA will:

Require the family to pay the balance in full, or pursue civil collection of the balance due and terminate the housing assistance.

If the family requests a move to another unit and has a repayment agreement in place for the payment of an owner claim, and the repayment agreement is not in arrears:



The family will be required to pay the balance in full prior to the issuance of a voucher.

If the family requests a move to another unit and is in arrears on a repayment agreement for the payment of an owner claim:

If the family repays the past due amount, they will be permitted to move. There are some circumstances in which the OHA will not enter into a repayment agreement. They are:

- If the family already has a Repayment Agreement in place
- If the OHA determines that the family committed program fraud

Guidelines far Repayment Agreements

Repayment Agreements will be executed between the OHA and the head of household only.

Monthly payments may be decreased in cases of hardship with the prior notice of the family, verification of the hardship and the approval of the Section 8 Director.

No move will be approved until the debt is paid in full unless the move is the result of the following causes, and the Repayment Agreement is current

- Family size exceeds the HQS maximum occupancy standards
- The HAP contract is terminated due to owner non-compliance or opt-out
- A natural disaster

Additional Monies Owed: If the family has a Repayment Agreement in place and incurs an additional debt to the OHA:

- The OHA will not enter into more than one Repayment Agreement at time with the same family
- Additional amounts owed by the family will be added to the existing repayment agreement
- If a Payment Agreement is in arrears more than 30 days any new debts must be paid in full

**B. Debts Owed for Claims**

If a family owes money to the OHA for claims paid to an owner the OHA will enter into a Repayment Agreement

**C. Debts Due to Fraud/Non-Reporting of Information**

HUD's definition of program fraud and abuse is a single act or pattern of actions that:

Constitutes false statement, omission, or concealment of a substantive fact, made with intent to deceive or mislead, and that results in payment of Section 8 program funds in violation of Section 8 program requirements.

Family Error/Late Reporting

Families who owe money to the OHA due to the family's failure to report increases in income will be required to repay in accordance with the guidelines in the Repayment Section of this Chapter.



**Program Fraud**

Families who owe money to the OHA due to program fraud will be required to repay in accordance with the guidelines in the Repayment Section of this Chapter.

If a family owes an amount that equals or exceeds $5,000.00 as a result of program fraud, the case will be referred to the Inspector General. Where appropriate, the OHA will refer the case for criminal prosecution.

Repayment Procedures for Program Fraud

Families who commit program fraud or untimely reporting of increases in income will be subject to the following procedures:

- The maximum time period for a Repayment Agreement will be 12 months
- The family will be required to pre-pay 25% of the amount owed prior to, or upon, execution of the Repayment Agreement

**D. Owner Debts to The OHA**

If the OHA determines that the owner has retained Housing Assistance or Claim Payments the owner is not entitled to the OHA may reclaim the amounts from future Housing Assistance or Claim Payments owed the owner for any units under contract.

If future Housing Assistance or Claim Payments were insufficient to reclaim the amounts owed, the OHA will:

- Require the owner to pay the amount in full within 30 days, or
- Pursue collections through the local court system, and
- Restrict the owner from future participation



## Chapter 19

## COMPLAINTS AND APPEALS

The informal hearing requirements defined in HUD regulations are applicable to participating families who disagree with an action, decision, or inaction of the OHA. This Chapter describes the policies, procedures and standards to be used when families disagree with a OHA decision. The procedures and requirements are explained for preference denial meetings, informal reviews and hearings. It is the policy of the OHA to ensure that all families have the benefit of all protections due to than under the law.

### A. Complaints to the OHA

The OHA will respond promptly to complaints from families, owners, employees, and members of the public. All complaints will be documented. The OHA does require that complaints other than HQS violations be put in writing. HQS complaints may be reported by telephone.

Categories of Complaints

1. Complaints from families: If a family disagrees with an action or inaction of the OHA they will be referred to the Section 8 Director.
2. Complaints from owners: If an owner disagrees with an action or inaction of the OHA they will be referred to the Section 8 Director.
3. Complaints from staff:   If a staff person reports a family either violating or not complying with program rules it will be referred to the Section 8 Director.
4. Complaints from the general public: Complaints or referrals from persons in the community in regard to the OHA or a tenant family will be referred to the Section 8 Director.

### B. Informal Review Procedures for Applicants

Reviews are provided for applicants who are denied assistance before the effective date of the HAP Contract. The exception is that when an applicant is denied assistance for citizen or eligible immigrant status the applicant is entitled to an informal hearing.

When the OHA determines that an applicant is ineligible for the program the family must be notified of their ineligibility in writing. The notice must contain:

- The reasons(s) they are ineligible
- The procedure for requesting a review if the applicant does not agree with the decision and
- The time limit for requesting a review

The OHA must provide applicants with the opportunity for an Informal Review of decisions denying:

- Qualification for preference
- Listing on the OHA's waiting list
- Issuance of a Voucher
- Participation in the program

Informal Reviews are not required for established policies and procedures and OHA determinations such as:



1. Discretionary administrative determinations by the OHA
2. General policy issues or class grievances
3. A determination of the family unit size under the OHA subsidy standards
4. Refusal to extend or suspend a Voucher
5. Disapproval of lease
6. Determination that unit is not in compliance with HQS
7. Determination that unit is not in accordance with HQS due to family size or composition.

Procedure for Review

A request for an Informal Review must be received in writing by the close of the business day, no later than fifteen (15) days from the date of the OHA's notification of denial of assistance. Participants with disabilities will have thirty (30) days to request an informal review. The informal review will be scheduled within ten days from the date the request is received.

The Informal Review may not be conducted by the person who made or approved the decision under review, nor a subordinate of such person.

The Review will be conducted by:

The Section 8 Director or Assistant to the Director. In the event that the Director or Assistant to the Director is unable to conduct the review, it will be conducted by another appropriate senior staff person who has no involvement in or responsibility for making or approving the decision.

The applicant will be given the option of presenting oral or written objections to the decision. Both the OHA and the family may present evidence and witnesses. The family may use an attorney or other representative to assist than at their own expense.

A Notice of the review findings will be provided in writing to the applicant within ten days after the review. It shall include the decision of the review officer and an explanation of the reasons for the decision.

All requests for a review, supporting documentation and a copy of the final decision will be retained in the family's file.

**C. Informal Hearing Procedures**

The OHA will provide a copy of the hearing procedures in the family briefing packet.

When the OHA Hearing Officer received a request for an informal hearing, a hearing shall be scheduled with in twenty (20) days.

When the OHA makes a decision regarding the eligibility and/or the amount of assistance applicants and participants must be notified in writing. The OHA will give the family prompt notice of such determinations, which will include:

- The proposed action or decision of the OHA
- The date the proposed action or decision will take place
- The family's tight to an explanation of the basis for the OHA's decision
- The procedures for requesting a hearing if the family disputes the action or decision



- The time limit for requesting the hearing

The OHA must provide participants with the opportunity for an Informal Hearing for decisions related to any of the following OHA determinations:

1. Determination of the family's annual or adjusted income and the computation of the housing assistance payment.
2. Appropriate utility allowance used from schedule.
3. Family unit size determination under OHA subsidy standards.
4. Determination that Certificate program family is under occupied in their current unit and a request for exception is denied.
5. Determination to terminate assistance for any reason.
6. Determinations to terminate a family's FSS Contract, withhold supportive services, or propose forfeiture of the family's escrow account.

The OHA must always provide the opportunity for an informal hearing before termination of assistance.

Informal hearings are not required for established policies and procedures and OHA determinations such as:

1. Discretionary administrative determinations by the OHA.
2. General policy issues or class grievances.
3. Establishment of the OHA schedule of utility allowances for families in the program.
4. An OHA determination not to approve an extension or suspension of a certificate or voucher term.
5. An OHA determination not to approve a unit or lease.
6. An OHA determination that an assisted unit is not in compliance with HQS (OHA must provide hearing for family breach of HQS because that is a family obligation determination).
7. An OHA determination that the unit is not in accordance with HQS because of the family size.
8. An OHA determination to exercise or not exercise any right or remedy against the owner under a HAP contract.

Notification of Hearing

It is the OHA's objective to resolve disputes at the lowest level possible, and to make every effort to avoid the most severe remedies. However, if this is not possible, the OHA will ensure that applicants and participants will receive all of the protections and rights afforded by the law and the regulations.

When the OHA receives a request for an informal hearing, a hearing shall be scheduled within twenty days. The notification of hearing will contain:

1. The date and time of the hearing
2. The location where the hearing will be held
3. The family's tight to bring evidence, witnesses, legal or other representation at the family's expense
4. The right to view any documents or evidence in the possession of the OHA upon which the OHA based the proposed action and, at the family's expense, to obtain a copy of such documents prior to the hearing.



The OHA's Hearing Procedures

If a family does not appear at a scheduled hearing and has not rescheduled the hearing, in advance, the family must contact the OHA within 24 hours, excluding weekends and holidays. The OHA will reschedule the hearing only if the family can show good cause for the failure to appear.

Families have the right to:

- Present written or oral objections to the OHA's determination
- Examine the documents in the file which are the basis for the OHA's action and all documents submitted to the Hearing Officer
- Copy any relevant documents at their expense
- Present any information or witnesses pertinent to the issue of the hearing
- Request that OHA staff be available or present at the hearing to answer questions pertinent to the case; and
- Be represented by legal counsel, advocate, or other designated representative at his or her own expense

If the family makes a written request to copy documents relevant to the hearing the OHA will allow the family to make the copies and assess a charge of .20c per copy. In no case will the family be allowed to remove the file from the OHA's office.

In addition to other rights contained in this Chapter, the OHA has a right to:

- Present evidence and any information pertinent to the issue of the hearing
- Be notified if the family intends to be represented by legal counsel, advocate or another party
- Examine and copy any documents to be used by the family prior to the hearing
- Have its attorney present; and
- Have staff persons and other witnesses familiar with the case present

The Informal Hearing shall be conducted by the Hearing Officer appointed by the OHA who is neither the person who made or approved the decision, nor a subordinate of that person. The OHA appoints hearing officers who are OHA management.

The hearing shall concern only the issues for which the family has received the opportunity for a hearing. Evidence presented at the hearing may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings.

No documents may be presented which have not been provided to the other party before the hearing if requested by the other party. "Documents" include records and regulations.

The family must request an audio recording of the hearing, if desired, 24 hours prior to the hearing date.

The Hearing Officer may ask the family for additional information and/or might adjourn the hearing in order to reconvene at a later date, before reaching a decision.

Additional documents and/or evidence will not be considered after the Hearing Officer has issued a written decision.

If the family misses an appointment or deadline ordered by the Hearing Officer, the action of the OHA

