**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CAROLINE VEGA,**

                   **Plaintiff,**

**v.**                                         **Case No:   6:14-cv-1700-Orl-22GJK**

**ORLANDO HOUSING AUTHORITY**
**and VIVIAN BRYANT,**

                   **Defendants.**

_____

**REPORT AND RECOMMENDATION**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND LITIGATION COSTS (Doc. No. 29)** |
| **FILED:** | **February 5, 2015** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

**I.**    **BACKGROUND.**

On October 20, 2014, Plaintiff filed a complaint (the "Complaint") and Motion for Preliminary Injunction (the "Preliminary Injunction Motion") against the Orlando Housing Authority ("OHA") and Vivian Bryant (collectively, the "Defendants"), the president of OHA. Doc. Nos. 1-2.   In the Complaint, pursuant to 42 U.S.C. § 1983, Plaintiff alleges the Defendants violated Plaintiff's due process rights under Fourteenth Amendment to the United States

Constitution by unlawfully terminating Plaintiff's Section 8 Housing Choice Benefits without notice or the opportunity for a hearing.   Doc. No. 1 at 10-11.

The Complaint is twelve (12) pages in length and raises a single, straightforward claim for violation of due process rights.   Doc. No. 1 at 1-12.   Plaintiff alleges that she received Section 8 housing assistance for approximately 10 years from OHA, when she requested a transfer of her benefits from Defendant in order to move from Orange County, Florida to Seminole County, Florida.   Doc. No. 1 at ¶¶ 2, 25.   Plaintiff contends that OHA informed her by telephone that she was not entitled to a transfer voucher because Plaintiff's daughter had received a citation for a criminal charge, but Plaintiff could request a hearing about the decision.   Doc. No. 1 at ¶ 26.   On March 31, 2014, Plaintiff alleges that she received a final termination notice, due to Plaintiff's daughter's criminal citation, informing Plaintiff that her Section 8 rental subsidy was terminated effective April 30, 2014.   Doc. No. 1 at ¶ 27.   Plaintiff alleges that she was never offered and OHA expressly denied Plaintiff's written requests for a formal and/or informal hearing to contest and/or appeal OHA's decision to terminate Plaintiff's Section 8 housing benefits.   Doc. No. 1 at ¶ 28-31.   As a result of Defendants' decision to terminate Plaintiff's housing assistance, Plaintiff alleges that she and her family became homeless.   Doc. No. 1 at ¶ 32.

In the Preliminary Injunction Motion, Plaintiff sought an injunction: directing the Defendants to immediately reinstate Plaintiff's housing benefits; directing the Defendants to conduct a timely review process; and prohibiting the Defendants from terminating Plaintiff's housing benefits.   Doc. No. 2.   The Preliminary Injunction Motion is fifteen (15) pages in length, the first five (5) pages of which generally restate the factual allegations in the Complaint. *Compare* Doc. No. 1 *with* Doc. No. 2 at 1-5.   The memorandum of legal authority in support of the Preliminary Injunction Motion is nine (9) pages in length.   Doc. No. 2 at 7-15.   In it, Plaintiff

sets forth the necessary elements Plaintiff must establish to show entitlement to a preliminary injunction, *i.e.*, (1) a substantial likelihood of success on the merits; (2) irreparable injury; (3) the threatened injury outweighs any damage the proposed injunction might cause the non-moving party; and (4) the injunction would not be adverse to the public interest.   Doc. No. 2 at 7 (citing authority).

With respect to substantial likelihood of success, Plaintiff explains the three elements: "(a) deprivation of a constitutionally protected liberty or property interest; (b) state action; and (c) constitutionally inadequate process."   Doc. No. 2 at 7 (citing *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).   Plaintiff primarily relies on six (6) cases, Plaintiff's affidavit (Doc. No. 2-1), and OHA's March 31, 2014 letter (Doc. No. 2-2) for the basic principle that Plaintiff had a constitutionally protected property interest in her Section 8 housing assistance, OHA is a state actor, and Plaintiff had a right to due process, *i.e.*, a hearing, before her housing assistance could be terminated.   Doc. No. 2 at 7-10 (citing *Grayden*, 345 F.3d at 1232; *Basco v. Machin*, 514 F.3d 1177, 1182 (11th Cir. 2008); *Johnson v. Fort Walton Beach Hous. Auth.*, 2012 WL 10688344, at *4 (N.D. Fla. Jan. 5, 2012); *Thomas v. Hernando Cnty. Hous. Auth.*, No. 8:07-cv-1902-T-33EAJ, 2008 WL 4844761, at *7 (M.D. Fla. Nov. 6, 2008); *Goldberg v. Kelly*, 397 U.S. 254, 266-67 (1970); *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)).   With respect to the irreparable injury element, Plaintiff relies on her affidavit (Doc. No. 2-1) that she and her family are currently homeless without housing assistance and case law finding that the loss of housing assistance, which may result in homelessness, is an irreparable harm.   Doc. No. 2 at 10-11 (citing *Roundtree v. U.S. Dep't of Hous. & Urban Dev.*, No. 5:09-cv-234-Oc-10GRJ, 2009 WL 7414663, at *7 (M.D. Fla. Aug. 28, 2009); *Basham v. Freda*, 805 F. Supp. 930, 932 (M.D. Fla. 1992) *aff'd*, 985 F.2d 579 (11th Cir. 1993)).   Plaintiff argues that Defendants will suffer no or *de minimis* harm if an

injunction is issued.   Doc. No. 2 at 11-12.   Finally, relying upon case law, Plaintiff argues that the public interest is served by insuring the correct administration of housing assistance programs. Doc. No. 2 at 13-14 (citing *Basham*, 805 F. Supp. at 932; *Johnson v. U.S. Dep't of Agric.*, 734 F.2d 774, 788 (11th Cir. 1984)).   The balance of Preliminary Injunction Motion argues that the Court should waive the requirement in Rule 65(c), Federal Rules of Civil Procedure, that the Plaintiff post a bond.   Doc. No. 2 at 14-15.

On November 21, 2014, Defendants filed a response to the Preliminary Injunction Motion, arguing that the motion should be denied because the parties had entered into a written settlement agreement, which resolves the sole count in the Complaint.   Doc. No. 23 at 1-4.   Defendants state that they agreed to immediately reinstate Plaintiff's housing assistance without an administrative hearing, Plaintiff would be allowed to transfer her housing assistance benefit if she wished to move, and Defendants would promptly process the necessary paperwork.   Doc. No. 23 at 2.   On that same day, prior to the Court ruling on the Preliminary Injunction Motion, the parties filed Joint Motion for Ratification, Approval and Adoption of the Parties' Partial Settlement Agreement (the "Joint Motion").   Doc. No. 21.   In it, the parties assert that their settlement agreement resolves the merits of Plaintiff's claims, including the Preliminary Injunction Motion, and that they agree the Plaintiff is the prevailing party for the purposes of determining the amount of reasonable attorneys' fees and costs.   Doc. Nos. 21, 21-1 at 2-6.[1]   Pursuant to the settlement agreement, Defendants also agreed to immediately reinstate Plaintiff's Section 8 Housing Choice Voucher Program assistance without a hearing and to pay Plaintiff damages in the amount of $1,000.00. Doc. No. 21-1 at 3-4.   Based upon the Joint Motion, the Court entered an order denying the Preliminary Injunction Motion (Doc. No. 2) as moot, administratively closing the case, and

---

[1] The terms of the settlement agreement are set forth in twelve (12) numbered paragraphs that span slightly more than two (2) pages.   Doc. No. 21-1 at 3-6.

reserving jurisdiction to resolve the amount of attorneys' fees and costs to be awarded to Plaintiff as the prevailing party.   Doc. No. 24.

## II.   THE MOTION.

On February 5, 2015, Plaintiff filed a Motion for Attorneys' Fees and Litigation Costs (the "Motion").   Doc. No. 29.   The amounts claimed in the Motion are summarized in the table below:

| Attorney | Hours Expended | Hourly Rate | Fees and Costs |
|---|---|---|---|
| Andrea Costello | 118.0 | $400.00 | $47,200.00 |
| Natalie N. Maxwell | 21.0 | $300.00 | $6,300.00 |
| Caroline Ware | 22.1 | $250.00 | $5,525.00 |
| Total | **161.1** | | $59,025.00 |
| | | | |
| Costs – Filing Fee | | | $400.00 |
| Total | | | $59,425.00 |
| Estimate of Additional Attorneys' Fees after February 4, 2015 | | | $1,295.00 |
| **TOTAL** | | | **$60,720.00** |

Doc. No. 29 at 2-3.[2]   Thus, Plaintiff requests a total award of $60,720.00 in attorneys' fees and costs.   *Id.*   In support of the Motion, Plaintiff attaches: affidavits, resumes, and times sheets from Plaintiff's counsel; and the declarations of two fee experts, Albert F. Tellechea, Esq. and Peter P. Sleasman, Esq.   Doc. Nos. 29-2 – 29-14.[3]

---

[2] The Motion was filed on February 5, 2015.   Doc. No. 29.   Counsel's time sheets include time spent preparing and drafting the Motion.   *See* Doc. Nos. 29-14 at 14-15; 29-8 at 4-5; 29-11 at 8-9.   Other than the administrative function of filing the Motion, it is unclear what, if any, additional work counsel anticipates in order to arrive at an estimated additional $1,295.00 in attorneys' fees.

[3] In his declaration, Mr. Tellechea avers that the hourly rates requested by Plaintiff's counsel "are within the rates charged to paying clients in the Middle District of Florida for similar lawyers in similar complex litigation given the talent involved."   Doc. No. 29-12 at ¶ 14.   In his declaration, Mr. Sleasman opines that the total number of hours expended in drafting the Complaint, the Preliminary Injunction Motion, and in negotiating the settlement agreement are reasonable.   Doc. No. 29-13 at ¶¶ 14, 17.

## III.     THE RESPONSE.

On February 19, 2015, Defendants filed a Response In Opposition to the Motion (the "Response").   Doc. No. 30.   In it, Defendants acknowledge that Plaintiff is the prevailing party and entitled to reasonable attorneys' fees and costs.   Doc. No. 30 at 2.   Defendants also agree that Plaintiff is entitled to an award of $400.00 in costs under 28 U.S.C. § 1920(1).   Doc. No. 30 at 2 n.2.   Defendants maintain that "this case presented straightforward legal issues that were not novel, particularly difficult, or required an unusually high degree of skill and that this case was not undesirable for Plaintiff's counsel."   Doc. No. 30 at 4.   Defendants argue that the reasonable hourly rates for Plaintiff's counsel should be as follows:

| | |
|---|---|
| Andrea Costello, Esq. | $175 to $225 per hour |
| Natalie Maxwell, Esq. | $175 to $225 per hour |
| Caroline Ware, Esq. | $150 to $190 per hour |

Doc. No. 30 at 6-7.   In support of these hourly rates, Defendants rely primarily on the affidavit of their fee expert, Robert E. Bonner, Esq. (Doc. No. 30-1 at 1-7), *Grayden v. City of Orlando*, No. 6:00-cv-888-Orl-22DAB, Doc. No. 293 at 19 (M.D. Fla. Mar. 22, 2005), adopted at Doc. No. 31 (M.D. Fla. May 22, 2005), wherein Ms. Costello was awarded $150.00 per hour for similar work in this market, and *Lake Worth Global Justice, Inc. v. City of Miami*, No. 1:04-cv-20262-DLJ (S.D. Fla. Apr. 28, 2006), wherein Ms. Costello was awarded $225.00 per hour for work in the Miami market.   Doc. Nos. 30 at 6-7; 30-3; 30-4; 30-7.

With respect to the number of hours requested, Defendants maintain that number of hours sought are unreasonably high and contain duplication of effort between Plaintiff's counsel.   Doc. No. 30 at 7-11.   For example, Defendants assert that Ms. Costello expended approximately 84.7

hours drafting the Complaint and Preliminary Injunction Motion, and all of Ms. Ware's work appears to be duplicative of the work performed by Ms. Costello and Ms. Maxwell.   Doc. No. 30 at 10-11.   Thus, Defendants argue that the Court should base its award of attorneys' fees on a total of 25 to 35 hours of work.   Doc. No. 30 at 11.   Accordingly, Defendants maintain that the Court should award Plaintiff a total amount of attorneys' fees between $3,750.00 and $7,875.00.   Doc. No. 30 at 11.

IV.   **ANALYSIS.**

It is undisputed that Plaintiff is entitled to an award of reasonable attorneys' fees as the prevailing party in this case.   In the Eleventh Circuit, reasonableness is generally determined using the familiar lodestar approach.   "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate."   *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   The party moving for fees has the burden of establishing that the hourly rate and hours expended are reasonable.   *See Norman v. Housing Auth. of the City Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).   In making such determinations, the Court is an expert on the issues of the prevailing market's reasonable hourly rates for similar work and hours expended. *Norman*, 836 F.2d at 1303; *Loranger v. Stierheim*, 10 F.3d 776, 782 (11th Cir. 1994).

**A.  Reasonable Hourly Rates.**

To meet the burden of establishing the reasonableness of the hourly rate(s) requested, the moving party must produce "satisfactory evidence" that the hourly rate being requested is in line with "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation."   *Norman*, 836 F.2d at 1299.   At a minimum, this will require "more than the affidavit of the attorney performing the work."   *Id.*   In

this case, Plaintiff requests that the Court award her counsel the following reasonable hourly rates: Ms. Costello - $400.00 per hour; Ms. Maxwell - $300.00 per hour; and Ms. Ware - $250.00 per hour.  *See supra* p. 5.

The undersigned finds that the hourly rates requested are unreasonably high and not in line with the prevailing market rate in Orlando for similar serves by lawyers of similar skills, experience and reputation.   First, this case was not complex, but a straightforward procedural due process case under 42 U.S.C. § 1983.  *See Basco v. Machin*, 514 F.3d 1177, 1180-81 (11th Cir. 2008) (Section 8 housing recipients have right to termination hearing prior to having housing benefits terminated).   Thus, while the undersigned agrees with Mr. Tellechea's affidavit to the extent that the hourly rates requested are within the ranges charged by paying clients for complex litigation, this is not such a case.  *See* Doc. No. 29-12 at ¶ 14.

Second, Ms. Costello, Plaintiff's lead attorney, was previously awarded a reasonable hourly rate of $150.00 for similar work in this market.  *See* Doc. Nos. 30-3 at 19; 30-4 at 1-2 (attaching *Graysen*, No. 6:00-cv-888-Orl-22DAB, Doc. No. 293 at 18-19 (M.D. Fla. Mar. 22, 2005)).   Thus, while Ms. Costello has 16 years of experience handling civil rights cases (Doc. No. 29-2 at 4), the undersigned finds that $400.00 per hour is out of line for similar work within Orlando market.   The undersigned recognizes that *Graysen* was decided approximately ten (10) years ago.   Therefore, an award of $150.00 per hour for Ms. Costello would also be inappropriate.[4]   Similarly, while Ms. Maxwell has been practicing public interest civil rights litigation for 10 years and Ms. Ware has been a practicing attorney for 8 years, the undersigned

---

[4] In *Lake Worth Global Justice, Inc.*, No. 1:04-cv-20262-DLJ (S.D. Fla. Apr. 28, 2006), Ms. Costello was awarded $225.00 per hour nine (9) years ago in the Miami, Florida market.  *Id.*   However, the Court finds that case to be of little value because Miami market rates are substantially greater to those in the Orlando market.

finds that $300.00 per hour and $250.00 per hour are, respectively, out of line for similar work by lawyers of comparable skill within the Orlando market.   Doc. Nos. 29-6 at 2; 29-9 at 3.

Accordingly, based in part on Mr. Bonner's affidavit (Doc. No. 30-1), the straight-forward due process issue presented in this case, and the undersigned's own knowledge concerning the reasonable hourly rates charged in similar cases by lawyers of comparable skill, it is **RECOMMENDED** that the Court award Plaintiff's counsel the following reasonable hourly rates: Ms. Costello - $250.00; Ms. Maxwell - $200.00; and Ms. Ware - $200.00.

**B.  Reasonable Number of Hours.**

When submitting the hours reasonably expended, the moving party must exercise "billing judgment."  *Hensley*, 461 U.S. at 434.   This requires the moving party to exclude hours that are "redundant, excessive, or otherwise unnecessary."  *Id.*   The court will excise redundant, excessive or unnecessary hours when a party fails to.  *See Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).   In proving reasonable hours, a movant "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so [the court] can assess the time claimed for each activity."  *Norman*, 836 F.2d at 1303.   A party opposing a fee application should also submit objections and proof that are "specific and reasonably precise" concerning those hours that should be excluded.  *Barnes*, 168 F.3d at 428.   A fee opponent's failure to explain with specificity the particular hours he views as unnecessary or duplicative is generally fatal. *Gray v. Lockheed Aeronautical Systems Co.*, 125 F.3d 1387 (11th Cir. 1997).

There are only four substantive matters that occurred in this case: (1) the Complaint; (2) the Preliminary Injunction Motion; (3) the settlement negotiations; and (4) the Motion. Researching, drafting and conferring about the Complaint and the Preliminary Injunction Motion

combine for the bulk of the 161.1 hours billed.   *See* Doc. Nos. 29-4 at 2-15 (Ms. Costello's

timesheet); 29-8 at 2-5 (Ms. Maxwell's timesheet); 29-11 (Ms. Ware's timesheet).   The total

number of hours requested is plainly excessive.   For example, Ms. Costello, who has

approximately 16 years experience in handling civil rights cases, expended approximately 87 hours

preparing, researching, conferring, and drafting the Complaint and Preliminary Injunction Motion.

Doc. No. 29-4 at 2-6.[5]   Similarly, Ms. Maxwell and Ms. Ware each expended approximately 8.1

and 9.1 hours, respectively, researching, conferring, drafting, and reviewing the Compliant and

Preliminary Injunction Motion.   Doc. Nos. 29-8 at 2; 29-11 at 2-5.   Thus, Plaintiff's counsel, who

have a combined 34 years of legal experience, expended approximately 104.2 hours preparing a

straightforward complaint for the violation of well-established due process rights and a supporting

motion for preliminary injunction, which is excessive.

"When a district court finds the numbers of hours claimed is unreasonably high, the court

has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours

with an across-the-board-cut."   *Bivins v. Wrap it Up*, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008)

(emphasis added).   Thus, a Court has the discretion to provide "an across-board cut" in the number

of hours claimed if it concludes that the number of hours claimed is excessive.   *Galdames v. N&D*

*Inv. Corp.*, 432 F. App'x 801, 806 (11th Cir. June 23, 2011) (unpublished) (citing *Bivins*, 548 F.3d

at 1350).   Here, the undersigned has carefully reviewed each billing entry and finds that they are

excessive and largely duplicative with respect to nearly every task performed in this case.   It is

patently unreasonable for an attorney of Ms. Costello's experience to devote so much time in

---

[5] It is difficult to distinguish between time Ms. Costello spent working on the Complaint versus time spent working
on the Preliminary Injunction Motion because a majority of the entries constitute block billing.   Doc. No. 29-4 at 2-
6.   For example, on October 15, 2014, one entry states that Ms. Costello expended 5.1 hours doing the following
tasks: "Continue drafting and editing motion for preliminary injunction and memo and complaint."   *Id.* at 5.
Therefore, it is impossible for the undersigned to determine how much of the 5.1 hours was spent drafting the
Complaint and how much was expended drafting the Preliminary Injunction Motion.

preparing a straightforward complaint and motion for preliminary injunction.   Furthermore, much of the work performed by Ms. Maxwell and Ms. Ware appears redundant of work already performed by Ms. Costello.   Thus, the undersigned finds that an across-the-board-cut in the amount of 75% of the requested number of hours is necessary.   While 75% reduction in the total number of hours is a heavy reduction, it is necessary to make the hours requested reasonable.   For example, applying the reduction to work performed in preparing the Complaint and Preliminary Injunction Motion takes it from the excessively high 104.2 hours to 26.05 hours, which – given the fact it constitutes more than three full workdays – is surely adequate for experienced counsel to prepare a single twelve (12) page complaint and a straightforward motion for preliminary injunction like those filed in this action.[6]   Accordingly, it is **RECOMMENDED** that the Court find that the hours expended are excessive and duplicative, and impose an across-the-board-cut in the total number of hours claimed by 75%.

### C.  Estimated Additional Attorneys' Fees.

In the Motion, Plaintiff's counsel estimate that they will incur an additional $1,295.00 in attorneys' fees after February 4, 2015.   Doc. No. 29 at 3.   Currently, there is no support in the record to award any attorneys' fees beyond February 4, 2015.   Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's request for an award of additional estimated attorneys' fees in the amount of $1,295.00.

---

[6] The undersigned examined whether it would be appropriate to limit the 75% across-the-board reduction to work performed on the Complaint and the Preliminary Injunction Motion.  However, when the undersigned carefully reviewed counsels' time records concerning the settlement discussions and counsels' calculation and demand for attorneys' fees, *i.e.*, work that was performed from October 30, 2014 through November 21, 2014, the undersigned discovered that counsels' time entries during those phases of the case are also excessive and duplicative.  *See* Doc. Nos. 29-4 at 9-12 (Ms. Costello); 29-8 at 3-4 (Ms. Maxwell); 29-11 at 6-8 (Ms. Ware).   Accordingly, the undersigned cannot recommend that the across-the-board cut be limited to any particular segment of work performed in this case.

**D. Costs.**

It is undisputed that Plaintiff is entitled to $400.00 in costs pursuant to 28 U.S.C. § 1920(1). Doc. No. 30 at n.2.   Accordingly, it is **RECOMMENDED** that the Court award Plaintiff $400.00 in costs.

**V.    CONCLUSION.**

The chart below reflects the above-stated recommendations:

| Attorney | Hours Expended (with 75% reduction) | Hourly Rate (as reduced) | Fees and Costs |
|---|---|---|---|
| Andrea Costello | 29.5 | $250.00 | $7,375.00 |
| Natalie N. Maxwell | 5.25 | $200.00 | $1,050.00 |
| Caroline Ware | 5.52 | $200.00 | $1,104.00 |
| Total | **40.27** | | $9,529.00 |
| | | | |
| Costs – Filing Fee | | | $400.00 |
| TOTAL | | | **$9,929.00** |

Accordingly, it is **RECOMMENDED** that the Court **GRANT in part and DENY in part** the Motion (Doc. No. 29) as follows:

1. Award Plaintiff a total of $9,929.00 in attorneys' fees and costs, representing $9,529.00 in attorneys' fees and $400.00 in costs; and

2. Otherwise, **DENY** the Motion (Doc. No. 29)

A party failing to file written objections to a magistrate judge's findings or recommendations within **ten (10) calendar days** of issuance of the Report and Recommendation, waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.

Recommended in Orlando, Florida on July 28, 2015.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy